#3.2

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

Filed 09/09/2026

1942 REALTY, LLC,
Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,
Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS OF THE CINCINNATI INSURANCE COMPANY**

**INTRODUCTION**

The Cincinnati Insurance Company's motion to dismiss rests on a single, deceptively simple premise: a third-party claimant has no right to seek a declaratory judgment concerning insurance coverage until it first obtains a judgment against the insured. Cincinnati's premise is overstated as a matter of Massachusetts law and, in any event, does not accurately reflect the relief Plaintiff 1942 Realty, LLC ("Owner") herein seeks as against Cincinnati.

Owner has not sued Cincinnati in isolation; it has brought Cincinnati into the same action in which it is simultaneously pursuing liability against Cincinnati's named insureds, the Bonanno Defendants, for the catastrophic water damage they caused to Owner's property at 12 Galen Avenue, Nantucket, on August 21, 2025. The coverage question and the liability question are before the same court, in the same case, at the same time. Contrary to Cincinnati's claims, the declaratory judgment count is not an end-run around anything — it is the most efficient vehicle for resolving a real, present, and adversarial dispute that Cincinnati itself created when it denied that its insureds' conduct constituted a covered occurrence.

Cincinnati served its motion without first initiating the Rule 9C meet-and-confer required for a dispositive motion — a conference in which Owner's counsel could have explained in a brief telephone call the precise pleading choices that Cincinnati's memorandum characterizes as improper "end runs" — while Cincinnati itself appears to be circumventing important procedural[1] and statutory requirements.

Cincinnati's motion was also served before the complaint was served upon the Bonanno Defendants and their household nanny, defendant Jane Doe a/k/a "Chloe". Cincinnati is in effect seeking to remove a coverage count from this proceeding before the underlying liability proceedings have formally begun and before those persons materially and adversely affected thereby have an opportunity to respond.

Massachusetts courts have long recognized the propriety of consolidating coverage and liability questions in a single proceeding precisely to avoid the kind of fragmented, sequential litigation Cincinnati's motion would compel. The motion should be DENIED.

## RELEVANT BACKGROUND

Owner filed a verified complaint on June 22, 2026, asserting ten counts against the Bonanno Defendants and an eleventh count, Count XI, against Cincinnati and the Bonanno Defendants jointly. Counts I through X assert liability against the Bonanno Defendants for breach of contract, negligence, gross negligence/recklessness, waste, conversion, trespass to chattels, unjust enrichment, and related theories. Count XI, the "sole" count Cinicinnati claims is directed to it but which count is explicitly directed to Cincinnati *alongside* its named insureds, seeks a declaration under G.L. c. 231A, § 1 that the water overflow event of August 21, 2025 (the "Loss")

[1] Owner does not press this procedural defect as a ground for denial. However, if Cincinnati files the motion without first satisfying Rule 9C and providing the required certificate, Rule 9C(a) expressly requires denial without prejudice.

constitutes a covered "occurrence" under Cincinnati Policy No. 05C011064266 (the "Cincinnati Policy"), and that Cincinnati is obligated to indemnify the Bonannos for the damages established in this action. Owner does not seek a declaration of indemnity in a vacuum — it seeks a declaration as part of an integrated proceeding in which the Bonannos are defendants in the same case and in which Cincinnati has appeared through its own separate counsel.

The factual predicate for Count XI is not hypothetical. Following the Loss, Cincinnati received formal written notice from Owner's counsel, acknowledged the Claim (No. 4583781), disclosed the Cincinnati Policy's personal liability limits of $1,000,000 per occurrence, and promptly asserted — without conducting any independent investigation — that there was "nothing to support that our insured caused this issue by way of negligence" and that the Loss "appears to be a plumbing issue." COMPL. ¶¶ 97-103. Cincinnati's claims adjuster subsequently confirmed in writing that Cincinnati had transmitted a "coverage position letter" to Owner's counsel, which letter Owner has not received, and that its position "has not changed." That adverse claim position — disputing its insureds' responsibility for the Loss on causation grounds, transmitting a coverage position letter, retaining separate litigation counsel, and serving a dispositive motion within days of being served with the complaint and before its own insureds were served or had the opportunity to protect their coverage interests — establishes a concrete, present, and adversarial dispute. That dispute is precisely what G.L. c. 231A is designed to resolve.

On August 14, 2026 — three days after Cincinnati served the within motion — the attorney Cincinnati retained to defend the Bonanno Defendants in the underlying liability action wrote to Owner's counsel, copying Cincinnati's separate litigation counsel. That letter confirms three matters bearing directly on Cincinnati's motion. First, defense counsel writes "on behalf of Matthew W. Bonanno and Emily J. Bonanno" alone; no counsel has appeared, or announced any

intention to appear, for defendant nanny Jane Doe. Second, defense counsel confirms that the Bonannos had not then been served. Third, defense counsel demanded disclosure of Owner's liability insurance and to preserve claims by the Bonannos against Owner arising from the rental and the Loss — that is, he is pursuing coverage for his clients from a third party's carrier — while advancing no position whatsoever as to the Bonannos' own rights under the Cincinnati Policy, which are the very rights Cincinnati's motion would remove from this case. A copy of the August 14, 2026 letter and its transmittal email is appended hereto as **Exhibit A**.

## ARGUMENT

### I. OWNER HAS ESTABLISHED AN ACTUAL CONTROVERSY UNDER G.L. C. 231A.

Massachusetts's declaratory judgment statute, G.L. c. 231A, § 1, grants the Superior Court broad jurisdiction to "make binding declarations of right, duty, status and other legal relations." The statute is to be "liberally construed." G.L. c. 231A, § 9. An "actual controversy" exists when there is a "real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter." Wells Fargo Fin. Massachusetts, Inc. v. Mulvey, 93 Mass.App.Ct. 768, 771 (2018). That standard is met here.

Owner asserts a legal interest in the resolution of the coverage question: it has an outstanding claim for more than $215,000 in uninsured losses against the Bonannos, who hold a policy with Cincinnati providing $1,000,000 in personal liability coverage. Cincinnati has formally denied that the Loss is a covered occurrence, a denial that will determine whether any judgment Owner obtains is collectible. Cincinnati denies Owner's interest. The dispute is present, real, and adversarial.

Cincinnati argues that no "real" dispute exists because Owner has no enforceable right against the policy until judgment enters against the Bonannos. But this argument conflates the *duty to indemnify* — which does depend on a judgment — with the coverage question Count XI actually presents: *whether the Loss is a covered occurrence at all.*

Owner does not ask the Court to order Cincinnati to write a check. Owner asks the Court to declare whether the Loss falls within the Cincinnati Policy's coverage grant — an antecedent legal question that Cincinnati has already answered in the negative and that will directly govern whether any judgment Owner obtains against the Bonannos is collectible. That is a present dispute, not a hypothetical one. Moreover, Cincinnati's own conduct establishes the controversy: it engaged separate litigation counsel and served a dispositive motion within days of service. An insurer that does both cannot credibly maintain that no real dispute exists.

### A. THE JOINDER OF THE BONANNOS AS DEFENDANTS DISTINGUISHES EVERY CASE CINCINNATI CITES.

Cincinnati's argument that a tort claimant has no direct enforceable right against a liability insurer before judgment is correct as a general proposition but does not dispose of this case. None of the cases Cincinnati cites holds that Chapter 231A prohibits the particular procedural posture presented here: retaining a non-monetary coverage declaration in a pending liability action where the insurer's named insureds are already defendants in the same case and may themselves assert the coverage claim. Each of Cincinnati's cases involved a claimant who sought to invoke the insurer's payment obligation directly — either through breach of contract, reach-and-apply, or a declaratory judgment treated as a substitute for those remedies — without the insured having been adjudged liable. None of them addressed a non-monetary coverage declaration sought in an integrated proceeding where the insured's liability and the insurer's coverage obligation are simultaneously before the Court.

The distinction is not merely noteworthy; it is dispositive. The foundation for the cases Cincinnati cites is the absence of any legal nexus between the claimant and the insurer before judgment: the insurer's duties run to its insured, and until judgment creates a legal obligation to pay, there is no relationship to adjudicate. That foundation is absent here. The Bonannos are defendants in this very proceeding. They have their own direct and material interest in the coverage question being resolved — an adversarial interest Cincinnati's motion conspicuously ignores.

With the Bonannos as parties, the Court can enter a declaration that binds all interested parties simultaneously, without requiring two parallel or sequential proceedings. Indeed, the SJC's approach in Billings v. Commerce Ins. Co., 458 Mass. 194 (2010), confirms that Cincinnati is properly joined herein: the duty to defend is assessed against the four corners of the complaint, meaning Cincinnati's coverage obligation can be evaluated now, on the current pleadings, regardless of how the underlying liability is ultimately resolved. Cincinnati implicitly acknowledges this by engaging trial counsel and pursuing a motion on the merits: it is litigating the coverage question in this court in this case. Having done so, it cannot simultaneously claim the court lacks jurisdiction to resolve it.

### B. THE DECLARATORY JUDGMENT COUNT IS NOT A PROHIBITED "END RUN."

Cincinnati reads beyond the four corners of the complaint to argue that Owner is somehow deploying G.L. c. 231A as a substitute for a reach-and-apply action under G.L. c. 214, § 3(9), or a bad-faith action under G.L. c. 93A/176D. The argument fails because Owner is not seeking to substitute the declaratory judgment statute for either statutory vehicle.

A reach-and-apply action is a post-judgment remedy that allows a judgment creditor to reach assets of a judgment debtor held by a third party. Owner is not seeking to reach a specific asset — the policy proceeds — before judgment. It is seeking a declaration of coverage status.

Those are categorically different requests. The declaration Owner seeks will not require Cincinnati to pay anything; it will resolve the antecedent coverage question so that all parties know, as the liability case proceeds, whether a judgment against the Bonannos will be within policy coverage.

Owner has not brought a c. 93A count. That was a deliberate pleading choice, not an inadvertent omission, and it does not transform the declaratory judgment count into a disguised bad-faith claim. Finally, Cincinnati's "end run" theory depends on the premise that the Legislature intended to foreclose exactly the relief Owner seeks. But G.L. c. 231A, § 9 expressly commands liberal construction. Nothing in the reach-and-apply or c. 93A framework expresses any legislative intent to bar pre-judgment declaratory relief in an integrated proceeding where the insured and insurer are both defendants. No such scheme applies here.

G.L. c. 231A, § 6 supplies additional statutory support. It provides that "[i]n any action … brought to obtain a judgment or other consequential relief … the court may make a binding determination as provided in this chapter upon application of any party made in his pleadings." Counts I through X seek compensatory damages arising from the Loss; Count XI asks this Court to make a binding coverage determination in the same action. That is precisely the structure § 6 authorizes. Owner does not contend that § 6 independently confers standing; § 6 defeats Cincinnati's separate contention that the procedural combination of liability and declaratory relief constitutes an impermissible end run.

## II. OWNER HAS STANDING TO SEEK THE DECLARATION.

Cincinnati argues that Owner lacks standing because the duties of defense and indemnity are owed to the insured, not the claimant. True as an abstraction, but Owner's standing rests on its own direct injury: it holds a claim for more than $215,000 in uninsured losses against defendants who carry a $1,000,000 liability policy. Cincinnati has taken an adverse claim position on the Loss — confirmed by its own adjuster to include a transmitted coverage position letter — that will

determine whether any judgment Owner obtains is collectible. That is a concrete, personal, financial injury to Owner traceable to Cincinnati's coverage position and fully redressable by the declaration Owner seeks. *Enos v. Sec'y of Env't Affs.*, 432 Mass. 132, 134 (2000). *Cubberley* and *Source One* are inapposite: both involved claimants seeking relief against an insurer without the named insured as a co-defendant in the same proceeding. Here, the Bonannos are defendants and their liability is simultaneously at issue.

### A. *CUBBERLEY* EXPRESSLY DECLINED TO DECIDE THE DECLARATORY-JUDGMENT STANDING QUESTION CINCINNATI SAYS IT DECIDED.

Cincinnati's reliance on *Cubberley v. Commerce Ins. Co.*, 495 Mass. 289 (2025), is its most consequential misreading of Massachusetts law. Cincinnati cites *Cubberley* for the proposition that a third-party claimant lacks standing to seek a pre-judgment declaratory judgment concerning liability coverage. *Cubberley* does not resolve that question.

The SJC held that the *Cubberley* plaintiffs lacked standing to pursue their breach-of-contract claim, because that claim effectively sought to reach and apply automobile policy proceeds without first satisfying the statutory final-judgment prerequisite under G.L. c. 175, § 113 and G.L. c. 214, § 3(9). Cubberly, 495 Mass. at 293-294. **The Court expressly declined to decide the declaratory judgment standing question,** stating in footnote 8: "We need not, and therefore do not, decide whether the plaintiffs have standing to pursue their declaratory judgment claim, as they have waived any further challenge to the dismissal." Id. at 294 n.8. The declaratory judgment question had been waived on appeal and was not before the SJC.

Cincinnati's newest and highest Massachusetts authority expressly declined to resolve the precise declaratory-judgment standing question that Cincinnati asks this Court to decide. That is not a minor qualification. No Massachusetts appellate court has held that a third-party claimant

lacks standing to seek a coverage declaration in the circumstances presented here. The law remains open at the SJC level.

In Dorchester Mut. Ins. Co. v. Legeyt, 2008 Mass.Super.LEXIS 462 (Norfolk Super. Ct. Dec. 29, 2008) (Garsh, J.), a homeowners insurer filed a coverage declaratory judgment action against its insured and the injured third-party claimant. The claimant counterclaimed for a declaration that the insurer owed its insured a duty to defend and indemnify. Not unlike Cincinnati here, the insurer argued the claimant had no standing absent a judgment. Judge Garsh rejected that argument, relying on the SJC's recognition in Fallon v. Mains, 302 Mass. 166, 168 (1939), that "plaintiff's right to have recourse to the policy came into existence upon the occurrence of the accident," and in Goldstein v. Bernstein, 315 Mass. 329, 332 (1943), that "[u]pon the happening of the accident … the plaintiffs acquired a beneficial interest in the proceeds of the policy." 2008 Mass.Super.LEXIS 462 at *15-16. The court thus held that the claimant had standing to maintain the declaratory counterclaim.

Owner acknowledges *Legeyt*'s limiting feature: the insurer had commenced that proceeding and named the claimant as a defendant. And a contrary 2001 Superior Court decision, Ioannou v. Merrimack Mut. Fire Ins. Co., 2001 Mass.Super.LEXIS 623 (Middlesex Super. Ct. Dec. 20, 2001) (Giles, J.), held that a tort claimant "has no interest or right in the insurance contract" sufficient to support a declaratory claim. Massachusetts appellate law is open; the Massachusetts Superior Court decisions are divided. But *Legeyt* demonstrates that there is no settled Massachusetts rule categorically foreclosing claimant declaratory standing — which is all Owner must show to defeat a motion that asks this Court to dismiss as a matter of clearly established law, particularly where the insurer's own insureds are already defendants in this proceeding and the coverage question is directly at issue.

### B. CINCINNATI MISCHARACTERIZES COUNT XI AS AN INDEMNITY-ONLY CLAIM; AT MOST, THE INDEMNITY COMPONENT SHOULD BE DEFERRED RATHER THAN DISMISS THE ENTIRE COUNT.

Cincinnati's motion repeatedly frames Count XI as though it seeks only a declaration that Cincinnati must "indemnify" its insureds. It does not. Paragraph 105(a) of the Complaint expressly requests a declaration that the Loss "constitute[s] a covered occurrence giving rise to Cincinnati's duty to defend and indemnify the Bonannos." The duty to defend and the duty to indemnify are distinct. Cincinnati's own memorandum acknowledges the difference: the duty to defend is determined by the allegations of the complaint and arises before liability is established; the duty to indemnify may depend on facts determined at trial. Having made that concession, Cincinnati cannot then move to dismiss the entirety of Count XI as though both duties are equally premature.

The Appeals Court resolved this precise conflict in John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co., 102 Mass.App.Ct. 474 (2023). There, the court vacated dismissal of the duty-to-defend declaratory claim, holding that an actual controversy existed as to the insurer's present defense obligation, while affirming dismissal of the duty-to-indemnify component as premature pending resolution of the underlying liability. Id. at 485-486, 490. Cincinnati's own authority, Newell-Blais Post No. 443, Veterans of Foreign Wars v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986), holds the same: the indemnity question must await trial, but that is a reason to defer the indemnity component — not to dismiss Count XI in its entirety. Owner offers *Moriarty* not as authority for 1942's independent standing to enforce the Bonannos' defense right, but for the remedial proposition that prematurity of the indemnity component does not compel destruction of an otherwise justiciable insurance proceeding.

Owner candidly acknowledges that it may not have independent standing to enforce the Bonannos' defense right directly. The appropriate procedural response is the one Owner's Cross-Motion requests: afford the Bonannos a reasonable opportunity to retain independent coverage

counsel and to join in the within Opposition and/or assert their own position — including, if they choose, a Rule 13(g) cross-claim against Cincinnati for a declaration of defense and coverage. Notably, Mass. R. Civ. P. 13(g) expressly permits a defendant to assert a cross-claim against a co-defendant arising from the same transaction, including a claim that the co-party "is or may be liable" for all or part of the plaintiff's claim. Once the Bonannos assert such a cross-claim, their standing as named policyholders is indisputable, the coverage question remains in this proceeding, and the Court can manage liability and coverage on a single docket with the sequencing G.L. c. 231A, § 3 and Mass. R. Civ. P. 42(b) expressly authorize.

### C. CINCINNATI'S STANDING ARGUMENT CANNOT BE RESOLVED ON THE PLEADINGS: OWNER'S STATUS AS COUNTERPARTY TO A WRITTEN CONTRACT THE CINCINNATI POLICY MAY EXPRESSLY COVER PRESENTS A MERITS QUESTION REQUIRING DISCOVERY.

Cincinnati's standing argument — that the duties of defense and indemnity are owed only to the insured, not to the claimant — is overstated as a matter of both law and fact. As a matter of law, the argument assumes that Owner's only connection to the Cincinnati Policy is its status as a tort claimant. That assumption, however, ignores a category of potential coverage that is common to homeowners personal liability policies issued on standard industry forms: the "insured contract" exception to the contractual liability exclusion. As a matter of fact, the Cincinnati Policy itself has not been produced in this litigation — discovery has not yet commenced — and Cincinnati has not provided Owner with a copy of the policy jacket, declarations page, or any endorsement. The Court cannot resolve a standing argument that turns on the policy's own coverage grant on a motion to dismiss where that policy is not in the record.

Notably, Homeowners personal liability policies issued on standard forms routinely contain a contractual liability exclusion that bars coverage for liability "under any contract or agreement entered into by an insured." That exclusion is typically subject to an exception — commonly called

the "insured contract" exception — for written contracts that directly relate to the ownership, maintenance, or use of an insured location, or under which the insured assumes the liability of another party prior to the occurrence. Standard forms also typically define "insured location" to include any premises not owned by the insured where the insured is temporarily residing. The Bonanno Defendants temporarily resided at and are alleged to have caused damage to Owner's residential real property.

If the Cincinnati Policy contains these standard provisions — as is common for policies of this type — the Bonannos' Occupancy Agreement with Owner would qualify as an insured contract: it directly relates to the Bonannos' use of 12 Galen Avenue, a premises not owned by them where they were temporarily residing; and under it, the Bonannos assumed liability to Owner for property damage caused during their occupancy before the Loss occurred.

If the Cincinnati Policy contains an insured contract exception of that character, Owner is not a stranger to the Policy. Owner is the counterparty to the specific written contract that the Policy preserves from the contractual liability exclusion and incorporates into the coverage grant. Owner's interest in the coverage determination would then be concrete, personal, and traceable to the Policy's own terms — not merely to its status as a tort claimant. Cincinnati ignores that an insured contract is a legally cognizable interest that satisfies the standing requirements of G.L. c. 231A independently of the tort-claimant standing analysis Cincinnati's motion addresses. Enos v. Sec'y of Env't Affs., 432 Mass. 132, 134 (2000).

Owner does not contend that the insured-contract analysis independently confers standing; it establishes that Cincinnati's standing argument cannot be resolved on the pleadings without the Cincinnati Policy in the record. If Cincinnati wishes to pursue its standing argument after producing the Cincinnati Policy in discovery, it may renew the argument at the summary judgment

stage, where the actual policy language will be available for the Court's review. For now, the motion to dismiss on standing grounds should be DENIED.

## III. THE BONANNO DEFENDANTS ARE ALIGNED WITH OWNER IN OPPOSITION TO CINCINNATI'S MOTION AND SHOULD BE INVITED TO JOIN THROUGH INDEPENDENT COVERAGE COUNSEL.

Owner files herewith a separate Cross-Motion for an Order Realigning the Bonanno Defendants with Owner in Opposition to Cincinnati's Motion to Dismiss Count XI. The Bonanno Defendants are the named insureds under the Cincinnati Policy. If the Court allows Cincinnati's motion to dismiss, the coverage question will be removed from this proceeding and will resurface either in a duplicative parallel or sequential action— at which point Cincinnati will litigate indemnity in a separate proceeding as both Owner and the Bonannos, with additional time to develop coverage defenses, where Owner and the Bonannos will bear the full burden of establishing coverage for a judgment that may already have been entered against the Bonannos personally.

No independent coverage counsel has appeared for the Bonanno Defendants in connection with Count XI. The attorney Cincinnati retained to defend the underlying liability claims — who informed Owner's counsel that he had been engaged by Cincinnati, had not yet conferred with his clients, and had not determined whether he would represent the nanny defendant — is not positioned to advise the Bonannos on their independent coverage interests or to determine whether those interests require a different litigation posture from the one Cincinnati's selected counsel would adopt on the liability defense. Nothing has changed in the interim. By letter of August 14, 2026, Cincinnati's selected defense counsel confirmed that he writes for the Bonannos alone, and he said nothing of Jane Doe. See **Exhibit A**. The position defense counsel takes is itself instructive: defense counsel is pursuing coverage for the Bonannos from Owner's carrier while advancing no

position on the Bonanno Defendants' coverage under the Cincinnati Policy — the coverage Cincinnati is presently moving to litigate out of this case, by a motion Cincinnati did not serve upon its own defense counsel. The persons Cincinnati itself identifies as the only holders of a cognizable interest in the coverage question are therefore represented, on that question, by no one.

Before a motion is adjudicated that may materially affect the Bonannos' personal exposure and insurance rights, they should have a reasonable opportunity to obtain independent advice and to determine whether to assert their own coverage position. Owner respectfully requests that this Court DENY Cincinnati's motion to dismiss or, in the alternative, continue the matter to afford the Bonanno Defendants a reasonable opportunity to retain independent coverage counsel and to file their own opposition.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE, CONSOLIDATE THE COVERAGE QUESTION WITH THE LIABILITY TRIAL, AND DECLINE TO FACILITATE CINCINNATI'S TRANSPARENT FORUM-SHOPPING.

Even if the Court were to conclude that Count XI is premature, dismissal with prejudice — the remedy Cincinnati requests — would be inappropriate. The coverage question will not disappear; it will resurface in a duplicative parallel or sequential proceeding, or recur the moment Owner obtains a judgment against the Bonannos. The most efficient course is to allow Count XI to remain, develop the coverage and liability issues through a common discovery record, and address the coverage question through a bifurcated bench trial or in conjunction with the liability trial. Massachusetts courts have recognized the wisdom of resolving coverage and liability questions in a single integrated proceeding. G.L. c. 231A, § 9 (statute "is to be liberally construed and administered" to "remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations"); G.L. c. 231A, § 3 (court may refuse declaratory

relief only where judgment "would not terminate the uncertainty or controversy giving rise to the proceedings").

Even if the Court were to conclude that some aspect of Count XI requires further development, Mass. R. Civ. P. 42(b) expressly authorizes a separate trial on any claim or issue where that promotes convenience, expedition, economy, or avoids prejudice. The Court can sequence coverage and liability proceedings on a single docket precisely as G.L. c. 231A, § 3 and Rule 42(b) contemplate. That is efficient case management — not a reason to dismiss.

Dismissal of Count XI would not terminate the coverage controversy. It would relocate it. If the Court allows the motion, Cincinnati may refile its own declaratory judgment action under G.L. c. 231A in a forum of its choosing, naming Owner and the Bonanno Defendants as parties. Massachusetts practice contemplates exactly this sequence: when coverage is disputed, the insurer is expected to file a declaratory judgment action in Superior Court naming both the insured and the claimant as parties. *Espinal v. Liberty Mutual Ins. Co.*, 47 Mass.App.Ct. 593, 598-599 (1999). There is accordingly no scenario in which dismissal of Count XI eliminates the coverage question; it only eliminates it from Owner's chosen forum.

The purpose of Cincinnati's motion is transparent. Cincinnati served its motion to dismiss before the Bonanno Defendants were served with the complaint, before any party had appeared through independent coverage counsel, and without the Rule 9C conference required for a dispositive motion. The motion seeks to dismiss Count XI from a case Cincinnati had no hand in filing — Owner's case, in Owner's chosen forum, in the county where the property is located and where the Loss occurred — so that Cincinnati may then re-file in a forum of its own choosing, where the docket and pace may favor the insurer. The Supreme Court established in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942), that courts may decline declaratory judgment

jurisdiction where the primary purpose of the filing is forum selection, because "[o]rdinarily it would be uneconomical as well as vexatious" to allow such tactical maneuvering. While *Brillhart* addressed federal court discretion, its anti-forum-shopping rationale applies equally here: G.L. c. 231A, § 9's liberal-construction mandate and § 3's requirement that a dismissal actually terminate the uncertainty are designed precisely to prevent a party from using Rule 12 as a forum-selection device.

Even if the Court were to conclude that some aspect of Count XI is premature, Cincinnati's request for dismissal *with prejudice* is untenable. Cincinnati's own theory concedes that any standing defect is temporal: the asserted problem disappears upon a judgment against the Bonannos or, sooner, upon the Bonannos' assertion of a Rule 13(g) coverage crossclaim. A defect that cures itself cannot be "fatal to the merits" of the claim. Braxton v. Boston, 96 Mass.App.Ct. 714, 720 (2019) (dismissal with prejudice appropriate only "where a lack of standing [was] fatal to the merits of the plaintiff's claim"); accord, Hladik v. LPL Fin. LLC, 106 Mass.App.Ct. 592, 595 n.4 (2026) ("[d]ismissals for lack of subject matter jurisdiction are ordinarily without prejudice because dismissal for lack of jurisdiction is typically not an adjudication on the merits"). If the Court concludes that any relief is appropriate, it should be denial *without prejudice* or a continuance — not a merits disposition that forecloses Owner's claim before the Bonannos have had any opportunity to participate.

Granting the motion to dismiss would burden the courts with two parallel proceedings arising from the same incident, the same policy, and the same parties — one in this Court on liability, another wherever Cincinnati chooses to file on coverage — deny all parties the benefit of a common discovery record, and reward the insurer for serving a dispositive motion before its own insureds had been served or had the opportunity to protect their independent interests. Denying

Cincinnati's motion is not merely equitable to Owner and the Bonanno Defendants — it prevents Cincinnati from using Rule 12 as a vehicle to escape a properly chosen forum and multiply litigation. The motion should be DENIED.

## CONCLUSION

WHEREFORE, Plaintiff 1942 Realty, LLC respectfully requests that this Honorable Court:

1. **DENY** The Cincinnati Insurance Company's Motion to Dismiss in its entirety;

2. In the alternative, continue the matter to afford the Bonanno Defendants a reasonable opportunity to retain independent coverage counsel and file their own opposition to Cincinnati's motion;

3. In the further alternative, if the Court concludes that any aspect of Count XI requires refinement, allow Owner leave to amend the complaint to address the Court's concerns;

4. In the further alternative, continue Cincinnati's motion to dismiss to afford the Bonanno Defendants a reasonable opportunity to appear through independent coverage counsel and, if they choose, to assert a crossclaim against Cincinnati pursuant to Mass. R. Civ. P. 13(g) for a declaration of Cincinnati's duty to defend and indemnify; and

5. Grant such other relief as this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Superior Court Rule 9A(c)(2), Owner respectfully requests a hearing on this motion. Motions to dismiss under Mass. R. Civ. P. 12 are among the categories for which a hearing will ordinarily be allowed under Rule 9A(c)(3).

Respectfully submitted,

**PLAINTIFF,**

**1942 REALTY, LLC,**

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite 11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: August 21, 2026

**CERTIFICATE OF SERVICE**

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I forwarded notice of the foregoing document(s) via electronic service through the Odyssey/Tyler e-service platform, electronic mail, and/or Federal Express or U.S. Mail Delivery thereof, postage prepaid, to the following:

Nora R. Adukonis, Esq.
LITCHFIELD CAVO, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

John R. Garrasi, Esq.
MARTIN, MAGNUSON, MCCARTHY & KENNEY, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Raymond H. Tomlinson, Jr.

Dated: August 21, 2026

# **EXHIBIT A**

**Raymond Tomlinson**

| | |
|---|---|
| **From:** | John Garrasi <JGARRASI@MMMK.COM> |
| **Sent:** | Friday, August 14, 2026 4:36 PM |
| **To:** | Raymond Tomlinson |
| **Cc:** | Douglas A. Robertson; adukonis@litchfieldcavo.com; Audrey Bonk |
| **Subject:** | 1942 Realty LLC v. Matthew Bonanno et al; Insurance Policies [IMAN-DOCS.FID2005657] |
| **Attachments:** | AS SENT - MGL c 175 Letter to Tomlinson - BONANNO.pdf |

Ray:

Thank you for connecting with me earlier this week on the case. I appreciate you making yourself available despite still being on vacation. Your responsiveness is greatly appreciated.

At this point, I have not yet received confirmation that our clients have been served. In the interest of working toward resolution and as part of our normal practice in these matters, I am attaching a request for any and all insurance policies and related information required to be disclosed pursuant to M. G. L. 175, § 112C. Specifically, we are looking for the insurance policies required for short-term rentals under M. G. L. c. 175, § 4F.

I look forward to working with you as the case progresses. Please feel free to contact me if you have any questions or would like to discuss the matter further. I have copied attorneys Robertson and Adukonis on this email so as to avoid any duplicity.

Enjoy the remainder of your vacation, and I look forward to speaking with you soon.

Best,

**John Garrasi, Associate**
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
Direct: (857) 957-0701
Mobile: (518) 514-8120
Fax: (617) 227-3346

*This email may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it. No waiver of privilege is intended by such an error.*

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521. If you received this message erroneously, please delete this message and any attachments. Please do not save, copy, forward or use misdirected e-mail. Anyone misusing this e-mail will be prosecuted. This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. Information contained in this e-mail transmission is privileged,

confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521. If you received this message erroneously, please delete this message and any attachments. Please do not save, copy, forward or use misdirected e-mail. Anyone misusing this e-mail will be prosecuted.

MARTIN, MAGNUSON, McCARTHY & KENNEY
ATTORNEYS AT LAW
101 MERRIMAC STREET, 7TH FLOOR
BOSTON, MASSACHUSETTS 02114-4716
TELEPHONE: (617) 227-3240
TELECOPIER: (617) 227-3346
WWW.MMMK.COM

A PROFESSIONAL CORPORATION

PAUL R. KEANE
PAUL M. McTAGUE
EDWARD F. MAHONEY
DOUGLAS A. ROBERTSON*
KEVIN C. REIDY
STEPHEN M. O'SHEA *
JENNIFER E. KOGAN ●
SARAH ANN GREENHALGH
JOAN F. RENEHAN
JENNIFER A. CREEDON +!
DARLENE DAWSON
KATHLEEN O'DONNELL WYATT !
LINDSAY E. WEBER !
MICHAEL J. KEEFE !
LAUREN E. MANKOWSKI !
LINDSEY J. TAYLOR
TAYLOR R. ALCORN
ANTHONY BRIGHTON ^
BRYANNA L. GREENWOOD
PATRICK MADAYA
KATHERINE KOSSOY
AMANDA V. REIS
JOHN GARRASI

SENIOR COUNSEL

CHARLES P. REIDY, III

EDWARD F. HENNESSEY (1949-2007)
EPHRAIM MARTIN (1927-1988)
HAROLD E. MAGNUSON (1938-1999)
CLEMENT MCCARTHY (1951-1985)
RAYMOND J. KENNEY, JR. (1958-2023)

● ALSO ADMITTED IN CA
! ALSO ADMITTED IN CT
* ALSO ADMITTED IN NH
\+ ALSO ADMITTED IN RI
^ ALSO ADMITTED IN NY

August 14, 2026

***VIA EMAIL ONLY***
Raymond H. Tomlinson, Jr. Esq.
TOMLINSON LAW
76 Tupper Road, Suite #11
Sandwich, MA 02563
rht@tomlinsonlaw.com

**RE: 1942 Realty, LLC v. Matthew W. Bonanno, et al.**
**Nantucket Superior Court Civil Action No. 2675CV00024**
**M. G. L. c. 175, § 112C Request for Disclosure of Liability Coverage**

Dear Attorney Tomlinson:

I write on behalf of Matthew W. Bonanno and Emily J. Bonanno concerning the above-captioned action and the August 21, 2025 alleged loss at 12 Galen Avenue, Nantucket, Massachusetts.

Please treat this correspondence as a written request pursuant to G. L. c. 175, § 112C directed to each insurer, providing, or potentially providing, liability insurance to 1942 Realty, LLC, or otherwise providing applicable liability coverage in connection with the subject-premises or short-term-rental as mandated by M. G. L. c. 175, § 4F.

Under M. G. L. c. 175, § 4F, "An operator [of a short term rental in MA] shall maintain liability insurance of not less than $1,000,000 to cover each short term rental, unless such short-term rental is offered through a hosting platform that maintains equal or greater coverage. Such coverage shall defend and indemnify the operator and any tenants or owners in the building for bodily injury and property damage arising from the short-term rental." A copy of the statute, along with a copy of the statute defining the term "operator," is enclosed for your records.

Because the identity of all such insurers is presently unknown to the Bonannos, please forward this letter immediately to each applicable insurer, carrier, underwriting entity, risk program, and/or hosting-platform insurer, including, without limitation:

(1) **Any insurer providing primary liability coverage to 1942 Realty, LLC or the premises located at 12 Galen Avenue;**

(2) **Any umbrella or excess liability insurer;**

(3) **Any insurer providing short-term rental liability coverage maintained by or on behalf of 1942 Realty, LLC pursuant to G. L. c. 175, § 4F;**

(4) **Any insurer providing the liability coverage required by § 4F through a hosting platform, rental platform, property manager, agent, or other entity; and**

(5) **Any other insurer whose policy may provide liability coverage for claims arising from the August 16–30, 2025 short-term rental or the alleged August 21, 2025 loss.**

For purposes of G. L. c. 175, § 112C, the Bonannos hereby make and preserve claims against 1942 Realty, LLC arising from the subject rental and loss, including any claims or rights concerning defense, indemnification, contribution, insurance procurement, statutory insurance obligations, contractual obligations, and damages or expense resulting from any failure to maintain, procure, disclose, or make available insurance required by law or otherwise applicable to the subject occurrence.

Accordingly, each insurer receiving this request is requested and required to disclose the amount of limits of its insured's liability coverage applicable to these claims, including the limits of all applicable primary, umbrella, and excess coverage.

Section 112C requires an insurer to respond within thirty (30) days after receipt of the written request. The statute further provides that an insurer failing to comply is liable to the claimant for $500.00, together with reasonable attorneys' fees and expenses incurred in obtaining the required coverage information.

To avoid any uncertainty concerning receipt and the commencement of the statutory response period, please provide us with a copy of the correspondence or email by which this request is forwarded to each insurer, together with the same of the insurer, claim representative, claim number, and date of transmission.

This request is particularly intended to identify any liability coverage maintained in compliance with G. L. c. 175, § 4F, which requires specified liability insurance in connection with short-term rentals. Nothing in this correspondence should be construed as limiting the Bonannos' position regarding the nature, scope, enforceability, or applicability of any insurance required by § 4F, including their rights to seek defense and indemnification under any such coverage.

Nor should this request be construed as limiting the Bonannos' rights to obtain complete copies of applicable insurance policies, declarations, endorsements, binders, certificates, applications, insurance-procurement records, or related materials through discovery or otherwise. This letter specifically invokes the separate disclosure obligation imposed upon insurers by G. L. c. 175, § 112C.

Please confirm promptly that this correspondence has been forwarded to all potentially responsive insurers so that each carrier may respond directly within the statutory period.

Thank you for your attention to this request.

Very truly yours,

*/s/ John R. Garrasi*

John R. Garrasi, Esq.
BBO No. 717460
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
jgarrasi@mmmk.com

CC: *Counsel for The Cincinnati Insurance Company*
Nora Rose Adukonis, Esq.
Litchfield Cavo LLP
6 Kimball Lane
Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com