CRTR2709-CR

# COMMONWEALTH OF MASSACHUSETTS
## NANTUCKET COUNTY
## Docket Report

**2675CV00024 1942 Realty, LLC vs. Bonanno, Matthew W. et al**

**CASE TYPE:** Contract / Business Cases
**ACTION CODE:** A08
**DESCRIPTION:** Sale or Lease of Real Estate
**CASE DISPOSITION DATE:**
**CASE DISPOSITION:** Pending
**CASE JUDGE:**

**FILE DATE:** 06/23/2026
**CASE TRACK:** F - Fast Track
**CASE STATUS:** Open
**STATUS DATE:** 06/23/2026
**CASE SESSION:** Civil A NANTUCKET

**DCM TRACK**

| Tickler Description | Due Date | Completion Date |
|---|---|---|
| Service | 09/21/2026 | |
| Rule 12/19/20 Served By | 10/21/2026 | |
| Rule 15 Served By | 10/21/2026 | |
| Answer | 10/21/2026 | |
| Rule 15 Filed By | 11/20/2026 | |
| Rule 12/19/20 Filed By | 11/20/2026 | |
| Rule 15 Heard By | 12/21/2026 | |
| Rule 12/19/20 Heard By | 12/21/2026 | |
| Discovery | 04/20/2027 | |
| Rule 56 Served By | 05/19/2027 | |
| Rule 56 Filed By | 06/18/2027 | |
| Final Pre-Trial Conference | 10/18/2027 | |
| Judgment | 04/13/2028 | |

**PARTIES**

| Plaintiff | Attorney 654855 |
|---|---|
| 1942 Realty, LLC | Raymond Harlan Tomlinson<br>TOMLINSON LAW<br>TOMLINSON LAW<br>76 TUPPER ROAD<br>SUITE 11<br>SANDWICH, MA 02563<br>Work Phone (508) 348-9030<br>Added Date: 06/23/2026 |

COMMONWEALTH OF MASSACHUSETTS
NANTUCKET COUNTY
Docket Report

| | |
|---|---|
| **Defendant**<br>Bonanno, Emily J.<br>155 East 72nd Street<br>Apt. 9/10A<br>New York, NY 10021 | **Attorney** **552315**<br>Douglas A Robertson<br>Martin, Magnuson, McCarthy, et al<br>Martin, Magnuson, McCarthy, et al<br>101 Merrimac St<br>Boston, MA 02114<br>Work Phone (617) 227-3240<br>Added Date: 09/23/2026<br>**Attorney** **717460**<br>John Garrasi<br>Martin, Magnuson, McCarthy and Kenney<br>Martin, Magnuson, McCarthy and Kenney<br>101 Merrimac St<br>Suite 700<br>Boston, MA 02114<br>Work Phone (857) 957-0701<br>Added Date: 09/23/2026 |
| **Defendant**<br>Bonanno, Matthew W.<br>155 East 72nd Street<br>Apt. 9/10A<br>New York, NY 10021 | **Attorney** **552315**<br>Douglas A Robertson<br>Martin, Magnuson, McCarthy, et al<br>Martin, Magnuson, McCarthy, et al<br>101 Merrimac St<br>Boston, MA 02114<br>Work Phone (617) 227-3240<br>Added Date: 09/23/2026<br>**Attorney** **717460**<br>John Garrasi<br>Martin, Magnuson, McCarthy and Kenney<br>Martin, Magnuson, McCarthy and Kenney<br>101 Merrimac St<br>Suite 700<br>Boston, MA 02114<br>Work Phone (857) 957-0701<br>Added Date: 09/23/2026 |
| **Defendant**<br>Doe (Alias), Jane<br>155 East 72nd Street<br>Apt. 9/10A<br>New York, NY 10021 | |
| **Defendant**<br>The Cincinnati Insurance Company<br>6200 South Gilmore Road<br>Fairfield, OH 45014 | **Private Counsel** **676932**<br>Nora Rose Adukonis<br>Litchfield Cavo LLP<br>Litchfield Cavo LLP<br>6 Kimball Lane<br>Suite 200<br>Lynnfield, MA 01940<br>Work Phone (781) 309-1521<br>Added Date: 08/11/2026 |

**COMMONWEALTH OF MASSACHUSETTS**
**NANTUCKET COUNTY**
**Docket Report**

**EVENTS**

| Date | Session | Event | Result | Resulting Judge |
|---|---|---|---|---|
| 10/01/2026 | Civil A NANTUCKET | Rule 12 Hearing | Canceled | Whelden |

**COMMONWEALTH OF MASSACHUSETTS**
**NANTUCKET COUNTY**
**Docket Report**

## INFORMATIONAL DOCKET ENTRIES

| Date | Ref | Description | Judge |
|---|---|---|---|
| 06/23/2026 | 1 | VERIFIED Complaint electronically filed. | |
| 06/23/2026 | 2 | Civil action cover sheet filed. | |
| 06/24/2026 | | Case assigned to:<br>DCM Track F - Fast Track was added on 06/24/2026 | |
| 06/24/2026 | | EDocument sent:<br><br>Tracking Order<br>Sent On: 06/24/2026 14:24:31<br>Notice Sent To: Raymond Harlan Tomlinson, Jr., Esq. rht@tomlinsonlaw.com | |
| 08/11/2026 | | Attorney appearance electronically filed. | |
| 09/09/2026 | 3 | Defendant The Cincinnati Insurance Company's Motion to Dismiss of the Cincinnati Insurance Company | |
| 09/09/2026 | 3.1 | The Cincinnati Insurance Company's Memorandum of Law in Connection With it's Motion to Dismiss | |
| 09/09/2026 | 3.2 | Opposition to the Motion to Dismiss of the Cincinnati Insurance Company filed by 1942 Realty, LLC | |
| 09/09/2026 | 3.3 | Reply/Sur-reply<br><br>to Opposition to Motion to Dismiss<br><br>Applies To: The Cincinnati Insurance Company (Defendant) | |
| 09/09/2026 | 4 | Plaintiff 1942 Realty, LLC's Cross Motion for an Order Realigning Defendants Matthew W. Bonanno and Emily J. Bonanno With Plaintiff in Opposition to Cincinnati Insurance Company's Motion to Dismiss Count XI | |
| 09/09/2026 | 4.1 | Opposition to Plaintiff's Purported "Cross-Motion" to "Realign Parties" filed by The Cincinnati Insurance Company | |
| 09/09/2026 | 5 | Affidavit of Compliance With Superior Court Rule 9A | |
| 09/09/2026 | 6 | Defendant The Cincinnati Insurance Company's Request for Hearing | |
| 09/09/2026 | | Defendant The Cincinnati Insurance Company's Notice of Filing | |
| 09/09/2026 | | Defendant The Cincinnati Insurance Company's Certificate of Service | |
| 09/14/2026 | | EDocument sent:<br><br>Notice to Appear was generated and sent to:<br>Plaintiff: Raymond Harlan Tomlinson, Jr., Esq. rht@tomlinsonlaw.com<br>Defendant: Nora Rose Adukonis, Esq. adukonis@litchfieldcavo.com<br>Sent On: 09/14/2026 12:01:54 | |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**NANTUCKET COUNTY**
**Docket Report**

| | | | |
|---|---|---|---|
| 09/23/2026 | 7 | Plaintiff Matthew W. Bonanno, Emily J. Bonanno's Notice of Removal | |
| 09/23/2026 | | Attorney appearance<br>On this date Douglas A Robertson, Esq. added for Defendant Matthew W. Bonanno | |
| 09/23/2026 | | Attorney appearance<br>On this date John Garrasi, Esq. added for Defendant Matthew W. Bonanno | |
| 09/23/2026 | | Attorney appearance<br>On this date Douglas A Robertson, Esq. added for Defendant Emily J. Bonanno | |
| 09/23/2026 | | Attorney appearance<br>On this date John Garrasi, Esq. added for Defendant Emily J. Bonanno | |
| 09/25/2026 | | Event Result:: Rule 12 Hearing scheduled on:<br>10/01/2026 02:00 PM<br>Has been: Canceled For the following reason: Transferred to another session<br>Comments: Removed to U.S. District Court<br>Colleen S. Whelden, Presiding | Whelden |

Nantucket Superior Court
**A TRUE COPY, CERTIFIED,**

Colleen S. Whelden
Clerk

Date 10/6/2026

#1

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

Filed 06/23/2026

| | |
|---|---|
| 1942 REALTY, LLC<br>Plaintiff,<br>v.<br>MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,<br>Defendants. | ) |

**VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT**

NOW COMES 1942 Realty, LLC, plaintiff in the above-captioned matter, by and through the undersigned counsel, and hereby makes this its Verified Complaint for Damages and Declaratory Judgment, and jury demand, as follows:

**SUMMARY OF ACTION**

1. This is an action by plaintiff 1942 Realty, LLC ("Owner" or "1942 Realty"), owner of the residential real property located at 12 Galen Avenue, Nantucket, Massachusetts (the "Premises"), against defendants Matthew W. Bonanno ("Bonanno"), Emily J. Bonanno ("Mrs. Bonanno"), Jane Doe ("Chloe" or the "Nanny") (collectively, the "Bonanno Defendants"), and The Cincinnati Insurance Company ("Cincinnati"), arising out of: (i) the Bonanno Defendants' negligent, reckless, and/or willful acts and omissions during their occupancy of the Premises in August 2025, which caused extensive water damage and flooding throughout all three floors of the Premises and rendered the Premises uninhabitable for a period extending through approximately April 2026; and (ii) Owner's right to a declaration that the Loss constitutes a covered occurrence under the Cincinnati policy insuring the Bonannos and that Cincinnati is obligated to indemnify the Bonannos for the damages awarded herein.

2. As further alleged herein, during their occupancy of the Premises pursuant to a written vacation rental occupancy agreement entered into on or about October 8, 2024 (the "Occupancy Agreement" or "Lease"), defendants Bonanno and/or his wife and/or the Nanny negligently failed to supervise Bonanno's minor child, permitted or caused the child to block or plug the upstairs toilet or otherwise permitted or caused the overflow or uncontrolled discharge of water from a plumbing fixture in the third-floor bathroom at the Premises, and, upon information and belief, Bonanno removed a water leak detection sensor that had been installed adjacent to the upstairs toilet, thereby impairing the early warning system and substantially contributing to the severity of the damage caused by the water overflow.

3. As a direct and proximate result of Defendants' breach of the Occupancy Agreement and/or negligence, the Premises suffered catastrophic flooding, with water infiltrating wall cavities and beneath flooring and causing damage to all three floors. The insured replacement cost value of the structural damage to the Premises was established by Owner's insurer at $96,384.16. Owner's property insurance policy, however, contained a Water or Steam Damage Endorsement limiting aggregate payout on water damage claims to $50,000.00, which amount the insurer has paid. The actual remediation and repair costs incurred by Owner through March 2026 total $160,447.66, leaving uninsured remediation and repair costs of not less than $105,947.66 after application of the $50,000.00 insurance proceeds and $4,500.00 damage deposit. In addition to the direct property damage, Owner suffered a loss of rental income including not less than $38,500.00 in confirmed, prepaid rental reservations that were cancelled as a direct result of the Loss, plus additional lost potential rental income through April 2026. Owner's total documented losses, including unquantified additional rental income losses and professional costs, are expected to exceed $250,000.00 and will be established at trial.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to G.L. c. 212, § 4.

5. Venue is proper in Nantucket County pursuant to G.L. c. 223, § 1, as the Premises is located in Nantucket County and the acts and omissions giving rise to this action occurred therein.

## PARTIES

6. Plaintiff 1942 Realty, LLC is a Texas limited liability company with a principal place of business located at 3963 Maple Avenue, Suite 300, Dallas, Texas 75219, and is the owner of the Premises located at 12 Galen Avenue, Nantucket, Nantucket County, Massachusetts.

7. Upon information and belief, defendant Matthew W. Bonanno ("Bonanno") is an individual who resides at 155 East 72nd Street, Unit 9/10A, New York, New York 10021. Bonanno was the named tenant under the Occupancy Agreement and was an occupant of the Premises at all times relevant hereto.

8. Upon information and belief, defendant Emily J. Bonanno ("Mrs. Bonanno") is an individual who resides at 155 East 72nd Street, Unit 9/10A, New York, New York 10021. Mrs. Bonanno was an occupant and guest of Bonanno at the Premises at all times relevant hereto, and, together with Bonanno, was responsible for the care, supervision, and conduct of the minor child and household employees occupying the Premises during the rental period.

9. Defendant Jane Doe (the "Nanny") is an individual whose first name is Chloe but her full legal name is presently unknown to Owner but is expected to be ascertained through the course of discovery. The Nanny was employed by or retained by Bonanno and/or Mrs. Bonanno as a childcare provider and was present at and occupying the Premises at all times relevant hereto, including at the time of and in the hours preceding the Loss. Owner reserves the right to amend

this Complaint to state the full legal name of the Nanny upon ascertaining the same through discovery or otherwise.

10. Defendant The Cincinnati Insurance Company ("Cincinnati") is, upon information and belief, an insurance company organized and existing under the laws of the State of Ohio, licensed to do business in the Commonwealth of Massachusetts, with a mailing address of P.O. Box 109, Hudson, Massachusetts 01749. Cincinnati issued a homeowner's policy of insurance (Policy No. 05C011064266) (the "Cincinnati Policy") to Matthew and Emily Bonanno as named insureds, which policy was in full force and effect on August 21, 2025, the date of the Loss. The Cincinnati Policy affords personal liability coverage of $1,000,000 per occurrence for property damage, $1,000,000 personal injury aggregate, and medical payments coverage of $50,000 per person. Cincinnati is named herein as a defendant solely for purposes of Count XI (Declaratory Judgment) seeking a declaration that the Loss is a covered occurrence under the Cincinnati Policy and that Cincinnati is obligated to indemnify the Bonannos for all damages established in this action.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### THE OCCUPANCY AGREEMENT

11. On or about October 8, 2024, Owner and Bonanno entered into a written vacation rental occupancy agreement, indenture number 252410-1239, true and accurate copies of which are annexed hereto as **Exhibit A** (the "Occupancy Agreement" or "Lease"), for the vacation rental of the Premises located at 12 Galen Avenue, Nantucket, Massachusetts.

12. Pursuant to the Occupancy Agreement, Bonanno agreed to rent the Premises from Owner for the period commencing August 16, 2025 and concluding August 30, 2025, with maximum occupancy not to exceed ten (10) persons.

13. The rental rate for the period was $45,000.00, plus an administrative fee of $75.00, and rental taxes of $5,273.77, for a total amount due of $54,848.77. Bonanno paid a damage deposit in the amount of $4,500.00, which damage deposit Owner has retained and not returned to Bonanno.

14. The Occupancy Agreement obligated Bonanno to return the Premises in the condition in which they were received, to maintain the Premises in good order during his occupancy and made Bonanno liable for all damages or breakage and/or loss to the Premises in excess of the damage deposit.

15. In particular, the Occupancy Agreement obligated Bonanno to "***maintain the same in good order for the full term of this lease, and shall vacate the Premises peaceably and quietly, leaving it in the same orderly condition in which occupancy was taken***." The Occupancy Agreement further provided that "***the tenant is further responsible for all damages or breakage and/or loss to the Premises except normal wear and tear.***" See **Exhibit A**, Occupancy Agreement, at § 10. The security deposit was expressly stated not to constitute a cap on Bonanno's liability for damages. **Exhibit A**, Occupancy Agreement, at § 8.

16. The Occupancy Agreement further obligated Bonanno to immediately notify Owner's property manager, Sherburne Management, of any damage to the Premises: "***The LANDLORD hereby notifies the TENANT that Sherburne Management is the caretaker, and is responsible for the care and maintenance of the Premises and should be notified immediately of any damage to the Premises.***" See **Exhibit A**, Occupancy Agreement, at § 9. Bonanno failed to notify Sherburne Management as required under the Occupancy Agreement.

17. Owner fully performed all of its obligations under the Occupancy Agreement. Prior to Bonanno's arrival, the Premises was in good condition, properly equipped, and included water

leak detection sensors installed within the third-floor bathroom adjacent to plumbing fixtures, including adjacent to the third-floor bathroom toilet, for the purpose of detecting and alarming upon any water overflow or leakage from the toilet, bathtub, or other plumbing fixture in the bathroom.

**THE AUGUST 21, 2025 WATER LOSS**

18. On or about August 21, 2025, during the term of the Occupancy Agreement, at approximately 9:00 a.m., Bonanno's minor child (approximately five (5) years of age) used the third-floor bathroom at the Premises, including the toilet. As Bonanno has admitted, the child used the toilet, and the toilet was plugged or blocked, either by the actions of the child or otherwise; upon information and belief, the toilet was not properly cleared or confirmed to be in proper working order following the child's use thereof. Upon information and belief, the Loss was caused by the overflow or uncontrolled discharge of water from one or more plumbing fixtures in the third-floor bathroom — including without limitation the toilet and/or the bathtub — resulting from occupant activity in, and occupants' failure to supervise and inspect, the third-floor bathroom (collectively, the "Incident").

19. A water leak detection device (the "Water Sensor"), which was installed on the bathroom floor adjacent to the toilet, was found by Sherburne Management to have been removed from its installed position and placed atop a windowsill in the third-floor bathroom. Upon information and belief, defendants tampered with or intentionally relocated the Water Sensor during the Rental Period. The Water Sensor was positioned to detect water accumulation on the bathroom floor from any source, including overflow from the toilet, bathtub, or other plumbing fixture, and would have alarmed upon any water reaching the bathroom floor regardless of its point of origin. The act of removing, relocating, or disabling the Water Sensor impaired the sole early

warning mechanism available at the Premises to detect water overflow from plumbing fixtures in the third-floor bathroom, which act substantially increased the severity of the resulting damage.

20. Following the Incident, Bonanno, Mrs. Bonanno, the Nanny, and the other occupants each claimed to have remained at the Premises and in the kitchen area until approximately 2:00 p.m., at which time Bonanno, Mrs. Bonanno, the child, and others departed the Premises for approximately two hours. The Nanny remained behind at the Premises.

21. At approximately 3:52 p.m., while on the ground floor of the Premises, the Nanny claimed to have heard the sound of running water. The Nanny claimed to have observed water leaking through the kitchen ceiling. The Nanny claimed to have called Bonanno at approximately 3:55 p.m. to report the leak, placed bowls and towels to catch water, and proceeded to the third floor, where she turned off the water supply valve to the toilet. The Nanny claimed she observed water leaking at the base of the third-floor toilet.

22. The water overflow went undetected for a substantial period and was not discovered and reported until mid-afternoon, during which time water infiltrated the wall cavities, beneath the flooring, and through the ceilings, causing extensive damage to all three floors of the Premises (the "Loss").

23. In a written statement provided following the Loss, Bonanno acknowledged that his minor child used the third-floor bathroom toilet at approximately 9:00 a.m. on August 21, 2025, and that the toilet only "appeared" to have flushed. Bonanno further acknowledged that the toilet may not have been properly cleared or verified following the child's use thereof.

24. Following the Loss, Owner's designated property caretaker, Sherburne Management — whose role as caretaker of the Premises was expressly identified in the Occupancy Agreement, which required Bonanno to notify Sherburne Management immediately of any

damage — responded to the emergency at the Premises on August 21, 2025 and, together with licensed plumbers and professional remediation professionals retained by Owner, conducted a thorough investigation of the third-floor bathroom and its plumbing fixtures.

25. Sherburne Management's investigation further revealed that the Water Sensor had been removed from its installed position on the bathroom floor and repositioned atop a windowsill in the third-floor bathroom, where it remained fully operational at the time of the investigation — confirming that the Water Sensor had been intentionally relocated by an occupant of the Premises during the Rental Period and that its failure to alarm was the direct result of that relocation, not any malfunction.

26. Neither Sherburne Management nor the licensed plumbers found any evidence of any burst pipes, leaks, mechanical failures, plumbing defects, or other structural or systemic causes which might have contributed to the Loss. The absence of any water leak alarm is further evidence that the Water Sensor had been removed, relocated, or disabled before the overflow began. The Nanny, who claimed to be present at the Premises throughout the afternoon of August 21, 2025, and who claimed to have first discovered the flooding at approximately 3:52 p.m., made no reference in her written statement or in her communications with Owner to having heard any water alarm or alert at any point prior to her discovery of the flooding. Had the Water Sensor remained in its installed position and operational condition, it would have alarmed upon water reaching the bathroom floor, providing advance warning of the overflow that the Nanny — who was physically present in the Premises — would have heard and acted upon, thereby preventing or substantially limiting the resulting damage.

27. All findings confirmed that the sole source of water causing the Loss was occupant-related activity in the third-floor bathroom, and specifically the overflow or uncontrolled discharge

of water from one or more plumbing fixtures therein — including without limitation the toilet and/or the bathtub — and not any burst pipe, pre-existing mechanical defect, or systemic plumbing failure.

**THE DAMAGE AND OWNER'S LOSSES**

28. As a result of the Loss, the Premises was rendered uninhabitable and all scheduled rentals for the remainder of the 2025 rental season were cancelled.

29. Owner duly filed a first-party insurance claim with its property insurer, Beazley USA Services, Inc./Lloyd's ("Insurer"). The Insurer retained Friedline & Carter Adjustment, LLC to adjust the claim. On or about August 29, 2025, the Insurer's adjuster established the Replacement Cost Value of the covered structural damage at $96,384.16. However, the Owner's insurance policy (Policy No. W5254025PNYH) contained a Water or Steam Damage Endorsement (Form BSLHO 04920222) which capped the aggregate payout on water damage claims—including loss of use—at $50,000.00.

30. The Insurer paid Owner the policy limit of $50,000.00 on the water damage claim. The actual remediation and repair costs incurred by Owner through March 2026 total $160,447.66, leaving uninsured remediation and repair costs of not less than $105,947.66 after application of the insurance proceeds and damage deposit.

31. The total remediation, repair, and restoration costs actually incurred by Owner to restore the Premises following the Loss substantially exceeded the preliminary loss adjustment and insurance proceeds paid. Remediation and restoration work encompassed: emergency response and plumbing repairs (including third-floor toilet gasket and valve replacements); professional water damage remediation (sewage remediation, moisture mitigation, and drying equipment installation); complete demolition and replacement of Eastern White Pine flooring and stair restoration on all three floors and all stair treads and landings; plaster work and insulation

installation throughout; interior painting (primer plus two finish coats); carpentry, millwork, and finish trim work; appliance replacement (including mini-refrigerator); and post-construction cleaning. To date, Owner has paid more than $160,447.66 in loss remediation and mitigation expense, exclusive of loss of rental use of the Property.

32. The remediation work, including sewage-related remediation, was necessitated solely by the overflow of water from the restroom and constitutes direct physical damage to the structure of the Premises caused by the occupant-related Incident, and does not arise from the independent growth, presence, or existence of fungi, wet or dry rot, or bacteria as a primary cause.

33. In addition to the direct property damage, Owner suffered a significant loss of rental income attributable to the Loss, including not less than $38,500.00 in confirmed, pre-paid vacation rental reservations that were cancelled directly as a result of the Loss and the uninhabitable condition of the Premises.

34. Owner is also entitled to recover additional lost rental income for the fall/winter 2025–2026 rental periods through at least April 2026, in an amount to be proven at trial, based on the Premises' established premium rental rates on Nantucket.

35. Owner has further incurred costs for expert consultants, licensed plumbers, remediation professionals, attorneys, and other professional services in connection with the investigation and adjustment of the Loss and this litigation.

36. By letter dated September 18, 2025, Owner, through counsel, formally notified Bonanno and Mrs. Bonanno of the claim, demanded disclosure of all applicable insurance coverage, directed the preservation of all evidence, and demanded reimbursement of the uninsured losses. The Notice of Claim expressly advised the Bonannos that Owner was prepared to initiate a declaratory judgment action against them and their insurer(s) to determine coverage for the Loss.

Despite the foregoing, the Bonanno Defendants have failed and refused to compensate Owner for its damages.

37. On October 10, 2025, Owner, through its Manager Eric M. Stroud, sent a further written communication directly to Bonanno at his New York address, again demanding reimbursement for the uninsured losses and advising Bonanno that the licensed plumber who investigated the Premises following the Loss found no evidence of any burst pipe or pre-existing plumbing defect that could account for the extent of the water damage, and specifically rebutting the assertion — attributed to the Nanny — that the flooding had been caused by a burst pipe. Bonanno did not respond to Owner's direct demand or otherwise offer any compensation.

38. By letter dated October 23, 2025, Cincinnati, through its Senior Claims Specialist, acknowledged receipt of Owner's counsel's letter of representation. Cincinnati disclosed coverage under the Cincinnati Policy of $1,000,000 per occurrence for bodily injury and property damage liability, $1,000,000 in personal injury aggregate coverage, and $50,000 per person in medical payments to others. The available coverage under the Cincinnati Policy is sufficient to fully satisfy the totality of Owner's documented losses.

39. Notwithstanding the available coverage and the clear factual record, Cincinnati has taken the position that the Loss "appears to be a plumbing issue" and that there is "nothing to support that our insured caused this issue by way of negligence." In a subsequent communication, Cincinnati's claims representative further asserted that the Bonannos' insured "was present when the plumber repaired the toilet" and requested a plumber's report as a precondition to advancing the claim — suggesting that Cincinnati has characterized post-incident repair work as evidence of a pre-existing mechanical defect, rather than as remediation performed as a direct result of the Loss.

40. Cincinnati's characterization of the Loss is contradicted by the factual record: (a) Bonanno has admitted his minor child used the third-floor toilet at approximately 9:00 a.m. on August 21, 2025, and that the toilet only 'appeared' to have flushed; (b) licensed plumbers retained by Owner found no evidence of any burst pipe, pre-existing leak, mechanical failure, or plumbing defect as a cause of the overflow; (c) Bonanno removed the water leak detection sensor installed by Owner adjacent to the toilet, constituting independent negligence; and (d) the plumber's repair work (gasket and wax ring replacement, valve replacements) constitutes post-incident remediation caused by the overflow, not evidence of any pre-existing defect.

41. Owner's insurer's subrogation counsel has evaluated the Loss and has advised Owner's counsel in writing that, in counsel's assessment, subrogation against the Bonanno Defendants is not legally viable and would not be economical to pursue, and that the Insurer does not intend to assert, and has not asserted, any subrogation claim arising from the Loss. Owner's insurer's subrogation counsel has further confirmed in writing that this position does not affect Owner's independent right to pursue the uninsured portion of its losses in its own name. Owner accordingly brings this action in its own name to recover its uninsured and excess losses.

**<u>COUNT I</u>**
**BREACH OF CONTRACT**
**(Against Defendant Matthew W. Bonanno)**

42. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 above as if fully set forth herein.

43. The Occupancy Agreement constitutes a valid and binding contract between Owner and Defendant Matthew W. Bonanno ("Bonanno").

44. Owner fully performed all of its obligations under the Occupancy Agreement.

45. Defendants breached the Occupancy Agreement by, among other acts and omissions: (a) failing to maintain the Premises in good order and condition during the rental period;

(b) failing to return the Premises in the condition in which it was received; (c) causing or permitting the plugging or clogging of the third-floor toilet and/or the overflow or uncontrolled discharge of water from a plumbing fixture in the third-floor bathroom, whether by a minor child in their charge or otherwise; (d) removing the Water Sensor, which was a safety device installed by Owner; (e) failing to timely discover and report the water overflow; and (f) causing or permitting damage to and waste of the Premises.

46. As a direct and proximate result of Defendant's breaches, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, expert and investigation costs, and other consequential damages.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (Against Defendant Matthew W. Bonanno)

47. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 above as if fully set forth herein.

48. Under Massachusetts law, every contract carries with it an implied covenant of good faith and fair dealing. The Occupancy Agreement therefore obligated Defendant Matthew W. Bonanno ("Bonanno"), as the named tenant, to perform his obligations in good faith, to act consistently with the reasonable expectations of the parties, and to refrain from conduct that would destroy or injure Owner's right to receive the full benefit of the Occupancy Agreement, including the protection afforded by the safety devices Owner had installed at the Premises.

49. Owner fully performed all of its obligations under the Occupancy Agreement, including delivering the Premises in good condition and installing and maintaining functional safety devices, including the Water Sensor, adjacent to the third-floor bathroom toilet, for the express purpose of detecting and alarming upon water overflow or leakage.

50. Bonanno breached the implied covenant of good faith and fair dealing by engaging in conduct that deliberately impaired Owner's ability to receive the full benefit of the Occupancy Agreement, including without limitation: (a) removing the Water Sensor that Owner had installed adjacent to the third-floor bathroom toilet, which was specifically designed to detect and alarm upon any water overflow or leakage and thereby prevent or limit property damage to the Premises; (b) failing to ensure that the third-floor toilet was properly cleared and in good working order, and that no plumbing fixture in the third-floor bathroom was left in an overflowing, running, or unattended condition, following the minor child's use of the third-floor bathroom; (c) departing the Premises at approximately 2:00 p.m. on August 21, 2025, with knowledge or reason to know that the toilet may not have been properly cleared, and without inspecting or confirming the condition of the third-floor bathroom prior to departure; and (d) thereby exposing the Premises to the precise harm that Owner had specifically designed and implemented the Water Sensor to detect, prevent, and mitigate.

51. Bonanno's removal of the Water Sensor constituted an affirmative act of bad faith that went beyond mere failure to perform his contractual obligations. By actively removing a safety device that Owner had installed as a specific protection against the type of water damage that resulted, Bonanno destroyed one of the material benefits for which Owner had contracted, and did so in a manner that was deliberately inconsistent with the reasonable expectations of the contracting parties and fundamentally incompatible with the purpose of the Occupancy Agreement.

52. As a direct and proximate result of Bonanno's breach of the implied covenant of good faith and fair dealing, Owner has suffered damages in an amount to be proven at trial,

including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, and other consequential damages.

**COUNT III**
**NEGLIGENCE**
**(Against All Defendants)**

53. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54. At all times relevant hereto, each of the Defendants owed Owner a duty of reasonable care in the use and occupancy of the Premises, including the duty to use the Premises in a reasonable manner, to prevent foreseeable damage to the Premises, and to refrain from taking actions that would foreseeably cause damage thereto.

55. Bonanno breached his duty of care by, among other acts and omissions: (a) removing the Water Sensor installed adjacent to the third-floor bathroom toilet, thereby impairing the sole early warning mechanism available at the Premises to detect water overflow; (b) failing to ensure that the third-floor toilet was in proper working order and that no plumbing fixture in the third-floor bathroom was left running, overflowing, or unattended after his minor child's use of the third-floor bathroom; (c) failing to inspect or verify the condition of the third-floor bathroom, including the toilet, bathtub, and other plumbing fixtures therein, prior to the family's departure; and (d) failing to take reasonable precautions to prevent or mitigate foreseeable water damage to the Premises.

56. Mrs. Bonanno breached her duty of care by, among other acts and omissions: (a) failing to supervise the minor child in her charge during his use of the third-floor bathroom; (b) failing to ensure that the third-floor toilet was in proper working order after the child's use thereof; (c) remaining at the Premises for approximately one hour following Bonanno's departure at approximately 2:00 p.m. without inspecting or verifying the condition of the third-floor bathroom

or its plumbing fixtures, despite having actual knowledge that the minor child had used the third-floor toilet earlier that morning and that the toilet had only "appeared" to have flushed; and (d) failing to take reasonable precautions to prevent or mitigate foreseeable water damage to the Premises prior to leaving the Premises.

57. The Nanny breached her duty of care by, among other acts and omissions: (a) failing to adequately supervise the minor child, including during and after the child's use of the third-floor bathroom; (b) failing to timely inspect the condition of the third-floor bathroom and toilet following the child's use thereof; and (c) failing to timely discover and report the water overflow or otherwise take steps to prevent or mitigate the damage to the Premises.

58. As a direct and proximate result of Defendants' negligence, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, and other consequential damages.

**COUNT IV**
**NEGLIGENT SUPERVISION**
**(Against All Defendants)**

59. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58 above as if fully set forth herein.

60. At all times relevant hereto, Bonanno, Mrs. Bonanno, and the Nanny each had a duty to exercise reasonable care in the supervision and control of the minor child in their charge.

61. Bonanno and Mrs. Bonanno, as the parents and/or guardians of the minor child, had a nondelegable duty to supervise and control the child's conduct in a manner designed to prevent foreseeable harm or damage to third parties and their property.

62. The Nanny, as the childcare provider retained by the Bonannos and present at the Premises during the time the child occupied the Premises and used the third-floor bathroom, had an independent duty to supervise and control the minor child in her care.

63. Defendants breached their respective duties to supervise and control the minor child by failing to ensure the child properly used and left in proper working order the toilet and other plumbing fixtures in the third-floor bathroom following his use thereof; by failing to inspect or verify the condition of the third-floor bathroom and its plumbing fixtures following the child's use thereof; and by failing to take reasonable steps to prevent or mitigate the foreseeable risk of water overflow or flooding from the toilet, bathtub, or other plumbing fixtures in the third-floor bathroom resulting from the child's unsupervised or inadequately supervised use thereof.

64. As a direct and proximate result of Defendants' negligent supervision of the minor child, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, and other consequential damages.

**<u>COUNT V</u>**
**VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**
**(Against Defendants Matthew W. Bonanno and Emily J. Bonanno)**

65. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 64 above as if fully set forth herein.

66. At all times relevant hereto, defendant Jane Doe (the "Nanny") was, upon information and belief, employed by, retained by, and/or acting as the household employee, servant, agent, or person under the direction and control of defendants Matthew W. Bonanno ("Bonanno") and Emily J. Bonanno ("Mrs. Bonanno") in connection with the care and supervision of their minor child and the occupancy of the Premises.

67. At all times relevant hereto, the Nanny was acting within the scope of her employment, agency, and/or duties for Bonanno and Mrs. Bonanno, including without limitation supervising the minor child, remaining at the Premises while Bonanno and Mrs. Bonanno were away, observing conditions within the Premises, responding to household issues, and taking such steps as were reasonably necessary to report, prevent, mitigate, or control damage to the Premises.

68. As alleged herein, the Nanny was negligent in one or more of the following respects, including but not limited to:

(a) failing to adequately supervise the minor child in and around the third-floor bathroom;

(b) failing to inspect or verify the condition of the third-floor bathroom and its plumbing fixtures following the child's use thereof;

(c) failing to timely discover and report the overflow condition;

(d) failing to take reasonable measures to prevent, stop, or mitigate the water intrusion and resulting damage; and/or

(e) otherwise failing to exercise reasonable care in connection with the use and occupancy of the Premises.

69. The acts and omissions of the Nanny, as alleged herein, occurred while she was acting within the scope of her employment, agency, and/or service to Bonanno and Mrs. Bonanno.

70. Accordingly, Bonanno and Mrs. Bonanno are vicariously liable, under the doctrine of respondeat superior and related principles of agency, for the negligent acts and omissions of the Nanny.

71. As a direct and proximate result of the Nanny's negligence, and the vicarious liability of Bonanno and Mrs. Bonanno therefor, Plaintiff has suffered damages in an amount to

be proven at trial, including without limitation uninsured property damage to the Premises, remediation and repair costs, loss of use, lost rental income, and other consequential damages.

**COUNT VI**
**WASTE**
**(Against Defendant Matthew W. Bonanno)**

72. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 71 above as if fully set forth herein.

73. As tenants in possession of the Premises pursuant to the Occupancy Agreement, defendant Bonanno had a duty to refrain from committing waste upon the Premises.

74. By removing the Water Sensor, permitting or causing the plugging of the third-floor toilet and/or the overflow or uncontrolled discharge of water from a plumbing fixture in the third-floor bathroom without ensuring the bathroom and its fixtures were left in proper, safe, and functioning condition, Defendant committed waste upon the Premises.

75. The Defendant's conduct, including the removal of a safety device (the Water Sensor) designed to provide early warning of water overflow and to prevent or limit damage to the Premises, constitutes destructive misuse of and damage to the Premises.

76. As a direct and proximate result of Defendant's waste, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, and other consequential damages.

**COUNT VII**
**CONVERSION**
**(Against Matthew W. Bonanno)**

77. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 76 above as if fully set forth herein.

78. At all times prior to and during the Bonannos' occupancy of the Premises, the Water Sensor was the personal property of Owner, lawfully purchased, installed, and maintained by

Owner adjacent to the third-floor bathroom toilet at the Premises for the purpose of detecting water overflow or leakage from the toilet, bathtub, or other plumbing fixtures in the bathroom, and providing an early warning alarm.

79. As alleged herein, Bonanno intentionally removed the Water Sensor from its installed location at the Premises during his occupancy thereof. In so doing, Bonanno intentionally exercised dominion and control over Owner's personal property in a manner that was inconsistent with, and in derogation of, Owner's rights as the true owner of the Water Sensor. Bonanno had no right, license, or authority under the Occupancy Agreement or otherwise to remove, disable, or otherwise interfere with the Water Sensor or any other safety device installed by Owner at the Premises.

80. Bonanno's removal of the Water Sensor deprived Owner of the use, benefit, and protection afforded by its personal property, and directly and substantially contributed to the severity of the Loss by eliminating the sole early warning mechanism available at the Premises to detect and alarm upon water overflow from the toilet, bathtub, or other plumbing fixtures in the third-floor bathroom.

81. As a direct and proximate result of Bonanno's conversion of the Water Sensor, Owner has suffered damages, including without limitation the value of the Water Sensor and the consequential damages flowing from the Loss that the Water Sensor was specifically designed to prevent or limit, in an amount to be proven at trial.

**COUNT VIII**
**TRESPASS TO CHATTELS**
**(Against Matthew W. Bonanno)**

82. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above as if fully set forth herein.

83. This Count is pleaded in the alternative to Count VII (Conversion) and without prejudice to the allegations and claims set forth therein. At all times relevant hereto, Owner had a lawful possessory interest in the Water Sensor, which was Owner's personal property installed at the Premises, and Owner was entitled to the uninterrupted use and benefit of the Water Sensor as a functioning safety device during the term of the Occupancy Agreement.

84. Bonanno intentionally interfered with Owner's possessory interest in the Water Sensor by removing it from its installed location adjacent to the third-floor bathroom toilet during his occupancy of the Premises. Bonanno's intentional act of removing the Water Sensor constituted an unlawful interference with Owner's chattel that directly and substantially harmed Owner, including by disabling the sole early warning mechanism available at the Premises to detect and alarm upon water overflow from the toilet, bathtub, or other plumbing fixtures in the third-floor bathroom.

85. As a direct and proximate result of Bonanno's trespass to Owner's chattels, Owner has suffered damages, including without limitation the loss of use and benefit of the Water Sensor and the consequential damages arising from the Loss that the Water Sensor was specifically designed to prevent or limit, in an amount to be proven at trial.

**COUNT IX**
**UNJUST ENRICHMENT**
**(Against All Bonanno Defendants)**

86. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 85 above as if fully set forth herein.

87. This Count is pleaded in the alternative to Counts I and II, and without prejudice to the allegations and claims set forth therein. All Bonanno Defendants received a substantial and measurable benefit from Owner in the form of the exclusive occupancy and use of the Premises — a premium vacation rental property on Nantucket — for the period commencing August 16,

2025 and concluding August 30, 2025, at a contracted rental value of $45,000.00 plus fees and taxes totaling $54,848.77. The Bonanno Defendants were at all times aware of the benefit being conferred upon them by Owner. To the extent that Defendant Matthew W. Bonanno is determined not to be liable under the express terms of the Occupancy Agreement, or that any contract remedy is otherwise unavailable or inadequate, Bonanno is alternatively liable in unjust enrichment for the value of the benefit he received.

88. The Bonanno Defendants accepted, occupied, and enjoyed the full benefit of their occupancy of the Premises throughout the rental period while simultaneously causing or permitting the Loss, which resulted in catastrophic water damage to all three floors of the Premises, rendered the Premises uninhabitable, and caused Owner to sustain property damages totaling in excess of $198,947.66, including uninsured remediation and repair costs of not less than $105,947.66 and confirmed lost rental income of not less than $38,500.00.

89. It would be unjust and inequitable for the Bonanno Defendants to retain the full benefit of their occupancy of the Premises without compensating Owner for the harm their acts and omissions caused during that same occupancy. This is particularly so with respect to defendants Emily J. Bonanno and Jane Doe, who, to the extent they are not bound by the express terms of the Occupancy Agreement, nonetheless received and enjoyed the direct benefit of occupying the Premises at Owner's expense while their negligent acts and omissions, and those of the minor child in their care, directly caused or contributed to the Loss.

90. As a result of the Bonanno Defendants' unjust enrichment at Owner's expense, Owner is entitled to restitution and/or disgorgement in an amount to be proven at trial, including without limitation damages equal to the value of the benefit conferred upon the Bonanno

Defendants and/or the full measure of the harm caused to Owner as a consequence of their occupancy of the Premises.

**COUNT X**
**RECKLESS CONDUCT**
**(Against Defendants Matthew W. Bonanno and Emily J. Bonanno)**

91. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 90 above as if fully set forth herein.

92. At all times relevant hereto, defendants Matthew W. Bonanno and Emily J. Bonanno each owed Owner a duty of reasonable care in the use and occupancy of the Premises. Gross negligence or recklessness, as distinct from ordinary negligence, consists of conduct that evinces a reckless disregard of the rights and safety of others — that is, an intentional act of an unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would follow. The conduct of each of the Bonannos, as alleged herein, rises to this heightened standard.

93. Matthew W. Bonanno acted with gross negligence and in reckless disregard of Owner's property rights by, among other acts and omissions: (a) intentionally removing the Water Sensor from its installed position adjacent to the third-floor bathroom toilet — a device whose sole purpose was to detect and alarm upon water overflow — and repositioning it atop a windowsill where it could not perform its protective function, thereby deliberately disabling the only early warning mechanism available to detect a water overflow event at the Premises; (b) departing the Premises at approximately 2:00 p.m. on August 21, 2025, with actual knowledge that his minor child had used the third-floor toilet at approximately 9:00 a.m. and that the toilet had only "appeared" to have flushed — that is, with actual knowledge of a known and obvious risk of overflow — without inspecting or confirming the condition of the third-floor bathroom or its plumbing fixtures before leaving; and (c) leaving the Premises in the care of the Nanny without

disclosing to her the uncertainty as to the condition of the third-floor toilet or the fact that the Water Sensor had been removed from its installed position, thereby depriving her of the information necessary to discover and respond to an overflow before catastrophic damage occurred. Each of these acts was intentional, deliberate, and undertaken in conscious disregard of the known and obvious risk of substantial water damage to all three floors of the Premises.

94. Emily J. Bonanno acted with gross negligence and in reckless disregard of Owner's property rights independently and in addition to the reckless conduct of Matthew W. Bonanno alleged above. Mrs. Bonanno was present at the Premises throughout the morning of August 21, 2025, shared responsibility with Mr. Bonanno for the supervision of the minor child, and had actual knowledge of the same facts known to Mr. Bonanno: that the child had used the third-floor toilet at approximately 9:00 a.m., that the toilet had only "appeared" to have flushed, and that the Premises had been occupied for hours thereafter without any adult confirming that the third-floor bathroom and its plumbing fixtures were in proper working order. Following Mr. Bonanno's departure at approximately 2:00 p.m., Mrs. Bonanno remained the only adult member of the Bonanno family at the Premises for approximately one hour before she too departed at approximately 3:00 p.m. — leaving the Nanny as the sole remaining adult at the Premises. During that hour, Mrs. Bonanno took no steps to inspect or verify the condition of the third-floor bathroom or its plumbing fixtures, did not restore the Water Sensor to its installed position, and did not inform the Nanny of the uncertainty as to the condition of the third-floor toilet or of the absence of the Water Sensor from its installed position. Mrs. Bonanno's decision to depart the Premises under these circumstances — with actual knowledge of an unresolved and obvious risk of water overflow, without taking any corrective action and without conveying any warning to the person she was leaving in charge — constituted conscious and reckless indifference to the foreseeable

consequences for Owner's property, and was a direct and proximate contributing cause of the severity of the Loss.

95. The conduct of each of the Bonannos, as alleged in this Count, was not the product of inadvertence, mistake, or simple failure of care. It reflects a pattern of deliberate action — removing a safety device, departing with knowledge of an unresolved risk, and failing to inform those remaining at the Premises of either fact — that, viewed in combination, demonstrates a conscious and reckless indifference to the foreseeable consequences for Owner's property. The severity of the resulting Loss, which encompassed catastrophic flooding of all three floors of the Premises, damage in excess of $215,000.00, and loss of rental use through April 2026, was the direct and foreseeable result of the Bonannos' reckless disregard of Owner's rights.

96. As a direct and proximate result of the Bonannos' gross negligence and reckless disregard of Owner's rights, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, expert and investigation costs, and other consequential damages. Owner further seeks all damages available at law for reckless conduct, including enhanced compensatory damages.

**COUNT XI**
**DECLARATORY JUDGMENT — INSURANCE COVERAGE**
**(Against Defendants Matthew W. Bonanno, Emily J. Bonanno, and The Cincinnati Insurance Company)**

97. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 96 above as if fully set forth herein.

98. The Cincinnati Insurance Company issued Policy No. 05C011064266 (the "Cincinnati Policy") to Matthew and Emily Bonanno as named insureds, which policy provides

personal liability coverage of $1,000,000 per occurrence for property damage, and was in full force and effect on August 21, 2025, the date of the Loss.

99. The Loss — consisting of water damage to the Premises arising from the overflow or uncontrolled discharge of one or more plumbing fixtures in the third-floor bathroom during the Bonannos' occupancy — constitutes a covered 'occurrence' within the meaning of the Cincinnati Policy, and the damages sustained by Owner are the direct result of the Bonannos' acts and omissions during their occupancy of the Premises.

100. By letter dated September 18, 2025, Owner's counsel formally notified Cincinnati of the Loss and of Owner's claim against the Bonannos, and provided Cincinnati with the factual basis for the claim, including: (a) Bonanno's own admission that his minor child used the third-floor toilet at approximately 9:00 a.m. on August 21, 2025, and that the toilet only "appeared" to have flushed; (b) the findings of licensed plumbers retained by Owner, who inspected the Premises following the Loss and found no evidence of any burst pipe, pre-existing leak, mechanical failure, or plumbing defect as a contributing cause of the overflow; (c) Bonanno's removal of the water leak detection sensor installed by Owner adjacent to the third-floor toilet; and (d) the Insurer's preliminary loss adjustment establishing the Replacement Cost Value of the covered structural damage at $96,384.16, exclusive of remediation costs and lost rental income. Owner's counsel demanded that Cincinnati disclose all applicable coverage and preserve all evidence, and expressly advised Cincinnati that Owner was prepared to initiate a declaratory judgment action to establish coverage for the Loss.

101. On October 23, 2025 — five weeks after Owner's counsel's notice letter — Cincinnati, through its Senior Claims Specialist, acknowledged the claim (Claim No. 4583781) but declined to accept liability and did not include any settlement offer, did not disclose the result

of any investigation it had conducted, and did not provide any written coverage analysis or reservation of rights. Instead, Cincinnati's sole substantive response, contrary to the factual record, was that the Loss "appears to be a plumbing issue" and that there is "nothing to support that our insured caused this issue by way of negligence." Cincinnati's characterization was made with full knowledge of: (a) Bonanno's own admissions regarding the cause of the Loss; (b) Owner's licensed plumbers' findings conclusively ruling out any pre-existing plumbing defect; and (c) Bonanno's affirmative act in removing the Water Sensor. Cincinnati offered no factual or investigative basis for its characterization and cited no specific evidence to support the suggestion of a pre-existing plumbing defect.

102. In a subsequent communication, Cincinnati's claims representative conditioned further advancement of the claim on Owner's production of a plumber's report, while simultaneously asserting that the Bonannos' insured "was present when the plumber repaired the toilet" — suggesting that post-incident repair work (replacement of the gasket, wax ring, and valve, performed as remediation of the overflow damage) constituted evidence of a pre-existing mechanical defect. This characterization inverts the factual record: the plumber's repair work was performed as a direct result of the overflow, not as evidence of any pre-existing condition, and Cincinnati's attempt to reframe it as such lacks any evidentiary foundation and is directly contradicted by the findings of Owner's licensed plumbers.

103. The Cincinnati Policy affords personal liability coverage of $1,000,000 per occurrence for property damage — an amount sufficient to fully satisfy the totality of Owner's documented losses, which total in excess of $250,000.00, representing a fraction of the available coverage. On the basis of the record available to Cincinnati from and after September 18, 2025 — including Bonanno's own admissions, the absence of any evidence of a pre-existing plumbing

defect, and the Bonannos' affirmative act in removing the Water Sensor — the liability of the Bonannos for the Loss, and Cincinnati's corresponding obligation to indemnify, was and remains reasonably clear. Notwithstanding the foregoing, Cincinnati has declined to make any settlement offer, has failed to effectuate a prompt, fair, and equitable resolution of Owner's claim, and has persisted in a characterization of the Loss that is contradicted by the entirety of the factual record.

104. An actual, justiciable controversy therefore exists between Owner, the Bonannos, and Cincinnati regarding whether the Loss is a covered occurrence and whether Cincinnati is obligated to indemnify the Bonannos for the damages awarded herein.

105. Pursuant to G.L. c. 231A, Owner is entitled to a declaration that: (a) the Loss constitutes a covered occurrence under the Cincinnati Policy giving rise to Cincinnati's duty to defend and indemnify the Bonannos; (b) the Bonannos' negligent acts and omissions, including without limitation the removal of the Water Sensor, the failure to supervise the minor child's use of the third-floor bathroom, and the failure to inspect or verify the condition of the third-floor bathroom and its plumbing fixtures before departing the Premises, are covered under the personal liability provisions of the Cincinnati Policy; and (c) Cincinnati is obligated to indemnify Matthew and Emily Bonanno for all compensatory damages, interest, costs, and other amounts awarded to Owner in this action, up to and including the full applicable policy limits.

106. The declaration sought herein will terminate the controversy between Owner, the Bonannos, and Cincinnati regarding coverage for the Loss and will avoid further multiplicity of litigation.

**VERIFICATION**

I, Eric M. Stroud, Manager of 1942 Realty, LLC, plaintiff herein, state that I am an individual over the age of eighteen and authorized by Plaintiff to make this Verification, that I have read the foregoing and am informed and believe that the statements contained in this Verified Complaint are true and correct to the best of my knowledge and belief, except those statements that I make on information and belief, which upon information and belief I believe to be true and accurate, that no material facts have been omitted therefrom, and so state under the pains and penalties of perjury:

Eric M. Stroud, Manager
1942 Realty, LLC

Dated: June 22, 2026

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 1942 Realty, LLC demands judgment against defendants Matthew W. Bonanno, Emily J. Bonanno, Jane Doe (the Nanny), and The Cincinnati Insurance Company, as follows:

1. A judgment declaring that the Loss constitutes a covered occurrence under Cincinnati Policy No. 05C011064266; that the Bonannos' negligent acts and omissions are covered under the personal liability provisions thereof; and that The Cincinnati Insurance Company is obligated to indemnify the Bonannos for all damages awarded to Owner in this action up to the applicable policy limits;

2. Compensatory damages in an amount to be proved at trial, including without limitation for uninsured property damage to the Premises, remediation and repair costs, loss of use, lost rental income, and other consequential damages proximately caused by the Defendants' acts and omissions, including damages caused by the negligence of Jane Doe for which Bonanno and Ms. Bonanno are vicariously liable, including expert, investigation, professional, and notice costs; and enhanced compensatory damages against Defendants Matthew W. Bonanno and Emily J. Bonanno arising from their gross negligence and reckless disregard of Owner's property rights as alleged in Count X;

3. Costs of suit, pre-judgment interest, including under G.L. c. 231, § 6B, and post-judgment interest as provided by law;

4. Attorneys' fees and costs as permitted by contract, statute, or law; AND

5. Such other and further relief as the Court deems just and proper.

## JURY CLAIM

Plaintiff 1942 Realty, LLC hereby makes claim for a trial by jury on all claims so triable.

**PLAINTIFF,**

1942 REALTY, LLC

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite #11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: June 22, 2026

A True Copy, Attest:
Colleen S. Whelden
Nantucket Superior Court

# EXHIBIT A

Date Filed 6/23/2026 3:02 PM
Superior Court - Nantucket
Docket Number

GREAT POINT
PROPERTIES

252410-1239

This Indenture, made October 8, 2024

1. PARTIES
Witnesses that LANDLORD: 1942 Realty LLC

2. TENANT
Does hereby lease, demise, and let unto TENANT: Matthew Bonanno
whose address is 155 East 72nd Street APT 9A, New York, NY 10021

3. TERM
To Arrive: Aug 16, 2025 , Saturday — Check-in no earlier than 3:00 PM
To Depart: Aug 30, 2025 , Saturday — Check-out no later than 10:00 AM

4. PREMISES

12 Galen Avenue



GREAT POINT PROPERTIES AGENT:

Jim Garrels
jim@greatpointproperties.com



5. OCCUPANCY — Maximum occupancy not to exceed 10

6A. RENT

| | |
|---|---|
| Rent Due: | $45,000.00 |
| Admin. Fee: | $75.00 |
| Security Deposit: | $4,500.00 |
| **Total Amount Due Before Taxes:** | **$49,575.00** |

6B. RENTAL TAXES

| | |
|---|---|
| MA Rental Tax - 5.7% | $2,569.27 |
| Nantucket Rental Tax - 6% | $2,704.50 |
| **Total Rental Taxes Due:** | **$5,273.77** |

7. PAYMENT SCHEDULE

In Accordance with this payment schedule:

| | | |
|---|---|---|
| 1st Nonrefundable Rent and Service Fee Payment: | $22,575.00 | Due 10/10/2024 |
| 2nd Nonrefundable Rent Payment: | $22,500.00 | Due 07/02/2025 |
| Security Deposit: | $4,500.00 | Due 07/02/2025 |
| Rental Tax: | $5,273.77 | Due 07/02/2025 |
| **Total Amount Due (Including Taxes):** | **$54,848.77** | |

The Tenant may not take occupancy of the Premises unless the Total Amount Due has been received and cleared by Great Point Properties by the Arrival Date.

8. SECURITY DEPOSIT

The TENANT agrees to pay $4,500.00 as a security/utility deposit to be held by Great Point Properties, Inc. the agent for this lease agreement. This deposit is not to be considered prepaid rent, nor shall damages or claims (if any) be limited to the amount of this deposit. This deposit will be also used to pay for long distance telephone calls, on-demand cable TV charges, and cleaning in excess of **12 hours**. The deposit will be returned with an itemized list of damages, repairs or other lawful deductions within 60 days of vacancy to TENANT. LANDLORD must submit written itemized copies of all bills, repairs, damage claims, etc. to Great Point Properties, Inc. within 45 days of TENANT'S vacancy in order to process and return TENANT'S security deposit within 60 days of vacancy. If LANDLORD shall fail to comply with these terms, the security deposit will be returned in full to the TENANT on the 60th day and the LANDLORD will be deemed to have waived their rights relative to reimbursement of any and all bills and expenses resulting from the tenancy. The LANDLORD will then become fully responsible for the collection of bills, and Great Point Properties, Inc. and its affiliates will be indemnified, defended and held harmless for any and all monies owed on said bills.

9. CONDITIONS OF PREMISES

The parties to this lease agree that if TENANT does not inspect Premises prior to executing this lease, TENANT will accept the property as is and will not be entitled to any refunds or return of any monies hereunder. LANDLORD shall prepare the Premises for occupancy. If TENANT is not satisfied with the cleanliness of the Premises upon arrival, TENANT will so notify Great Point Properties, Inc. in writing or via email within 24 hours to allow LANDLORD to promptly arrange to address these issues, which TENANT agrees to accept provided the LANDLORD resolves the issues in an expeditious manner. The LANDLORD hereby notifies the TENANT that Sherburne Management is the caretaker, and is responsible for the care and maintenance of the Premises and should be notified immediately of any damage to the Premises. The LANDLORD is responsible for arranging for turnover cleaning. LANDLORD shall provide clear recycling/trash bags, paper towels, toilet paper, dishwashing products, basic cleaning products and bath/hand soap.

10. TENANT'S RESPONSIBILITY

TENANT shall maintain the same in good order for the full term of this lease, and shall vacate the Premises peaceably and quietly, leaving it in the same orderly condition in which occupancy was taken. This lease includes **12 hours** of cleaning by professional cleaners. Any extra cleaning time shall be the sole responsibility of the TENANT and will be deducted from the security deposit. TENANT agrees to make the best effort to follow the instructions on the Tenant Check-in Letter to avoid excess cleaning cost. The tenant is further responsible for all damages or breakage and /or loss to the Premises except normal wear and tear. TENANT shall recycle trash by Nantucket rules and regulations, and cooperate with trash pickup service to be provided by Landlord. If the TENANT does not follow those rules and regulations and there are extra charges from the LANDLORD'S trash hauler, those charges will be paid by the TENANT. There is absolutely NO SMOKING on the Premises. Tenant shall not open or enter any locked "owner closet" or other excluded areas. TENANT will further have no claim or recourse against the rental agent or Great Point Properties, Inc.

11. PETS
Unless otherwise stated in this lease agreement, NO PETS of any kind shall be kept on the Premises. If any pets are found on the Premises, TENANT shall immediately FORFEIT the entire SECURITY DEPOSIT and this will constitute a violation of the terms of this lease and result in an immediate eviction. The SECURITY DEPOSIT shall be the minimum amount paid to the LANDLORD, but such forfeiture shall not limit the TENANT'S liability for amounts otherwise due for damage or costs otherwise due hereunder. Service animals are not pets, but proper documentation must be provided in advance of execution of the lease. Forfeiture under this clause releases the deposit from escrow. The TENANT shall waive any claims against Great Point Properties Inc. for delivering such funds.

12. ACCESS
TENANT agrees to allow the LANDLORD or his agent, with prior notice, to enter and view the Premises; to inspect the Premises; to make repairs and improvements to the Premises, and to protect the Premises if it appears that said Premises have been abandoned by the TENANT.
TENANT also agrees to allow the LANDLORD or his agents to show the Premises to a prospective tenant or purchaser given twenty-four hours notice. As of this date, the Premise is not currently listed for sale. The LANDLORD reserves the right to list the property for sale after the execution of this lease.

13. SUBLET
The TENANT shall not sublet the leased Premises, nor any part thereof.

14. PERSONAL PROPERTY
All personal property of the TENANT brought onto the leased Premises shall be at the sole risk of the TENANT. If the TENANT leaves personal property on the Premises, the TENANT shall be responsible for paying for the return of that personal property. LANDLORD is not responsible for any personal property left at the Premises.

15. CASUALTY
The LANDLORD and TENANT agree that should the Premises be destroyed by fire or any other casualty and become unfit for human habitation, for reasons not due to the TENANT, this lease shall become null and void with a refund to TENANT for unused term.

16. COMMISSION
LANDLORD agrees to pay a fee of $6,750.00 to Great Point Properties upon receipt from the TENANT of the first NONREFUNDABLE rental payment for this lease and to pay the stated commission percentage on any subsequent rentals of the Premises with the TENANT. In the event of a sale of the Premises to the TENANT by the LANDLORD within three years of the departure date of this lease, the LANDLORD shall pay a BROKER's fee of five percent to Great Point Properties, Inc. unless the LANDLORD has executed a listing agreement with a real estate company. Such executed listing agreement shall determine the commission to be paid to Great Point Properties if the TENANT purchases the premises. This clause shall survive the periods of this lease.

17. CANCELLATION
TENANT is responsible for full payment of the rental period upon signing of the lease. If any payment due hereunder is not received by Great Point Properties within one week of the due date, this lease, with written notice to the TENANT, may be terminated at the LANDLORD'S sole discretion. In the event that the TENANT has made all rent payments and wishes to cancel the lease, and the LANDLORD is able to fully re-rent the lease, the TENANT shall receive a refund of 85% of the rent amount paid. Great Point Properties shall retain the commissions paid on all leases. There is no obligation of the LANDLORD or Great Point Properties Inc. to re-rent the property. Returned check fee: $50.00.

18. STATE AND LOCAL SHORT TERM RENTAL TAX

With the execution of this lease, Tenant and Landlord acknowledge that the Commonwealth of Massachusetts has promulgated a short term rental tax law, effective January 1, 2019, for any lease of less than 32 days. Tenant and Landlord also acknowledge that the Town of Nantucket can approve additional taxes that may impact this lease. Tenant and Landlord agree to abide by all provisions of such law and to cooperate with one another as necessary and/or convenient to comply with same. As required by law, Great Point Properties shall collect the rental taxes and remit the taxes to the Commonwealth of Massachusetts and the Town of Nantucket on behalf of the Landlord as required by law.

19. NANTUCKET ZONING REGULATIONS

The terms of this lease agreement are subject to legal adherence to Nantucket zoning regulations. In the event that the Town of Nantucket enacts zoning and regulatory changes that prohibit the Lessor from offering a short-term rental of 32 days or less, then the lease shall be canceled, and full repayment will be made to the Lessee.

20. GREAT POINT PROPERTIES

The LANDLORD and the TENANT agree to indemnify and hold Great Point Properties Inc. harmless for any and all claims regarding the TENANT'S lease of the Premises from the LANDLORD.

**This lease is not legally binding until fully executed by both parties and funds have been received by Great Point Properties.**

1942 Realty, LLC

By: [signature]

Eric M. Stroud, Manager

[signature] 10/08/2024 10/11/24

TENANT DATE LANDLORD DATE

Docusign Envelope ID: 6198E955-76B4-4553-B64D-B8405492A3E8

GREAT POINT
PROPERTIES

12 GALEN AVENUE NANTUCKET, MA 02554
WIDOW'S WALK/ROOF WALK WAIVER

I, Matthew Bonanno, hereafter "TENANT", under the lease dated 10/8/2024 agree to rent the property located at 12 Galen Avenue, Nantucket, MA 02554 from 1942 Realty LLC, "LANDLORD", for the period from 08/16/2025 to 8/30/2025 in consideration of the mutual obligations contained in said Lease and a rider to the Lease to which this TENANT's Acknowledgment and Hold Harmless Agreement is attached, hereby,

(1) Acknowledge that the PREMISES is improved with a roof walk or widow's walk and the presence and use of the roof walk or widow's walk have inherent risks to me, my family, my guests and invitees. I acknowledge that personal injury and death from accessing and falling from the widow walk or roof walk can occur and agree to take all necessary preventive measures to avoid such personal injury.
(2) Assume the risks of the presence and use of the roof walk or widow walk for myself, my family, my guests and invitees.
(3) Agree to use reasonable care to ensure my safety and the safety of others while on or accessing the roof walk or widow's walk.
(4) Report any unsafe condition to the LANDLORD or their agents.
(5) Release LANDLORD (and their agents, employees and assigns) from any and all liability, damages, claims, and/ or actions arising out of any injuries suffered on the PREMISES and in particular from any and all liability associated with the use or access of the widow's walk or roof walk.
(6) Secure the roof walk when not in use and agree to keep closed the hatch to the widow's walk or roof walk when not in use.
(7) Indemnify and hold harmless LANDLORD (and their agents, employees, and assigns) from any and all liability, damages, claims and/ or actions associated with the occupancy of the PREMISES and in particular with the use of the roof walk or widow's walk.

IN WITNESS WHEREOF, the parties have hereunto interchangeably set their hands and seals on the day and year first above written.

1942 Realty, LLC

By: [signature]
Eric M. Stroud, Manager

DocuSigned by:
MATTHEW BONANNO 10/8/2024
Tenant D1DCFB5B49C24C2 Date

Landlord Date 10/11/24

1 NORTH BEACH STREET
NANTUCKET, MA 02554
508.228.2266

6 MAIN STREET
SIASCONSET, MA 02564
508.257.6335

GREATPOINTPROPERTIES.COM

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2675CV00024 | Massachusetts Trial Court Superior Court #2 |
|---|---|---|
| | | COUNTY Nantucket Superior Court |

Filed 06/23/2026

| | |
|---|---|
| **Plaintiff** 1942 REALTY, LLC | **Defendant:** Matthew W. and Emily J. Bonanno |
| ADDRESS: 3963 Maple Avenue, Suite 300 | ADDRESS: 155 East 72nd Street, Unit 9/10A |
| Dallas, TX 75219 | New York, NY 10021 |
| | |
| **Plaintiff Attorney:** Raymond H. Tomlinson, Jr., Esq. | **Defendant Attorney:** |
| ADDRESS: TOMLINSON \| LAW | ADDRESS: Jane Doe |
| 76 Tupper Road, Suite 11 | 155 East 72nd Street, Unit 9/10A |
| Sandwich, MA 02563 | New York, NY 10021 |
| BBO: 654855 | BBO: |
| **Plaintiff Attorney:** | **Defendant Attorney:** |
| ADDRESS: | ADDRESS: The Cincinnati Insurance Company |
| | P.O. Box 109 |
| | Hudson, MA 01749 |
| BBO: | BBO: |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A08 | Lease of Real Estate | F | ☒ YES ☐ NO |

***If "Other" please describe:**

**Is there a claim under G.L. c. 93A?** ☐ YES ☒ NO

**Is there a class action under Mass. R. Civ. P. 23?** ☐ YES ☒ NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date
1. Total hospital expenses ______
2. Total doctor expenses ______
3. Total chiropractic expenses ______
4. Total physical therapy expenses ______
5. Total other expenses (describe below) ______

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date ______
C. Documented property damages to date $160,447.66
D. Reasonably anticipated future medical and hospital expenses ______
E. Reasonably anticipated lost wages ______
F. Other documented items of damages (describe below) $38,500.00

Prepaid lost rental income (cancelled 2025 season reservations) of $38,500.00, which excludes lost rents for fall/winter 2025 through April 2026 and excludes professional costs

TOTAL (A-F): $198,947.66

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| | |
|---|---|
| Signature of Attorney/Self-Represented Plaintiff: X /s/ Raymond H. Tomlinson, Jr. | Date: June 22, 2026 |

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| | |
|---|---|
| Signature of Attorney: X /s/ Raymond H. Tomlinson, Jr. | Date: June 22, 2026 |

**A True Copy, Attest:**

Colleen S. Whelden

**Nantucket Superior Court**

# 3

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

Filed 09/09/2026

**MOTION TO DISMISS OF THE CINCINNATI INSURANCE COMPANY**

The Cincinnati Insurance Company, defendant in this matter, moves pursuant to Mass. R. Civ. P. 12(b)(6) and Mass. R. Civ. P. 12(h), for dismissal of the Plaintiff's only claim asserted against it, for "Declaratory Judgment" for the reasons set forth below, and as described in the accompanying Memorandum of Law:

1. Plaintiff's Complaint alleges, broadly, that the plaintiff suffered property damage to a home located in Nantucket County, and alleges that the damage is attributable to the actions of Matthew Bonanno and Emily J. Bonanno, Cincinnati Insurance Company's insureds, and that the Cincinnati Insurance Company issued a policy to Mr. Bonanno and Mrs. Bonanno, affording liability insurance coverage for the period at issue.

2. Plaintiff's Complaint seeks a declaration that the incident described in its complaint is a "covered occurrence" under the Cincinnati Insurance Company policy, and Cincinnati Insurance Company therefore has an obligation to "indemnify" its insureds against the losses and damage sought by the Plaintiff.

3. The Plaintiff's Complaint does not assert that any judgment has been obtained against Matthew Bonanno nor against Emily J. Bonanno, nor does it afford any basis to conclude that Mr. Bonnano or Mrs. Bonnano have been adjudicated "legally obligated to pay" the damages sought, and therefore, any declaration concerning the duty to indemnify is premature;

4. The Plaintiff's Complaint does not properly state a claim for declaratory judgment, as the Plaintiff and the Cincinnati Insurance Company are not parties to an "actual controversy," as presently, in the absence of a judgment against Cincinnati Insurance Company's insureds, the Plaintiff lacks any enforceable right in the Policy.

5. The Plaintiff's Complaint does not properly state a claim for declaratory judgment, as the Plaintiff lacks any standing to assert claims against the Cincinnati Insurance Company, as the liability of the Cincinnati Insurance Company's insureds has yet to be determined;

6. The Plaintiff's Complaint, as to Cincinnati Insurance Company, is an attempt to evade the prohibition on direct action against insurance companies, except within the bounds of statutory reach-and-apply or bad faith actions, and therefore, fails to state a claim upon which relief may be granted.

Therefore, the Cincinnati Insurance Company respectfully requests that the claims against it be dismissed with prejudice.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 11th day of August, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

Nora R. Adukonis

A True Copy, Attest:

Nantucket Superior Court

#3.1

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

Filed 09/09/2026

## MEMORANDUM OF LAW OF THE CINCINNATI INSURANCE COMPANY IN CONNECTION WITH ITS MOTION TO DISMISS

Cincinnati Insurance Company, defendant in this matter, moves pursuant to Mass. R. Civ. P. 12(b)(6) and 12(h), for dismissal on the basis that the Plaintiff's Complaint fails to adequately allege any basis for a declaratory judgment, as there is no "actual controversy" and the Plaintiffs have no standing.

### I. ALLEGATIONS IN COMPLAINT

Plaintiff's Complaint alleges the following: 1942 Realty LLC is the owner of property at 12 Galen Avenue in Nantucket, Massachusetts. Pl. Compl. ¶ 1. Defendant Matthew Bonanno rented the property for a two-week period in August of 2025, at a price of $54,848.77, including taxes and an "administrative fee." Pl. Compl. ¶ 11-13.

While Mr. Bonanno occupied the property, a toilet overflowed in the third-floor bathroom. Pl. Compl. ¶ 18. The water was not detected for two hours, which the plaintiff attributes to one of the named defendants having moved a water sensor in that room. Pl. Compl.

¶ 19, 25. The overflow caused water damage. Pl. Compl. ¶¶ 28-30. Plaintiff canceled vacation bookings for the rest of the season. Pl. Compl. ¶ 28. However, plaintiff's own insurance policy contained a "Water or Steam Damage Endorsement" which limited the amount of coverage to $50,000. Pl. Compl. ¶ 29.

Plaintiff demanded compensation from Mr. Bonanno, his wife, their nanny, and their liability insurance carrier, Cincinnati Insurance Company. Pl. Compl. ¶ 36. Plaintiff, through counsel, threatened declaratory judgment against the carrier prior to initiating any claim. Pl. Compl. ¶ 36. When Cincinnati was notified of the claim, Cincinnati indicated that there was no support for any negligence on the part of its insured, Mr. Bonanno. Pl. Compl. ¶ 39.

Plaintiff seeks a "Declaratory Judgment" that the policy issued to Mr. Bonanno, by Cincinnati, will indemnify Mr. Bonanno for the damage alleged in the Plaintiff's Complaint. Pl. Compl. ¶ 97-16. Plaintiff does not allege that there has been a bad faith failure to settle, does not allege that liability is reasonably clear, and has not included a cause of action pursuant to G.l. c. 93A and 176D. The only cause of action asserted against the Cincinnati Insurance Company is for "Declaratory Judgment." The declaratory judgment seeks a declaration that the water damage was an "occurrence" covered by the policy, and therefore, that Cincinnati Insurance Company has a duty to indemnify the Bonannos for the claims made by Plaintiff.

## II. STANDARD

"When evaluating a motion to dismiss a claim for declaratory relief under rule 12 (b) (6), a judge must proceed in two steps." *Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC,* 481 Mass. 13, 18 (2018). "First, the judge must determine whether the claim was 'properly brought.'" *Id.* (citing *Mscisz v. Kashner Davidson Sec. Corp.*, 446 Mass. 1008, 1010 (2006)). A claim for declaratory relief is properly brought when the plaintiff demonstrates that an "actual controversy

exists" and that the plaintiff has standing to sue. *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins.*, 373 Mass. 290, 292-293 (1977) (explaining standing requirement). If the claim is "properly brought," "the judge must proceed to the second step: determining whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss." *Buffalo-Water 1, LLC,* 481 Mass. at 18.

## III. ARGUMENT

"[F]or a court to entertain a petition for declaratory relief" there must be "(a) an actual controversy sufficient to withstand a motion to dismiss must appear on the pleadings; and (b) even if there is a finding of actual controversy, a plaintiff must demonstrate the requisite legal standing to secure its resolution." *Galipault v. Wash Rock Invs., LLC,* 65 Mass. App. Ct. 73, 83–84 (2005) (citing *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.*, 373 Mass. at 292.)

### A. Declaratory relief may not be entertained, as no "real dispute" exists between a tort claimant and a tortfeasor's insurance carrier until a judgment has been issued against the tortfeasor.

"An 'actual controversy' exists when there is 'a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.'" *Wells Fargo Fin. Massachusetts, Inc. v. Mulvey*, 93 Mass. App. Ct. 768, 771 (2018). Declaratory judgment actions are "concerned with the resolution of real, not hypothetical, controversies." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.*, 373 Mass. at 292–93. For an "actual controversy" to exist between the parties, it is not enough for the plaintiff to merely claim some interest that may be

harmed by the defendant; the defendant must have "violated some duty owed" to the plaintiff." *Source One Fin. Corp. v. Geico Indem. Co.*, 546 F. Supp. 3d 97, 99 (D. Mass. 2021) (*citing and quoting Enos v. Sec'y of Env't Affs.*, 432 Mass. 132 (2000) (internal quotations and citations omitted)).

1. *As the plaintiff has no right to receive payment from the defendant, there can be no present dispute between them.*

A tort claimant has no direct, enforceable right against a tortfeasor's liability carrier until judgment enters against a tortfeasor. *See Rogan v. Liberty Mut. Ins. Co.*, 305 Mass. 186, 187–88 (1940); *Kiley v. Stanley*, 328 Mass. 652, 652 (1952) *see also Shapiro v. State Farm Mut. Ins. Co.*, 355 Mass. 54, 57 (1968) (valid judgment prerequisite to action against insurance carrier on liability policy) *and Cubberley v. Com. Ins. Co.*, 495 Mass. 289, 294 (2025) (plaintiffs had no cause of action against insurance carrier directly, concerning its obligation to pay certain damages under liability policy, because they had not first obtained judgments against its insureds); *see also Martins v. Vermont Mut. Ins. Co.*, 662 F. Supp. 3d 55, 64–65 (D. Mass. 2023), *aff'd*, 92 F.4th 325 (1st Cir. 2024).

As there has been no judgment entered against Cincinnati Insurance Company's named insureds, plaintiff has no right to payment. As plaintiff has no right to payment from defendant, there can be no present "real" dispute between these parties, and the declaratory judgment claim must be dismissed.

2. *Declaratory judgment cannot be used as an "end run" around the absence of a direct, pre-judgment cause of action against an alleged tortfeasor's liability insurer outside of G. L. c. 93A.*

"[A] party may not seek declaratory relief to effect an 'end run' around the absence of a private right of action where the Legislature intended to foreclose certain remedies." *Serv. Emps. Int'l Union, Loc. 509 v. Dep't of Mental Health,* 469 Mass. 323, 336 (2014) (citing *Boston Med.*

*Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs.*, 463 Mass. 447, 471, (2012); *Green v. Mansour,* 474 U.S. 64, 73 (1985)). Massachusetts law recognizes only two instances where a tort claimant may bring suit against the alleged tortfeasor's liability insurer: (1) statutory "reach and apply" action pursuant to G. L. c. 214, § 3(9), and (2) an action pursuant to G.L. c. 93A §§ 9 or 11[1]. *See Lifchits v. Integon Nat'l Ins. Co.*, No. 18-CV-12637-ADB, 2020 WL 4756272, at *5 (D. Mass. Aug. 17, 2020) (discussing absence of direct action against insurer outside these two circumstances, and gathering cases as examples of each).

Absent a judgment against the insured, a tort claimant has no right to seek payment from the insurer via reach-and-apply. *Tessier v. State Farm Mut. Ins. Co.,* 334 F. Supp. 807, 808 (D. Mass. 1971), *aff'd,* 458 F.2d 1299 (1st Cir. 1972) ("The question presented is whether or not such a direct action against the insurer without naming the insured, or without having previously obtained a judgment against the insured, is properly maintainable."); *Lifchits v. Progressive Corp.*, 97 Mass. App. Ct. 1106, 142 N.E.3d 91 (2020) (table disposition) (as there was no judgment, there can be no direct action, and further noting that in such an action, the insurer is able to raise all defenses to coverage, including those based on conduct of its own insured). Likewise, in the absence of a duty to settle with the tort claimant – which is not here alleged -- there can be no cognizable violation of G.l. c. 93A. See *Martins v. Vermont Mut. Ins. Co.*, 662 F. Supp. 3d 55, 63 (D. Mass. 2023*) aff'd,* 92 F.4th 325 (1st Cir. 2024) (denying motion to amend as futile, where there was no plausible, non-futile claim that the insurer had failed to make a reasonable settlement offer when liability was reasonably clear).

---

[1] Plaintiff cannot bring an action pursuant G.L. c. 93A § 9, as plaintiff, a limited-liability company, is engaged in trade or commerce. Therefore, its only avenue would be under G.L. c. 93A § 11, which does not import the statutory "unfair settlement practices" provisions of G. L. c. 176D § 3(9) automatically.

Plaintiff cannot assert a claim to reach-and-apply absent a judgment against defendant's insured; it cannot assert a claim under G. L. c. 93A, unless it can plausibly allege an actual loss of money or property caused by failure to settle when liability was reasonably clear. Having done neither, the plaintiff cannot make use of the declaratory judgment statue as substitute.

**B. The plaintiff lacks standing to obtain the declaration sought, as presently only Cincinnati Insurance Company's insureds, Mr. Bonanno and Mrs. Bonanno, have an interest in Cincinnati Insurance Company's duties to defend and indemnify.**

"Although the standing requirements under G.L. c. 231A should be liberally construed, there are limits to the matters that can be heard in an action for a declaratory judgment." *Enos v. Sec'y of Env't Affs.*, 432 Mass. 132, 141, 731 N.E.2d 525, 532 (2000). The declaratory judgment statute is not, itself, an independent basis for standing. *See Enos*, 731 N.E.2d at 528; *see Source One Fin. Corp. v. Geico Indem. Co.*, 546 F. Supp. 3d 97, 100 (D. Mass. 2021). The plaintiff, to demonstrate "standing" must establish that he or she "is a person entitled to initiate judicial resolution of the controversy." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Comm'r of Ins.*, 373 Mass. 290, 293 (1977). "Because standing is a question of subject matter jurisdiction" where standing is absent, dismissal is required. *HSBC Bank USA, N.A. v. Matt,* 464 Mass. 193, 199 (2013) (discussing lack of standing under Mass. R. Civ. P. 12(h)(3)) *see also Murchison v. Zoning Bd. of Appeals of Sherborn*, 485 Mass. 209, 218 (2020) (where plaintiffs "lack standing ... we order[ ] dismissal of the appeal without reaching the merits"); *Cubberley v. Com. Ins. Co.*, 495 Mass. 289, 294 (2025) (discussing standing in the context of declaratory judgment).

1. *Plaintiff does not have standing to seek a declaration of the Cincinnati Insurance Company's duties under the insurance policy, as, at present, those duties are owed only to Cincinnati Insurance Company's named insureds.*

"To have standing in any capacity, a [plaintiff] must show that the challenged action has caused the [plaintiff] injury." *Town of Sudbury v. Massachusetts Bay Transportation Auth.*, 485 Mass. 774, 779 (2020) (citing *Slama v. Attorney Gen., 384* Mass. 620, 624 (1981)). "Standing" cannot rest "on the rights of third parties." *City of Bos. v. Rockland Tr. Co.,* 391 Mass. 48, 57 (1984) (*citing Barrows v. Jackson*, 346 U.S. 249, 255 (1953); *Klein v. Catalano*, 386 Mass. 701, 714 (1982) (lienholder could not initiate declaratory judgment to challenge tax seizure of property against which it held lien; only the owner had the right to challenge seizure)). Under a liability insurance policy, the insurer owes two separate duties: The duty to defend, which is defined by the allegations in the complaint (*Sterilite Corp. v. Cont'l Cas.* Co., 17 Mass. App. Ct. 316, 318–19 (1983)) and the duty to indemnify, which depends -- in large part, although not wholly – on the facts found at trial. *See Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986) (entry of order concerning duty to indemnify prior to reaching a verdict was premature, as the judgment may fall within policy exclusion, or insured may breach policy condition); *see also Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp.*, 883 F.2d 1092, 1100 (1st Cir. 1989) (duty to indemnify against damage from sludge in crawlspace, as it could be excluded, could not be determined prior to trial). Both the duty to defend and to indemnify are owed to the insured, not to the claimant.. *See Stormo v. State Nat'l Ins. Co.,* 116 F.4th 39, 46 (1st Cir. 2024), cert. denied, 145 S. Ct. 1430, 221 L. Ed. 2d 555 (2025) (discussing duty to defend and to indemnify where insured assigned its claims against insurer to claimant).

Plaintiff seeks a declaration that its claim constitutes a "covered occurrence[2]" and therefore Cincinnati Insurance Company has an obligation to "indemnify" against the damages sought. Plaintiff, however, has no right to assert a claim for "indemnity" – nor even for defense – under the policy, as these rights do not belong to the plaintiff. These rights belong to the named insureds.

2. *Plaintiff has no standing to seek a declaration concerning the "duty to indemnify" as no judgment has issued, and therefore, the issue of indemnity cannot be resolved.*

"[T]he nature of the claim and not the ultimate judgment against the insured ... triggers the duty to defend ... even though the plaintiff may not succeed and the claim may, in fact, be weak or frivolous." A.A. Sansoucy, Liability Insurance Law in Massachusetts 8 (2d ed. 2008). See 14 G. Couch, Insurance § 200:3, at 200–9 (3d ed. 2005) ("insurer has the duty to defend an insured against a lawsuit based merely on the potential of liability under a policy, despite the fact that the insurer could eventually be determined to have no duty to indemnify the insured"). The duty to indemnify, by contrast depends on the facts found at trial, the judgment ultimately entered against the insured, and the resolution of any defenses the insurer may have as to coverage. *See Travelers Ins. Co.*, 883 F.2d at 1100 (whether there was a duty to indemnify depends on the ultimate judgment); *Martins.*, 92 F.4th at 329 *as cited in Cubberley*, 495 Mass. at 293; *Tessier v. State Farm Mut. Ins. Co.*, 458 F.2d 1299, 1300 (1st Cir. 1972) (holding that the coverage defenses relating to the conduct of an insured are "procedurally difficult, and

---

[2] It is unclear what the plaintiff, in fact, means by this. The terms of liability coverage do not obligate an insurer to compensate an insured for any damage caused by an "occurrence," but rather provide, broadly, for payment of "those sums the 'insured' becomes legally obligated to pay as damages because of "bodily injury", "personal injury" or "property damage" to which this insurance applies. The existence of an "occurrence" is a necessary but not sufficient condition for coverage, and does not trigger the duty to indemnify.

sometimes perhaps substantively impossible, to raise…in conjunction with the original tort action.").

Plaintiff's Complaint alleges, broadly, that the plaintiff suffered property damage, and alleges that the damage is attributable to Cincinnati Insurance Company's insureds. Plaintiff's Complaint does not assert that judgment has entered establishing a legal obligation to pay on behalf of the insured. In the absence of a "legal obligation to pay" the duty to indemnify cannot be resolved.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted, as to the Cincinnati Insurance Company, because the single count asserted, for declaratory judgment, fails to adequately allege the existence of an actual controversy; an injury sufficient for standing; or any right to relief. Furthermore, the Declaratory Judgment County is an attempt to evade the statutory requirements for a Reach-and-Apply Action, and/or one under G.L. c. 93A, and therefore, must be dismissed.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

A True Copy, Attest:
Nantucket Superior Court

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 11th day of August, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

______________________________
Nora R. Adukonis

#3.2

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

Filed 09/09/2026

1942 REALTY, LLC,
Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,
Defendants.

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS OF THE CINCINNATI INSURANCE COMPANY

## INTRODUCTION

The Cincinnati Insurance Company's motion to dismiss rests on a single, deceptively simple premise: a third-party claimant has no right to seek a declaratory judgment concerning insurance coverage until it first obtains a judgment against the insured. Cincinnati's premise is overstated as a matter of Massachusetts law and, in any event, does not accurately reflect the relief Plaintiff 1942 Realty, LLC ("Owner") herein seeks as against Cincinnati.

Owner has not sued Cincinnati in isolation; it has brought Cincinnati into the same action in which it is simultaneously pursuing liability against Cincinnati's named insureds, the Bonanno Defendants, for the catastrophic water damage they caused to Owner's property at 12 Galen Avenue, Nantucket, on August 21, 2025. The coverage question and the liability question are before the same court, in the same case, at the same time. Contrary to Cincinnati's claims, the declaratory judgment count is not an end-run around anything — it is the most efficient vehicle for resolving a real, present, and adversarial dispute that Cincinnati itself created when it denied that its insureds' conduct constituted a covered occurrence.

Cincinnati served its motion without first initiating the Rule 9C meet-and-confer required for a dispositive motion — a conference in which Owner's counsel could have explained in a brief telephone call the precise pleading choices that Cincinnati's memorandum characterizes as improper "end runs" — while Cincinnati itself appears to be circumventing important procedural[1] and statutory requirements.

Cincinnati's motion was also served before the complaint was served upon the Bonanno Defendants and their household nanny, defendant Jane Doe a/k/a "Chloe". Cincinnati is in effect seeking to remove a coverage count from this proceeding before the underlying liability proceedings have formally begun and before those persons materially and adversely affected thereby have an opportunity to respond.

Massachusetts courts have long recognized the propriety of consolidating coverage and liability questions in a single proceeding precisely to avoid the kind of fragmented, sequential litigation Cincinnati's motion would compel. The motion should be DENIED.

## RELEVANT BACKGROUND

Owner filed a verified complaint on June 22, 2026, asserting ten counts against the Bonanno Defendants and an eleventh count, Count XI, against Cincinnati and the Bonanno Defendants jointly. Counts I through X assert liability against the Bonanno Defendants for breach of contract, negligence, gross negligence/recklessness, waste, conversion, trespass to chattels, unjust enrichment, and related theories. Count XI, the "sole" count Cinicinnati claims is directed to it but which count is explicitly directed to Cincinnati *alongside* its named insureds, seeks a declaration under G.L. c. 231A, § 1 that the water overflow event of August 21, 2025 (the "Loss")

---

[1] Owner does not press this procedural defect as a ground for denial. However, if Cincinnati files the motion without first satisfying Rule 9C and providing the required certificate, Rule 9C(a) expressly requires denial without prejudice.

constitutes a covered "occurrence" under Cincinnati Policy No. 05C011064266 (the "Cincinnati Policy"), and that Cincinnati is obligated to indemnify the Bonannos for the damages established in this action. Owner does not seek a declaration of indemnity in a vacuum — it seeks a declaration as part of an integrated proceeding in which the Bonannos are defendants in the same case and in which Cincinnati has appeared through its own separate counsel.

The factual predicate for Count XI is not hypothetical. Following the Loss, Cincinnati received formal written notice from Owner's counsel, acknowledged the Claim (No. 4583781), disclosed the Cincinnati Policy's personal liability limits of $1,000,000 per occurrence, and promptly asserted — without conducting any independent investigation — that there was "nothing to support that our insured caused this issue by way of negligence" and that the Loss "appears to be a plumbing issue." COMPL. ¶¶ 97-103. Cincinnati's claims adjuster subsequently confirmed in writing that Cincinnati had transmitted a "coverage position letter" to Owner's counsel, which letter Owner has not received, and that its position "has not changed." That adverse claim position — disputing its insureds' responsibility for the Loss on causation grounds, transmitting a coverage position letter, retaining separate litigation counsel, and serving a dispositive motion within days of being served with the complaint and before its own insureds were served or had the opportunity to protect their coverage interests — establishes a concrete, present, and adversarial dispute. That dispute is precisely what G.L. c. 231A is designed to resolve.

On August 14, 2026 — three days after Cincinnati served the within motion — the attorney Cincinnati retained to defend the Bonanno Defendants in the underlying liability action wrote to Owner's counsel, copying Cincinnati's separate litigation counsel. That letter confirms three matters bearing directly on Cincinnati's motion. First, defense counsel writes "on behalf of Matthew W. Bonanno and Emily J. Bonanno" alone; no counsel has appeared, or announced any

intention to appear, for defendant nanny Jane Doe. Second, defense counsel confirms that the Bonannos had not then been served. Third, defense counsel demanded disclosure of Owner's liability insurance and to preserve claims by the Bonannos against Owner arising from the rental and the Loss — that is, he is pursuing coverage for his clients from a third party's carrier — while advancing no position whatsoever as to the Bonannos' own rights under the Cincinnati Policy, which are the very rights Cincinnati's motion would remove from this case. A copy of the August 14, 2026 letter and its transmittal email is appended hereto as **Exhibit A**.

## ARGUMENT

### I. OWNER HAS ESTABLISHED AN ACTUAL CONTROVERSY UNDER G.L. C. 231A.

Massachusetts's declaratory judgment statute, G.L. c. 231A, § 1, grants the Superior Court broad jurisdiction to "make binding declarations of right, duty, status and other legal relations." The statute is to be "liberally construed." G.L. c. 231A, § 9. An "actual controversy" exists when there is a "real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter." Wells Fargo Fin. Massachusetts, Inc. v. Mulvey, 93 Mass.App.Ct. 768, 771 (2018). That standard is met here.

Owner asserts a legal interest in the resolution of the coverage question: it has an outstanding claim for more than $215,000 in uninsured losses against the Bonannos, who hold a policy with Cincinnati providing $1,000,000 in personal liability coverage. Cincinnati has formally denied that the Loss is a covered occurrence, a denial that will determine whether any judgment Owner obtains is collectible. Cincinnati denies Owner's interest. The dispute is present, real, and adversarial.

Cincinnati argues that no "real" dispute exists because Owner has no enforceable right against the policy until judgment enters against the Bonannos. But this argument conflates the *duty to indemnify* — which does depend on a judgment — with the coverage question Count XI actually presents: *whether the Loss is a covered occurrence at all.*

Owner does not ask the Court to order Cincinnati to write a check. Owner asks the Court to declare whether the Loss falls within the Cincinnati Policy's coverage grant — an antecedent legal question that Cincinnati has already answered in the negative and that will directly govern whether any judgment Owner obtains against the Bonannos is collectible. That is a present dispute, not a hypothetical one. Moreover, Cincinnati's own conduct establishes the controversy: it engaged separate litigation counsel and served a dispositive motion within days of service. An insurer that does both cannot credibly maintain that no real dispute exists.

### A. THE JOINDER OF THE BONANNOS AS DEFENDANTS DISTINGUISHES EVERY CASE CINCINNATI CITES.

Cincinnati's argument that a tort claimant has no direct enforceable right against a liability insurer before judgment is correct as a general proposition but does not dispose of this case. None of the cases Cincinnati cites holds that Chapter 231A prohibits the particular procedural posture presented here: retaining a non-monetary coverage declaration in a pending liability action where the insurer's named insureds are already defendants in the same case and may themselves assert the coverage claim. Each of Cincinnati's cases involved a claimant who sought to invoke the insurer's payment obligation directly — either through breach of contract, reach-and-apply, or a declaratory judgment treated as a substitute for those remedies — without the insured having been adjudged liable. None of them addressed a non-monetary coverage declaration sought in an integrated proceeding where the insured's liability and the insurer's coverage obligation are simultaneously before the Court.

The distinction is not merely noteworthy; it is dispositive. The foundation for the cases Cincinnati cites is the absence of any legal nexus between the claimant and the insurer before judgment: the insurer's duties run to its insured, and until judgment creates a legal obligation to pay, there is no relationship to adjudicate. That foundation is absent here. The Bonannos are defendants in this very proceeding. They have their own direct and material interest in the coverage question being resolved — an adversarial interest Cincinnati's motion conspicuously ignores.

With the Bonannos as parties, the Court can enter a declaration that binds all interested parties simultaneously, without requiring two parallel or sequential proceedings. Indeed, the SJC's approach in Billings v. Commerce Ins. Co., 458 Mass. 194 (2010), confirms that Cincinnati is properly joined herein: the duty to defend is assessed against the four corners of the complaint, meaning Cincinnati's coverage obligation can be evaluated now, on the current pleadings, regardless of how the underlying liability is ultimately resolved. Cincinnati implicitly acknowledges this by engaging trial counsel and pursuing a motion on the merits: it is litigating the coverage question in this court in this case. Having done so, it cannot simultaneously claim the court lacks jurisdiction to resolve it.

### B. The Declaratory Judgment Count Is Not a Prohibited "End Run."

Cincinnati reads beyond the four corners of the complaint to argue that Owner is somehow deploying G.L. c. 231A as a substitute for a reach-and-apply action under G.L. c. 214, § 3(9), or a bad-faith action under G.L. c. 93A/176D. The argument fails because Owner is not seeking to substitute the declaratory judgment statute for either statutory vehicle.

A reach-and-apply action is a post-judgment remedy that allows a judgment creditor to reach assets of a judgment debtor held by a third party. Owner is not seeking to reach a specific asset — the policy proceeds — before judgment. It is seeking a declaration of coverage status.

Those are categorically different requests. The declaration Owner seeks will not require Cincinnati to pay anything; it will resolve the antecedent coverage question so that all parties know, as the liability case proceeds, whether a judgment against the Bonannos will be within policy coverage.

Owner has not brought a c. 93A count. That was a deliberate pleading choice, not an inadvertent omission, and it does not transform the declaratory judgment count into a disguised bad-faith claim. Finally, Cincinnati's "end run" theory depends on the premise that the Legislature intended to foreclose exactly the relief Owner seeks. But G.L. c. 231A, § 9 expressly commands liberal construction. Nothing in the reach-and-apply or c. 93A framework expresses any legislative intent to bar pre-judgment declaratory relief in an integrated proceeding where the insured and insurer are both defendants. No such scheme applies here.

G.L. c. 231A, § 6 supplies additional statutory support. It provides that "[i]n any action … brought to obtain a judgment or other consequential relief … the court may make a binding determination as provided in this chapter upon application of any party made in his pleadings." Counts I through X seek compensatory damages arising from the Loss; Count XI asks this Court to make a binding coverage determination in the same action. That is precisely the structure § 6 authorizes. Owner does not contend that § 6 independently confers standing; § 6 defeats Cincinnati's separate contention that the procedural combination of liability and declaratory relief constitutes an impermissible end run.

## II. OWNER HAS STANDING TO SEEK THE DECLARATION.

Cincinnati argues that Owner lacks standing because the duties of defense and indemnity are owed to the insured, not the claimant. True as an abstraction, but Owner's standing rests on its own direct injury: it holds a claim for more than $215,000 in uninsured losses against defendants who carry a $1,000,000 liability policy. Cincinnati has taken an adverse claim position on the Loss — confirmed by its own adjuster to include a transmitted coverage position letter — that will

determine whether any judgment Owner obtains is collectible. That is a concrete, personal, financial injury to Owner traceable to Cincinnati's coverage position and fully redressable by the declaration Owner seeks. *Enos v. Sec'y of Env't Affs.*, 432 Mass. 132, 134 (2000). *Cubberley* and *Source One* are inapposite: both involved claimants seeking relief against an insurer without the named insured as a co-defendant in the same proceeding. Here, the Bonannos are defendants and their liability is simultaneously at issue.

### A. *CUBBERLEY* EXPRESSLY DECLINED TO DECIDE THE DECLARATORY-JUDGMENT STANDING QUESTION CINCINNATI SAYS IT DECIDED.

Cincinnati's reliance on *Cubberley v. Commerce Ins. Co.*, 495 Mass. 289 (2025), is its most consequential misreading of Massachusetts law. Cincinnati cites *Cubberley* for the proposition that a third-party claimant lacks standing to seek a pre-judgment declaratory judgment concerning liability coverage. *Cubberley* does not resolve that question.

The SJC held that the *Cubberley* plaintiffs lacked standing to pursue their breach-of-contract claim, because that claim effectively sought to reach and apply automobile policy proceeds without first satisfying the statutory final-judgment prerequisite under G.L. c. 175, § 113 and G.L. c. 214, § 3(9). Cubberly, 495 Mass. at 293-294. **The Court expressly declined to decide the declaratory judgment standing question,** stating in footnote 8: "We need not, and therefore do not, decide whether the plaintiffs have standing to pursue their declaratory judgment claim, as they have waived any further challenge to the dismissal." Id. at 294 n.8. The declaratory judgment question had been waived on appeal and was not before the SJC.

Cincinnati's newest and highest Massachusetts authority expressly declined to resolve the precise declaratory-judgment standing question that Cincinnati asks this Court to decide. That is not a minor qualification. No Massachusetts appellate court has held that a third-party claimant

lacks standing to seek a coverage declaration in the circumstances presented here. The law remains open at the SJC level.

In Dorchester Mut. Ins. Co. v. Legeyt, 2008 Mass.Super.LEXIS 462 (Norfolk Super. Ct. Dec. 29, 2008) (Garsh, J.), a homeowners insurer filed a coverage declaratory judgment action against its insured and the injured third-party claimant. The claimant counterclaimed for a declaration that the insurer owed its insured a duty to defend and indemnify. Not unlike Cincinnati here, the insurer argued the claimant had no standing absent a judgment. Judge Garsh rejected that argument, relying on the SJC's recognition in Fallon v. Mains, 302 Mass. 166, 168 (1939), that "plaintiff's right to have recourse to the policy came into existence upon the occurrence of the accident," and in Goldstein v. Bernstein, 315 Mass. 329, 332 (1943), that "[u]pon the happening of the accident … the plaintiffs acquired a beneficial interest in the proceeds of the policy." 2008 Mass.Super.LEXIS 462 at *15-16. The court thus held that the claimant had standing to maintain the declaratory counterclaim.

Owner acknowledges *Legeyt*'s limiting feature: the insurer had commenced that proceeding and named the claimant as a defendant. And a contrary 2001 Superior Court decision, Ioannou v. Merrimack Mut. Fire Ins. Co., 2001 Mass.Super.LEXIS 623 (Middlesex Super. Ct. Dec. 20, 2001) (Giles, J.), held that a tort claimant "has no interest or right in the insurance contract" sufficient to support a declaratory claim. Massachusetts appellate law is open; the Massachusetts Superior Court decisions are divided. But *Legeyt* demonstrates that there is no settled Massachusetts rule categorically foreclosing claimant declaratory standing — which is all Owner must show to defeat a motion that asks this Court to dismiss as a matter of clearly established law, particularly where the insurer's own insureds are already defendants in this proceeding and the coverage question is directly at issue.

### B. CINCINNATI MISCHARACTERIZES COUNT XI AS AN INDEMNITY-ONLY CLAIM; AT MOST, THE INDEMNITY COMPONENT SHOULD BE DEFERRED RATHER THAN DISMISS THE ENTIRE COUNT.

Cincinnati's motion repeatedly frames Count XI as though it seeks only a declaration that Cincinnati must "indemnify" its insureds. It does not. Paragraph 105(a) of the Complaint expressly requests a declaration that the Loss "constitute[s] a covered occurrence giving rise to Cincinnati's duty to defend and indemnify the Bonannos." The duty to defend and the duty to indemnify are distinct. Cincinnati's own memorandum acknowledges the difference: the duty to defend is determined by the allegations of the complaint and arises before liability is established; the duty to indemnify may depend on facts determined at trial. Having made that concession, Cincinnati cannot then move to dismiss the entirety of Count XI as though both duties are equally premature.

The Appeals Court resolved this precise conflict in John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co., 102 Mass.App.Ct. 474 (2023). There, the court vacated dismissal of the duty-to-defend declaratory claim, holding that an actual controversy existed as to the insurer's present defense obligation, while affirming dismissal of the duty-to-indemnify component as premature pending resolution of the underlying liability. Id. at 485-486, 490. Cincinnati's own authority, Newell-Blais Post No. 443, Veterans of Foreign Wars v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986), holds the same: the indemnity question must await trial, but that is a reason to defer the indemnity component — not to dismiss Count XI in its entirety. Owner offers *Moriarty* not as authority for 1942's independent standing to enforce the Bonannos' defense right, but for the remedial proposition that prematurity of the indemnity component does not compel destruction of an otherwise justiciable insurance proceeding.

Owner candidly acknowledges that it may not have independent standing to enforce the Bonannos' defense right directly. The appropriate procedural response is the one Owner's Cross-Motion requests: afford the Bonannos a reasonable opportunity to retain independent coverage

counsel and to join in the within Opposition and/or assert their own position — including, if they choose, a Rule 13(g) cross-claim against Cincinnati for a declaration of defense and coverage. Notably, Mass. R. Civ. P. 13(g) expressly permits a defendant to assert a cross-claim against a co-defendant arising from the same transaction, including a claim that the co-party "is or may be liable" for all or part of the plaintiff's claim. Once the Bonannos assert such a cross-claim, their standing as named policyholders is indisputable, the coverage question remains in this proceeding, and the Court can manage liability and coverage on a single docket with the sequencing G.L. c. 231A, § 3 and Mass. R. Civ. P. 42(b) expressly authorize.

### C. Cincinnati's Standing Argument Cannot Be Resolved on the Pleadings: Owner's Status as Counterparty to a Written Contract the Cincinnati Policy May Expressly Cover Presents a Merits Question Requiring Discovery.

Cincinnati's standing argument — that the duties of defense and indemnity are owed only to the insured, not to the claimant — is overstated as a matter of both law and fact. As a matter of law, the argument assumes that Owner's only connection to the Cincinnati Policy is its status as a tort claimant. That assumption, however, ignores a category of potential coverage that is common to homeowners personal liability policies issued on standard industry forms: the "insured contract" exception to the contractual liability exclusion. As a matter of fact, the Cincinnati Policy itself has not been produced in this litigation — discovery has not yet commenced — and Cincinnati has not provided Owner with a copy of the policy jacket, declarations page, or any endorsement. The Court cannot resolve a standing argument that turns on the policy's own coverage grant on a motion to dismiss where that policy is not in the record.

Notably, Homeowners personal liability policies issued on standard forms routinely contain a contractual liability exclusion that bars coverage for liability "under any contract or agreement entered into by an insured." That exclusion is typically subject to an exception — commonly called

the "insured contract" exception — for written contracts that directly relate to the ownership, maintenance, or use of an insured location, or under which the insured assumes the liability of another party prior to the occurrence. Standard forms also typically define "insured location" to include any premises not owned by the insured where the insured is temporarily residing. The Bonanno Defendants temporarily resided at and are alleged to have caused damage to Owner's residential real property.

If the Cincinnati Policy contains these standard provisions — as is common for policies of this type — the Bonannos' Occupancy Agreement with Owner would qualify as an insured contract: it directly relates to the Bonannos' use of 12 Galen Avenue, a premises not owned by them where they were temporarily residing; and under it, the Bonannos assumed liability to Owner for property damage caused during their occupancy before the Loss occurred.

If the Cincinnati Policy contains an insured contract exception of that character, Owner is not a stranger to the Policy. Owner is the counterparty to the specific written contract that the Policy preserves from the contractual liability exclusion and incorporates into the coverage grant. Owner's interest in the coverage determination would then be concrete, personal, and traceable to the Policy's own terms — not merely to its status as a tort claimant. Cincinnati ignores that an insured contract is a legally cognizable interest that satisfies the standing requirements of G.L. c. 231A independently of the tort-claimant standing analysis Cincinnati's motion addresses. Enos v. Sec'y of Env't Affs., 432 Mass. 132, 134 (2000).

Owner does not contend that the insured-contract analysis independently confers standing; it establishes that Cincinnati's standing argument cannot be resolved on the pleadings without the Cincinnati Policy in the record. If Cincinnati wishes to pursue its standing argument after producing the Cincinnati Policy in discovery, it may renew the argument at the summary judgment

stage, where the actual policy language will be available for the Court's review. For now, the motion to dismiss on standing grounds should be DENIED.

## III. THE BONANNO DEFENDANTS ARE ALIGNED WITH OWNER IN OPPOSITION TO CINCINNATI'S MOTION AND SHOULD BE INVITED TO JOIN THROUGH INDEPENDENT COVERAGE COUNSEL.

Owner files herewith a separate Cross-Motion for an Order Realigning the Bonanno Defendants with Owner in Opposition to Cincinnati's Motion to Dismiss Count XI. The Bonanno Defendants are the named insureds under the Cincinnati Policy. If the Court allows Cincinnati's motion to dismiss, the coverage question will be removed from this proceeding and will resurface either in a duplicative parallel or sequential action— at which point Cincinnati will litigate indemnity in a separate proceeding as both Owner and the Bonannos, with additional time to develop coverage defenses, where Owner and the Bonannos will bear the full burden of establishing coverage for a judgment that may already have been entered against the Bonannos personally.

No independent coverage counsel has appeared for the Bonanno Defendants in connection with Count XI. The attorney Cincinnati retained to defend the underlying liability claims — who informed Owner's counsel that he had been engaged by Cincinnati, had not yet conferred with his clients, and had not determined whether he would represent the nanny defendant — is not positioned to advise the Bonannos on their independent coverage interests or to determine whether those interests require a different litigation posture from the one Cincinnati's selected counsel would adopt on the liability defense. Nothing has changed in the interim. By letter of August 14, 2026, Cincinnati's selected defense counsel confirmed that he writes for the Bonannos alone, and he said nothing of Jane Doe. See **Exhibit A**. The position defense counsel takes is itself instructive: defense counsel is pursuing coverage for the Bonannos from Owner's carrier while advancing no

position on the Bonanno Defendants' coverage under the Cincinnati Policy — the coverage Cincinnati is presently moving to litigate out of this case, by a motion Cincinnati did not serve upon its own defense counsel. The persons Cincinnati itself identifies as the only holders of a cognizable interest in the coverage question are therefore represented, on that question, by no one.

Before a motion is adjudicated that may materially affect the Bonannos' personal exposure and insurance rights, they should have a reasonable opportunity to obtain independent advice and to determine whether to assert their own coverage position. Owner respectfully requests that this Court DENY Cincinnati's motion to dismiss or, in the alternative, continue the matter to afford the Bonanno Defendants a reasonable opportunity to retain independent coverage counsel and to file their own opposition.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE, CONSOLIDATE THE COVERAGE QUESTION WITH THE LIABILITY TRIAL, AND DECLINE TO FACILITATE CINCINNATI'S TRANSPARENT FORUM-SHOPPING.

Even if the Court were to conclude that Count XI is premature, dismissal with prejudice — the remedy Cincinnati requests — would be inappropriate. The coverage question will not disappear; it will resurface in a duplicative parallel or sequential proceeding, or recur the moment Owner obtains a judgment against the Bonannos. The most efficient course is to allow Count XI to remain, develop the coverage and liability issues through a common discovery record, and address the coverage question through a bifurcated bench trial or in conjunction with the liability trial. Massachusetts courts have recognized the wisdom of resolving coverage and liability questions in a single integrated proceeding. G.L. c. 231A, § 9 (statute "is to be liberally construed and administered" to "remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations"); G.L. c. 231A, § 3 (court may refuse declaratory

relief only where judgment "would not terminate the uncertainty or controversy giving rise to the proceedings").

Even if the Court were to conclude that some aspect of Count XI requires further development, Mass. R. Civ. P. 42(b) expressly authorizes a separate trial on any claim or issue where that promotes convenience, expedition, economy, or avoids prejudice. The Court can sequence coverage and liability proceedings on a single docket precisely as G.L. c. 231A, § 3 and Rule 42(b) contemplate. That is efficient case management — not a reason to dismiss.

Dismissal of Count XI would not terminate the coverage controversy. It would relocate it. If the Court allows the motion, Cincinnati may refile its own declaratory judgment action under G.L. c. 231A in a forum of its choosing, naming Owner and the Bonanno Defendants as parties. Massachusetts practice contemplates exactly this sequence: when coverage is disputed, the insurer is expected to file a declaratory judgment action in Superior Court naming both the insured and the claimant as parties. *Espinal v. Liberty Mutual Ins. Co.*, 47 Mass.App.Ct. 593, 598-599 (1999). There is accordingly no scenario in which dismissal of Count XI eliminates the coverage question; it only eliminates it from Owner's chosen forum.

The purpose of Cincinnati's motion is transparent. Cincinnati served its motion to dismiss before the Bonanno Defendants were served with the complaint, before any party had appeared through independent coverage counsel, and without the Rule 9C conference required for a dispositive motion. The motion seeks to dismiss Count XI from a case Cincinnati had no hand in filing — Owner's case, in Owner's chosen forum, in the county where the property is located and where the Loss occurred — so that Cincinnati may then re-file in a forum of its own choosing, where the docket and pace may favor the insurer. The Supreme Court established in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942), that courts may decline declaratory judgment

jurisdiction where the primary purpose of the filing is forum selection, because "[o]rdinarily it would be uneconomical as well as vexatious" to allow such tactical maneuvering. While *Brillhart* addressed federal court discretion, its anti-forum-shopping rationale applies equally here: G.L. c. 231A, § 9's liberal-construction mandate and § 3's requirement that a dismissal actually terminate the uncertainty are designed precisely to prevent a party from using Rule 12 as a forum-selection device.

Even if the Court were to conclude that some aspect of Count XI is premature, Cincinnati's request for dismissal *with prejudice* is untenable. Cincinnati's own theory concedes that any standing defect is temporal: the asserted problem disappears upon a judgment against the Bonannos or, sooner, upon the Bonannos' assertion of a Rule 13(g) coverage crossclaim. A defect that cures itself cannot be "fatal to the merits" of the claim. Braxton v. Boston, 96 Mass.App.Ct. 714, 720 (2019) (dismissal with prejudice appropriate only "where a lack of standing [was] fatal to the merits of the plaintiff's claim"); accord, Hladik v. LPL Fin. LLC, 106 Mass.App.Ct. 592, 595 n.4 (2026) ("[d]ismissals for lack of subject matter jurisdiction are ordinarily without prejudice because dismissal for lack of jurisdiction is typically not an adjudication on the merits"). If the Court concludes that any relief is appropriate, it should be denial *without prejudice* or a continuance — not a merits disposition that forecloses Owner's claim before the Bonannos have had any opportunity to participate.

Granting the motion to dismiss would burden the courts with two parallel proceedings arising from the same incident, the same policy, and the same parties — one in this Court on liability, another wherever Cincinnati chooses to file on coverage — deny all parties the benefit of a common discovery record, and reward the insurer for serving a dispositive motion before its own insureds had been served or had the opportunity to protect their independent interests. Denying

Cincinnati's motion is not merely equitable to Owner and the Bonanno Defendants — it prevents Cincinnati from using Rule 12 as a vehicle to escape a properly chosen forum and multiply litigation. The motion should be DENIED.

## CONCLUSION

WHEREFORE, Plaintiff 1942 Realty, LLC respectfully requests that this Honorable Court:

1. **DENY** The Cincinnati Insurance Company's Motion to Dismiss in its entirety;

2. In the alternative, continue the matter to afford the Bonanno Defendants a reasonable opportunity to retain independent coverage counsel and file their own opposition to Cincinnati's motion;

3. In the further alternative, if the Court concludes that any aspect of Count XI requires refinement, allow Owner leave to amend the complaint to address the Court's concerns;

4. In the further alternative, continue Cincinnati's motion to dismiss to afford the Bonanno Defendants a reasonable opportunity to appear through independent coverage counsel and, if they choose, to assert a crossclaim against Cincinnati pursuant to Mass. R. Civ. P. 13(g) for a declaration of Cincinnati's duty to defend and indemnify; and

5. Grant such other relief as this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Superior Court Rule 9A(c)(2), Owner respectfully requests a hearing on this motion. Motions to dismiss under Mass. R. Civ. P. 12 are among the categories for which a hearing will ordinarily be allowed under Rule 9A(c)(3).

Respectfully submitted,

**PLAINTIFF,**

**1942 REALTY, LLC,**

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite 11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: August 21, 2026

**CERTIFICATE OF SERVICE**

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I forwarded notice of the foregoing document(s) via electronic service through the Odyssey/Tyler e-service platform, electronic mail, and/or Federal Express or U.S. Mail Delivery thereof, postage prepaid, to the following:

Nora R. Adukonis, Esq.
LITCHFIELD CAVO, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

John R. Garrasi, Esq.
MARTIN, MAGNUSON, MCCARTHY & KENNEY, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Raymond H. Tomlinson, Jr.

Dated: August 21, 2026

A True Copy, Attest:
Colleen S. Whelden
Nantucket Superior Court

# EXHIBIT A

**Raymond Tomlinson**

**From:** John Garrasi <JGARRASI@MMMK.COM>
**Sent:** Friday, August 14, 2026 4:36 PM
**To:** Raymond Tomlinson
**Cc:** Douglas A. Robertson; adukonis@litchfieldcavo.com; Audrey Bonk
**Subject:** 1942 Realty LLC v. Matthew Bonanno et al; Insurance Policies [IMAN-DOCS.FID2005657]
**Attachments:** AS SENT - MGL c 175 Letter to Tomlinson - BONANNO.pdf

Ray:

Thank you for connecting with me earlier this week on the case. I appreciate you making yourself available despite still being on vacation. Your responsiveness is greatly appreciated.

At this point, I have not yet received confirmation that our clients have been served. In the interest of working toward resolution and as part of our normal practice in these matters, I am attaching a request for any and all insurance policies and related information required to be disclosed pursuant to M. G. L. 175, § 112C. Specifically, we are looking for the insurance policies required for short-term rentals under M. G. L. c. 175, § 4F.

I look forward to working with you as the case progresses. Please feel free to contact me if you have any questions or would like to discuss the matter further. I have copied attorneys Robertson and Adukonis on this email so as to avoid any duplicity.

Enjoy the remainder of your vacation, and I look forward to speaking with you soon.

Best,

**John Garrasi, Associate**
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
Direct: (857) 957-0701
Mobile: (518) 514-8120
Fax: (617) 227-3346
*This email may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it. No waiver of privilege is intended by such an error.*

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521. If you received this message erroneously, please delete this message and any attachments. Please do not save, copy, forward or use misdirected e-mail. Anyone misusing this e-mail will be prosecuted. This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. Information contained in this e-mail transmission is privileged,

confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521. If you received this message erroneously, please delete this message and any attachments. Please do not save, copy, forward or use misdirected e-mail. Anyone misusing this e-mail will be prosecuted.

MARTIN, MAGNUSON, McCARTHY & KENNEY
ATTORNEYS AT LAW
101 MERRIMAC STREET, 7TH FLOOR
BOSTON, MASSACHUSETTS 02114-4716
TELEPHONE: (617) 227-3240
TELECOPIER: (617) 227-3346
WWW.MMMK.COM

A PROFESSIONAL CORPORATION

PAUL R. KEANE
PAUL M. McTAGUE
EDWARD F. MAHONEY
DOUGLAS A. ROBERTSON*
KEVIN C. REIDY
STEPHEN M. O'SHEA *
JENNIFER E. KOGAN •
SARAH ANN GREENHALGH
JOAN F. RENEHAN
JENNIFER A. CREEDON +!
DARLENE DAWSON
KATHLEEN O'DONNELL WYATT !
LINDSAY E. WEBER !
MICHAEL J. KEEFE !
LAUREN E. MANKOWSKI !
LINDSEY J. TAYLOR
TAYLOR R. ALCORN
ANTHONY BRIGHTON ^
BRYANNA L. GREENWOOD
PATRICK MADAYA
KATHERINE KOSSOY
AMANDA V. REIS
JOHN GARRASI

SENIOR COUNSEL

CHARLES P. REIDY, III

EDWARD F. HENNESSEY (1949-2007)
EPHRAIM MARTIN (1927-1988)
HAROLD E. MAGNUSON (1938-1999)
CLEMENT MCCARTHY (1951-1985)
RAYMOND J. KENNEY, JR. (1958-2023)

• ALSO ADMITTED IN CA
! ALSO ADMITTED IN CT
* ALSO ADMITTED IN NH
+ ALSO ADMITTED IN RI
^ ALSO ADMITTED IN NY

August 14, 2026

***VIA EMAIL ONLY***
Raymond H. Tomlinson, Jr. Esq.
TOMLINSON LAW
76 Tupper Road, Suite #11
Sandwich, MA 02563
rht@tomlinsonlaw.com

**RE: 1942 Realty, LLC v. Matthew W. Bonanno, et al.**
**Nantucket Superior Court Civil Action No. 2675CV00024**
**M. G. L. c. 175, § 112C Request for Disclosure of Liability Coverage**

Dear Attorney Tomlinson:

I write on behalf of Matthew W. Bonanno and Emily J. Bonanno concerning the above-captioned action and the August 21, 2025 alleged loss at 12 Galen Avenue, Nantucket, Massachusetts.

Please treat this correspondence as a written request pursuant to G. L. c. 175, § 112C directed to each insurer, providing, or potentially providing, liability insurance to 1942 Realty, LLC, or otherwise providing applicable liability coverage in connection with the subject-premises or short-term-rental as mandated by M. G. L. c. 175, § 4F.

Under M. G. L. c. 175, § 4F, "An operator [of a short term rental in MA] shall maintain liability insurance of not less than $1,000,000 to cover each short term rental, unless such short-term rental is offered through a hosting platform that maintains equal or greater coverage. Such coverage shall defend and indemnify the operator and any tenants or owners in the building for bodily injury and property damage arising from the short-term rental." A copy of the statute, along with a copy of the statute defining the term "operator," is enclosed for your records.

Because the identity of all such insurers is presently unknown to the Bonannos, please forward this letter immediately to each applicable insurer, carrier, underwriting entity, risk program, and/or hosting-platform insurer, including, without limitation:

(1) **Any insurer providing primary liability coverage to 1942 Realty, LLC or the premises located at 12 Galen Avenue;**

(2) **Any umbrella or excess liability insurer;**

(3) **Any insurer providing short-term rental liability coverage maintained by or on behalf of 1942 Realty, LLC pursuant to G. L. c. 175, § 4F;**

(4) **Any insurer providing the liability coverage required by § 4F through a hosting platform, rental platform, property manager, agent, or other entity; and**

(5) **Any other insurer whose policy may provide liability coverage for claims arising from the August 16–30, 2025 short-term rental or the alleged August 21, 2025 loss.**

For purposes of G. L. c. 175, § 112C, the Bonannos hereby make and preserve claims against 1942 Realty, LLC arising from the subject rental and loss, including any claims or rights concerning defense, indemnification, contribution, insurance procurement, statutory insurance obligations, contractual obligations, and damages or expense resulting from any failure to maintain, procure, disclose, or make available insurance required by law or otherwise applicable to the subject occurrence.

Accordingly, each insurer receiving this request is requested and required to disclose the amount of limits of its insured's liability coverage applicable to these claims, including the limits of all applicable primary, umbrella, and excess coverage.

Section 112C requires an insurer to respond within thirty (30) days after receipt of the written request. The statute further provides that an insurer failing to comply is liable to the claimant for $500.00, together with reasonable attorneys' fees and expenses incurred in obtaining the required coverage information.

To avoid any uncertainty concerning receipt and the commencement of the statutory response period, please provide us with a copy of the correspondence or email by which this request is forwarded to each insurer, together with the same of the insurer, claim representative, claim number, and date of transmission.

This request is particularly intended to identify any liability coverage maintained in compliance with G. L. c. 175, § 4F, which requires specified liability insurance in connection with short-term rentals. Nothing in this correspondence should be construed as limiting the Bonannos' position regarding the nature, scope, enforceability, or applicability of any insurance required by § 4F, including their rights to seek defense and indemnification under any such coverage.

Nor should this request be construed as limiting the Bonannos' rights to obtain complete copies of applicable insurance policies, declarations, endorsements, binders, certificates, applications, insurance-procurement records, or related materials through discovery or otherwise. This letter specifically invokes the separate disclosure obligation imposed upon insurers by G. L. c. 175, § 112C.

Please confirm promptly that this correspondence has been forwarded to all potentially responsive insurers so that each carrier may respond directly within the statutory period.

Thank you for your attention to this request.

Very truly yours,

*/s/ John R. Garrasi*
John R. Garrasi, Esq.
BBO No. 717460
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
jgarrasi@mmmk.com

CC: *Counsel for The Cincinnati Insurance Company*
Nora Rose Adukonis, Esq.
Litchfield Cavo LLP
6 Kimball Lane
Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

#3.3

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

Filed 09/09/2026

## THE CINCINNATI INSURANCE COMPANY'S REPLY TO OPPOSITION TO MOTION TO DISMISS

Plaintiff contends it is entitled to declaratory relief, because there is a dispute concerning the "coverage" afforded by the policy issued by Cincinnati Insurance Company to its insureds, Matthew W. Bonanno and Emily J. Bonanno. No such dispute exists, nonetheless one that meets the standards for declaratory judgment, because, as to "indemnity" there is no "actual controversy," and as to defense, the plaintiff lacks standing to seek a resolution.

### Argument

A "declaratory judgment action may proceed only if the following conditions are met: '(a) an actual controversy sufficient to withstand a motion to dismiss must appear on the pleadings; and (b) even if there is a finding of an actual controversy, a plaintiff must demonstrate the requisite legal standing to secure its resolution.'" *Wells Fargo Fin. Massachusetts, Inc. v. Mulvey,* 93 Mass. App. Ct. 768, 770–71 (2018); *Galipault v. Wash Rock Invs., LLC*, 65 Mass. App. Ct. 73, 83 (2005).

**A. There can be no "actual controversy" concerning the duty to indemnify prior to an adjudication of the facts giving rise to liability.**

A liability insurance carrier's duty to indemnify is determined by the facts established at trial. *Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989) (citing *Newell–Blais Post No. 443 v. Shelby Mut. Ins.*, 396 Mass. 633 (1986) (holding that it was premature to determine whether insurer owed duty to indemnify insured, in declaratory judgment action filed prior to resolution of underlying suit, and requiring judgment to be modified in order to delete portion of order adjudicating duty to indemnify); *see also Bos. Symphony Orchestra, Inc. v. Com. Union Ins. Co.*, 406 Mass. 7, 10 (1989) (describing difference in scope and nature between duty to defend and duty to indemnify). Therefore, "[a] declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where…the underlying action has not determined liability or adjudicated factual disputes." *Narragansett Bay Ins. Co. v. Kaplan,* 146 F. Supp. 3d 364, 372 (D. Mass. 2015) (citing *Spoor–Lasher Company, Inc. v. Aetna Casualty and Surety Co.*, 39 N.Y.2d 875 (1976); *Sterilite Corp. v. Cont'l Cas. Co.*, 17 Mass. App. Ct. 316, 319 (1983); *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F.Supp.2d 77, 103 (D. Mass. 1999)); *see also John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co.*, 102 Mass. App. Ct. 474, 489 (2023) (affirming dismissal of declaratory judgment on the issue of indemnity, where the underlying suit for liability had not been resolved); *and Raheb v. Delaware N. Companies, Inc.-Bos.*, 682 F. Supp. 3d 87, 93 (D. Mass. 2023); *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 188 (D. Mass. 2019) (holding that determination of duty to indemnify must await judgment or settlement) (citing *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 429 (D. Mass. 2016)).

There can be no declaratory judgment as to the duty to indemnify where the relevant facts have not yet been determined at trial. Therefore, there is no actual controversy concerning

whether Cincinnati Insurance Company will have a duty to indemnify its insureds against any judgment issued in favor of the plaintiff.

**B. Plaintiff has no standing to seek a declaration concerning Cincinnati Insurance Company's duty to defend its insureds.**

"At the risk of oversimplifying, generally, a plaintiff can only assert claims premised on his or her own legal rights, not those of third parties (subject to some exceptions, of course)." *CE Design Ltd. v. Am. Econ. Ins. Co.*, 755 F.3d 39, 44 (1st Cir. 2014) (tort claimant cannot seek declaration concerning the insurance company's duty to defend tort defendant, as tort claimant lacks standing). To have standing, the plaintiff must "be one who, by virtue of a legally cognizable injury, is a person entitled to initiate judicial resolution of the controversy." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Comm'r of Ins.*, 373 Mass. 290, 293 (1977).

Plaintiff has no "legally cognizable injury" arising from any uncertainty concerning whether its opponents in this action will be defended by their insurance company. Plaintiff has no right or interest in its adversary's relationship with their insurance company. Plaintiff acknowledges, even, in its "cross-motion" that the defendants are being represented by "panel counsel," which suggests that there is no present controversy between defendants and their

insurer. There is no "controversy" concerning the duty to defend; even if there were, the plaintiff has no standing to seek declaratory relief.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

A True Copy, Attest:
Colleen S. Whelden
Nantucket Superior Court

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 9th day of September, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

John R. Garrasi, Esq.
Marin, Magnuson, McCarthy & Kenney, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Nora R. Adukonis

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

1942 REALTY, LLC,
Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,
Defendants.

Filed 09/09/2026

**PLAINTIFF'S CROSS-MOTION FOR AN ORDER REALIGNING DEFENDANTS MATTHEW W. BONANNO AND EMILY J. BONANNO WITH PLAINTIFF IN OPPOSITION TO CINCINNATI INSURANCE COMPANY'S MOTION TO DISMISS COUNT XI**

**(MEMORANDUM INCORPORATED)**

NOW COMES Plaintiff 1942 Realty, LLC ("Owner"), pursuant to Mass. R. Civ. P. 13(g), 19, and 21, and G.L. c. 231A, §§ 8 and 9, and respectfully moves this Court for an order recognizing that Defendants Matthew W. Bonanno and Emily J. Bonanno (the "Bonanno Defendants") are, on the coverage question presented in Count XI of the Complaint, aligned with Owner in opposition to the motion to dismiss filed by their insurer, The Cincinnati Insurance Company ("Cincinnati"). In support thereof, Owner states as follows:

**I. THE BONANNO DEFENDANTS ARE DIRECTLY AND ADVERSELY AFFECTED BY CINCINNATI'S MOTION AND ARE NOT REPRESENTED BY INDEPENDENT COVERAGE COUNSEL.**

Cincinnati's motion seeks dismissal of Count XI — the "sole" count Cincinnati claims is directed to it — but which count expressly names the Bonanno Defendants *alongside* Cincinnati as its named insureds and asks this Court to declare that the water overflow Loss of August 21, 2025 (the "Loss") constitutes a covered "occurrence" under Cincinnati Policy No. 05C011064266

(the "Cincinnati Policy") and that Cincinnati is obligated to indemnify the Bonannos for the damages established in this action. The Cincinnati Policy affords $1,000,000 in personal liability coverage per occurrence — an amount sufficient to satisfy in full the totality of Owner's documented losses of more than $215,000.

The Bonanno Defendants are the named insureds under the Cincinnati Policy. Their live-in nanny, defendant Jane Doe aka "Chloe", is a household member and likely covered under the Policy. Each of these defendants has a direct, concrete, and substantial financial interest in the resolution of the coverage question that Cincinnati's motion seeks to remove from this proceeding. If Cincinnati's motion is allowed, the coverage question will be taken out of this case and will resurface either in a separately-filed declaratory judgment action initiated by Cincinnati or after entry of judgment against the Bonannos — at which point Cincinnati will litigate indemnity in a separate proceeding, with additional time to develop coverage defenses, at substantial additional cost to the parties and the court, and in which the Bonannos will bear the full burden of establishing coverage – including for a judgment that may already have been entered against them personally.

Not unlike Cincinnati's coverage counsel, the attorney Cincinnati retained to defend the underlying liability claims — who informed Owner's counsel that he had been engaged by Cincinnati, had not yet conferred with his clients, and had not determined whether he would represent the nanny defendant, Jane Doe — is not positioned to advise the Bonannos and Jane Doe on their independent coverage interests or to represent them in connection with Count XI. On the coverage question, the interests of the Bonannos and Jane Doe are directly adverse to Cincinnati's: they need the Loss declared a covered occurrence so that any judgment entered against them will be satisfied by Cincinnati rather than from their personal assets.

Panel defense counsel selected and compensated by Cincinnati is not positioned to advise the Bonannos and Jane Doe on their independent coverage interests or to determine whether those interests require a different posture from the one Cincinnati's selected counsel would adopt on the liability defense.[1]

That concern is no longer theoretical. On August 14, 2026 — three days after Cincinnati served the within motion, and copying Cincinnati's separate coverage counsel — the attorney Cincinnati selected to defend the Bonannos wrote to Owner's counsel to demand disclosure of Owner's liability insurance and to preserve claims by the Bonannos against Owner arising from the rental and the Loss. A copy of that letter and its transmittal email is appended as **Exhibit A** to Owner's Opposition, served contemporaneously herewith.

The letter is significant less for what it says than for what it omits. Cincinnati's selected defense counsel writes "on behalf of Matthew W. Bonanno and Emily J. Bonanno" — not on behalf of Jane Doe, for whom no counsel has appeared. Defense counsel is actively pursuing indemnity for the Bonannos from a third party's insurer. Defense counsel advances no position whatsoever concerning the Bonanno Defendants' coverage under the Cincinnati Policy, and Cincinnati did not

[1] Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 684 (1964) ("Where the insured's interest in controlling tort litigation against him conflicts with the similar interest of the insurer, the insured may have good cause to ask that he be represented by counsel independent of the insurer" and "[a] potential conflict may arise between an insured and insurer when an insurer defends under a reservation of rights. Even if no actual conflict ever materializes, the threat of conflict is so great that a reservation of rights defense is often treated as an actual conflict."); see also Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 275-277 (1970) and Northern Sec. Ins. Co., Inc. v. R.H. Realty Trust, 78 Mass.App.Ct. 691 (2011) ("When an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs."), quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 406-407 (2003).

serve defense counsel with the motion that seeks to remove that question from this case. On the coverage question that matters most to them, Cincinnati's insureds are represented by no one.

## II. THE BONANNO DEFENDANTS SHOULD BE RECOGNIZED AS ALIGNED WITH OWNER IN OPPOSITION TO CINCINNATI'S MOTION TO DISMISS COUNT XI.

Under G.L. c. 231A, § 9, the declaratory judgment statute is to be "liberally construed." G.L. c. 231A, § 9 ("Its purpose is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered."). The Court thus has broad equitable discretion to structure declaratory judgment proceedings in a manner that ensures all interested parties are heard and that the resolution of the coverage question serves judicial efficiency. Billings v. Commerce Ins. Co., 458 Mass. 194, 199-201 (2010) (duty to defend assessed on allegations of complaint and facts known or readily knowable by insurer); MASS.R.CIV.P. 57 ("the court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar," and that "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.") The Bonannos are already parties to this action; they need no separate joinder. They have standing — independent of Owner — to oppose Cincinnati's motion, because the motion directly and adversely affects their rights under the Cincinnati Policy and their personal financial exposure.

Massachusetts courts structure declaratory judgment proceedings to reflect the actual interests of the parties, not their nominal caption positions. Mass. R. Civ. P. 19(a) recognizes that a person who should join as a plaintiff but refuses to do so may be made a defendant; Rule 21 expressly provides that misjoinder is not grounds for dismissal and that parties may be added or dropped at any stage; and Rule 13(g) permits a defendant to assert a crossclaim against a co-defendant arising from the same transaction, including a claim that the co-party "is or may be

liable" for all or part of the plaintiff's claim. See also City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941) (courts must "look beyond the pleadings and arrange the parties according to their sides in the dispute"). On the coverage question presented in Count XI, the Bonannos' interests are aligned with Owner's: both need the Loss declared a covered occurrence. Cincinnati stands alone in seeking the opposite result and its stated rationale mischaracterizes the law.

This Court should enter an order recognizing the Bonanno Defendants' adverse interest in Cincinnati's motion and inviting them — through independent coverage counsel — to join Owner's opposition or to file a separate opposition of their own, or to advance a cross-claim as against Cincinnati, or both, and with a brief continuance to afford them the opportunity to do so. In the alternative, the Court should DENY Cincinnati's motion for the reasons set forth in Owner's accompanying opposition memorandum, which establishes that no party — Owner or the Bonannos — is served by removal of Count XI from this proceeding at this stage.

## III. DISMISSAL SIMPLY SPAWNS A DUPLICATIVE PROCEEDING.

Cincinnati's motion to dismiss Count XI is entirely counterproductive. Dismissal does not resolve the coverage question — it relocates it. Massachusetts law already contemplates that when an insurer disputes coverage, it should file a declaratory judgment action in Superior Court naming both the insured and the claimant as parties. Espinal v. Liberty Mutual Ins. Co., 47 Mass.App.Ct. 593, 598-599 (1999). If Count XI is dismissed, Cincinnati will file exactly that action — in a forum of its own choosing, on its own timing, where it controls the framing. That is the definitional purpose of wielding Rule 12 as a forum-selection device: dismiss here, refile more favorably. G.L. c. 231A, § 9's command that the statute be liberally construed to "remove . . . uncertainty and insecurity with respect to rights, duties, status and other legal relations" is designed precisely to prevent that result. Denying the motion is not merely equitable — it prevents Cincinnati from using Rule 12 as a vehicle to escape a properly chosen forum and multiply litigation.

## IV. G.L. c. 231A, § 8 AND THE MASSACHUSETTS RULES FAVOR INSURED PARTICIPATION AND AN IN-CASE PROCEDURAL CURE RATHER THAN DISMISSAL.

Cincinnati's motion to dismiss is not only inequitable — it is jurisdictionally self-defeating. Cincinnati ignores Chapter 231A's command that both Owner and the Bonannos be joined in the same proceeding: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." G.L. c. 231A, § 8. This mandate is jurisdictional, not discretionary. The failure to name necessary parties "may be jurisdictional in a declaratory judgment action, thereby precluding the court's consideration of the issue." Service Employees Int'l Union, Local 509 v. Dep't of Mental Health, 469 Mass. 323, 338 (2014); accord, Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 18 (2019). Where necessary parties are absent, "any declaration of rights would be merely academic as to persons not parties to the proceedings." Service Employees, 469 Mass. at 338-339; see also Source One Fin. Corp. v. GEICO Indem. Co., 546 F.Supp.3d 97, 100-101 (D. Mass. 2021) (dismissing coverage declaratory count because named insureds whose interests would be directly affected were not parties; any judgment would have no binding effect on them and they could institute their own subsequent actions).

Crucially, when the SJC in Service Employees concluded that necessary parties were missing from a Chapter 231A proceeding, it did not affirm *dismissal*. Rather, it vacated the judgment of dismissal and remanded for *joinder*. 469 Mass. at 339. Here, the Bonannos are already parties; there is no joinder defect to cure. Any alignment or pleading concern is therefore even more readily resolved through the less disruptive remedies that Rule 21 and Rule 13(g) expressly authorize: adding or dropping parties, or allowing the Bonannos to assert a cross-claim, rather than terminating the controversy entirely.

Cincinnati's own memorandum resolves the § 8 inquiry. Cincinnati states that "only Cincinnati Insurance Company's named insureds, Mr. Bonanno and Mrs. Bonanno, have an interest in Cincinnati Insurance Company's duties to defend and indemnify." MEM. at 7-8. Cincinnati thus concedes that the Bonannos are necessary parties under G.L. c. 231A, § 8 — persons "who have or claim any interest which would be affected by the declaration." The Bonannos are already defendants in this action; they need no separate joinder. The question is solely on which side of the coverage dispute they belong.

Under City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941), courts must look beyond the pleadings and arrange parties according to their actual interests in the dispute. On the coverage question, the Bonannos' interests are aligned with Owner's: both need the Loss declared a covered occurrence. Cincinnati stands alone in seeking the opposite result and mischaracterizes the law to achieve that inequitable result. Here, G.L. c. 231A, § 8 supports full participation and a binding all-parties adjudication; Mass. R. Civ. P. 13(g), 19, and 21 supply the procedural mechanics. The combined effect is that the coverage question should be resolved with all interested parties actively represented in this proceeding — not removed from it before the persons Cincinnati itself identifies as having the only cognizable interest in the outcome have had any opportunity to protect that interest.

The appropriate remedy is not dismissal but a brief continuance. The insureds are already necessary parties under G.L. c. 231A, § 8 — Cincinnati's own memorandum concedes they are the only persons with a cognizable interest in the outcome. Before the Court acts on a motion that may eliminate a coverage determination directly affecting those persons' insurance rights and personal financial exposure, they should have a reasonable opportunity to appear through independent coverage counsel, assess the motion, and determine whether to assert their own

position — including, if they elect to do so, a Rule 13(g) crossclaim against Cincinnati for a declaration of defense and coverage. The remedy is realignment and a brief continuance — not dismissal.

The continuance Owner requests is a practical measure, not an academic gesture. Counsel for the Bonanno Defendants is engaged, is in active communication with both Owner's counsel and Cincinnati's coverage counsel, and can readily receive from Cincinnati its motion and be afforded a reasonable interval within which the Bonanno Defendants may obtain independent coverage advice and determine their own position.

## CONCLUSION

WHEREFORE, Plaintiff 1942 Realty, LLC respectfully requests that this Honorable Court:

1. Enter an order recognizing that Defendants Matthew W. Bonanno and Emily J. Bonanno have a direct and adverse financial interest in the outcome of The Cincinnati Insurance Company's Motion to Dismiss Count XI that is aligned with Owner's opposition thereto;

2. Stay adjudication of Cincinnati's motion to dismiss for forty-five (45) days to afford the Bonanno Defendants and Defendant Jane Doe a reasonable opportunity to retain independent coverage counsel and to either join in Owner's Opposition or file their own opposition to Cincinnati's motion, if they choose to do so; and

3. In the further alternative, deny Cincinnati's motion to dismiss for the reasons set forth in Owner's accompanying memorandum in opposition, and grant such other relief as this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Superior Court Rule 9A(c)(2), Owner respectfully requests a hearing on the within Cross-Motion. Motions to dismiss under Mass. R. Civ. P. 12 are among the categories for

which a hearing will ordinarily be allowed under Rule 9A(c)(3), and the coverage question presented in Count XI is appropriate for oral argument.

Respectfully submitted,

**PLAINTIFF,**

**1942 REALTY, LLC,**

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite 11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: August 21, 2026

**A True Copy, Attest:**

**Nantucket Superior Court**

**CERTIFICATE OF SERVICE**

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I forwarded notice of the foregoing document(s) via electronic service through the Odyssey/Tyler e-service platform, electronic mail, and/or Federal Express or U.S. Mail Delivery thereof, postage prepaid, to the following:

Nora R. Adukonis, Esq.
LITCHFIELD CAVO, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

John R. Garrasi, Esq.
MARTIN, MAGNUSON, MCCARTHY & KENNEY, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Raymond H. Tomlinson, Jr.

Dated: August 21, 2026

#4.1

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

Filed 09/09/2026

## THE CINCINNATI INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S PURPORTED "CROSS-MOTION" TO "REALIGN PARTIES"

Plaintiff wants things to be one way. But they are the other way. Plaintiff wants there to be a "coverage dispute," ripe for disposition via declaratory judgment. There isn't one[1]. Plaintiff wants the interests of defendants, Matthew Bonanno and Emily Bonanno to be "aligned" with its own, and against those of their insurance carrier, the Cincinnati Insurance Company. They are not. Matthew Bonanno and Emily Bonanno, like Cincinnati Insurance Company, are interested an efficient and successful defense against the plaintiff. No amount of careful pleading or creative motion practice can make things "one way" when they are "the other way."

[1] Marlo Stanfield: You want it to be one way.
Security Guard: Man, stop -- Stop saying that.
Marlo Stanfield: But it's the other way.

THE WIRE: REFUGEES (HBO, broadcast date October 1, 2006).

### A. THERE IS NO DISPUTE IN WHICH THE PLAINTIFF'S INTERESTS ARE "ALIGNED" WITH THOSE OF MATTHEW BONANNO AND EMILY BONNANO.

#### *1. Cincinnati Insurance Company has denied liability to the plaintiff, not coverage to its insureds, Matthew Bonanno and Emily Bonanno.*

"'Coverage' and 'claim' are by no means synonymus [sic]; indeed, it is practically a matter of common knowledge that an insurer against whom a claim is made will frequently deny such claim on issues relating to liability even though coverage actually is afforded in the event that the question of liability is eventually determined against it.'" *Page v. Ins. Co. of N. Am.*, 256 Cal. App. 2d 374, 380 (Cal. App. 1967). Put more succinctly, "[t]here is a distinction between a denial of coverage by an insurer and denial of a claim on the ground that its insured is not legally responsible." *Noel v. Metro. Prop. & Liab. Ins. Co.,* 41 Mass. App. Ct. 593, 595 (1996). "The former involves a determination as to whether the particular claim asserted is one to which the policy was intended to apply, whereas the latter involves a determination as to the viability of the claim itself." *Id.*

On October 23, 2025, Cindy Resendes wrote to plaintiff's counsel, Attorney Tomlinson, acknowledging receipt of his letter of representation, disclosing policy limits, and stating:

> At this time we are requesting any and all documentation supporting our insured was liable for this incident. This appears to be a plumbing issue, however there is nothing to support that our insured caused this issue by way of negligence.

*See Letter,* attached as Exhibit A. Plaintiff argues, in its "Motion to Realign Parties" that the Cincinnati Insurance Company has "denied coverage" for the claims asserted against Matthew Bonanno and Emily Bonanno. It has not. Cincinnati insurance Company denied ***liability*** to the plaintiff. This does not create a coverage dispute; nor does it somehow align the interests of a tort defendant with those of their adversary.

***2. Cincinnati Insurance Company's denial of liability to the plaintiff is not a refusal to defend its insureds, Matthew Bonanno and Emily Bonanno.***

"[D]uty to defend" provisions in insurance contracts…generally require an insurer to defend the insured in suits seeking damages for covered claims or covered losses, including shouldering defense costs such as payment of attorney's fees and costs." *O'Connor v. Mag Mut. Ins. Co.*, 498 Mass. 105, 110 (2026). Conducting an investigation of the nature and value of a claim – and even denying liability or refusing to make an offer – do not breach the duty to defend. *Vermont Mut. Ins. Co. v. Maguire*, 662 F.3d 51, 57–58 (1st Cir. 2011) (insurer did not breach duty to defend its insured by reviewing claim and investigating and declining to fulfil claimant's inflated demand and therefore was not liable when insured entered into unauthorized settlement).

Plaintiff's Motion tacitly acknowledges, by references to "panel counsel," that Cincinnati Insurance Company ***is*** affording Matthew Bonanno and Emily Bonanno a defense against its claims. Under Massachusetts law, if insureds are not content to have the insurer defend in accordance with the policy, unless the insurer provides assurances as to indemnity against a potential judgment, they have the option to demand defense without reservation. *See, e.g. OneBeacon Am. Ins. Co. v. Celanese Corp.*, 92 Mass. App. Ct. 382, 388 (2017); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 406–407 (2003); *Magoun v. Liberty Mut. Ins. Co.*, 346 Mass. 677, 685 (1964). Plaintiff, as a tort claimant, has no right to gin up a dispute as to the "duty to defend" simply because it would prefer to litigate issues of "coverage" rather than the uncertain and dubious facts upon which it will bear the burden of proof at trial.

### B. PLAINTIFF'S DEMAND FOR DECLARATORY JUDGMENT AS TO "INDEMNITY" DOES NOT CREATE A DISPARITY OF INTEREST BETWEEN MATTHEW BONANNO AND EMILY BONNANO AND THEIR INSURANCE CARRIER, CINCINNATI INSURANCE COMPANY.

#### *1. There can be no declaration concerning an insurer's duty to indemnify unless and until the insured has been found liable.*

A carrier has no duty to indemnify unless its insured is liable to the plaintiff for damages covered by the policy. *Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc.*, 480 Mass. 480, 484, n. 8 (2018) ("The duty to indemnify 'arises only after the insured's liability has been established and is between the insurer and the insured.'") *John Moriarty & Assocs., Inc.* 102 Mass. App. Ct. at 489 (reasoning that one way that there may be a duty to defend, but not to indemnify, is if insured is not found liable at trial); *Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621, 639 (2007) (even settlement between insured and claimants not sufficient to determine liability, where the settlement terms did not result in admission of liability in a manner covered by the policy). A declaration as to the duty to indemnify requires as a necessary, but far from sufficient condition, a finding that the insured defendant is liable to the plaintiff. *See Magoun v. Liberty Mut. Ins. Co.*, 346 Mass. 677, 681–82 (1964) (reasoning that "merely because the declaration in the tort action stated a cause of action apparently within the coverage of the policy, that [the insurer] upon the facts actually proved upon a trial would be bound to satisfy a judgment for [plaintiff]."); *see AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 429 (D. Mass. 2016) *aff'd sub nom. AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25 (1st Cir. 2018).

The Cincinnati Insurance Company and its insureds share a legal interest in defeating the plaintiff on each count asserted against Matthew Bonanno and Emily Bonanno. As the

declaratory judgment count – as it seeks a declaration concerning the duty to indemnify -- also requires a finding of liability against Matthew and Emily Bonanno, the Cincinnati Insurance Company and its insureds share the same legal interest in defeating the declaratory judgment count.

## CONCLUSION

The Plaintiff's Cross-Motion to Re-Align Parties must be denied, as there is no need to "Re-Align" parties who are united in their common interest: Defeating the groundless and baseless claims advanced by the Plaintiff.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

[signature]

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

A True Copy, Attest:
Colleen S. Whelden
Nantucket Superior Court

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 9th day of September, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

John R. Garrasi, Esq.
Marin, Magnuson, McCarthy & Kenney, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Nora R. Adukonis

# EXHIBIT

# A

THE CINCINNATI INSURANCE COMPANIES

The Cincinnati Insurance Company ▪ The Cincinnati Indemnity Company
The Cincinnati Casualty Company ▪ The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

October 23, 2025

Tomlinson Law
Attorney Raymond H. Tomlinson Jr.
76 Tupper Road, Suite 11
Sandwich, MA 02563

| | | |
|---|---|---|
| **Re:** | **Insured:** | Matthew & Emily Bonanno |
| | **Claim No.:** | 4583781 |
| | **Policy No.:** | 05C011064266 |
| | **Loss Date:** | 8/21/2025 |
| | **Your Client:** | 1942 Realty LLC |
| | **Liability Limits:** | **Personal Liability:**<br>**a) Bodily Injury and Property Damage**<br>**$1,000,000 per occurrence**<br>**$1,000,000 Personal Injury (aggregate)**<br>**Medical Payments to others: $50,000 – per person** |

Dear Attorney Tomlinson:

As noted above, our insured carries Personal liability limits of $1,000,000 for PD/BI per occurrence, as well as $1,000,000 for Personal Injury limit which is aggregate, then $50,000 for Medical Payments to others with a per person limit.

We are in receipt of your Letter of Representation for your client 1942 Realty LLC, please let this letter serve to acknowledge it.

Please also provide me with a copy of your firms W9 so that I may have your firm added into my system.

At this time we are requesting any and all documentation supporting our insured was liable for this incident. This appears to be a plumbing issue, however there is nothing to support that our insured caused this issue by way of negligence.

Please contact us at your earliest convenience to discuss the loss or if you have any questions.

Sincerely,

Cindy Resendes

Cindy Resendes
Senior Claims Specialist I

Mailing Address: P.O. Box 109 ▪ Hudson, MA 01749
Cindy_Resendes@CinFin.com ▪ Office : 978-875-5822 ▪

#5

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

Filed 09/09/2026

**AFFIDAVIT OF COMPLIANCE WITH SUPERIOR COURT RULE 9A**

I, Nora R. Adukonis, swear and aver as follows:

1. I am a member in good standing with the Commonwealth of Massachusetts and a Partner at the law firm of Litchfield Cavo LLP.

2. I have been retained to represent the Defendants, The Cincinnati Insurance Company, in connection with the above matter.

3. On or about August 11, 2026, I served Plaintiff's counsel with copies of the following:

   - Motion to Dismiss of The Cincinnati Insurance Company; and
   - Memorandum of Law of The Cincinnati Insurance Company in Connection with its Motion to Dismiss.

4. On or about August 21, 2026, we received the following from Plaintiff's counsel:

   - Plaintiff's Memorandum in Opposition to the Motion to Dismiss of The Cincinnati Insurance Company; and
   - Plaintiff's Cross Motion for an Order Realigning Defendants Matthew W. Bonanno and Emily J. Bonanno with Plaintiff in Opposition to Cincinnati Insurance Company's Motion to Dismiss Count XI.

5. On September 9, 2026, we served all counsel with copies of the following:

   - The Cincinnati Insurance Company's Opposition to Plaintiff's Purported "Cross-Motion" to "Realign Parties"; and

   - The Cincinnati Insurance Company's Reply to Opposition to Motion to Dismiss.

6. To date, we have not received any additional oppositions.

7. I hereby certify that I have complied with Superior Court Rule 9A and file the above-referenced documents.

Signed under the penalties of perjury this 9th day of September, 2026.

Nora R. Adukonis

**CERTIFICATE OF SERVICE**

I, Nora R. Adukonis, hereby certify that on this 9th day of September, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

John R. Garrasi, Esq.
Marin, Magnuson, McCarthy & Kenney, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Nora R. Adukonis

A True Copy, Attest:
Colleen S. Whelden
Nantucket Superior Court

# 6

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

Filed 09/09/2026

**REQUEST FOR HEARING**

The Defendant, The Cincinnati Insurance Company, by and through its counsel, hereby request a hearing on their Motion to Dismiss.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 9th day of September, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

John R. Garrasi, Esq.
Marin, Magnuson, McCarthy & Kenney, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

[signature]

Nora R. Adukonis

**A True Copy, Attest:**

[signature]

**Nantucket Superior Court**

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

#7

**COMMONWEALTH OF MASSACHUSETTS**

NANTUCKET, SS. SUPERIOR COURT DEPT.

| | |
|---|---|
| 1942 REALTY, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>MATTHEW W. BONANNO,<br>EMILY J. BONANNO,<br>JANE DOE, and<br>THE CINCINNATI INSURANCE COMPANY,<br><br>*Defendants.* | CIVIL ACTION NO. 2675CV00024<br><br>Filed 09/23/2026<br><br>**DEFENDANTS MATTHEW W. BONANNO AND EMILY J. BONANNO'S STATE COURT NOTICE OF REMOVAL** |

Defendants Matthew W. Bonanno and Emily J. Bonanno hereby notify this Court that, on September 23, 2026, they filed a Notice of Removal in the United States District Court for the District of Massachusetts, Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The federal action has been assigned Civil Action No. 1:26-cv-14345.

A true and accurate copy of the filed Notice of Removal is attached as Exhibit A. Pursuant to 28 U.S.C. § 1446(d), the filing of this notice and the attached federal Notice of Removal effects the removal, and the state court shall proceed no further unless and until the action is remanded.

*[SIGNATURE PAGE TO FOLLOW]*

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

Dated: September 23, 2026

Respectfully submitted,
Defendants,
Matthew W. Bonanno and Emily J. Bonanno,
By and through their attorneys,
*/s/ Douglas A. Robertson*
Douglas A. Robertson, Esq.
BBO No. 552315
*/s/ John R. Garrasi*
John R. Garrasi, Esq.
BBO No. 717460
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
drobertson@mmmk.com
jgarrasi@mmmk.com

**A True Copy, Attest:**
Colleen S. Whelden
**Nantucket Superior Court**

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

## CERTIFICATE OF SERVICE

I, Douglas A. Robertson, attorney for Defendants Matthew W. Bonanno and Emily J. Bonanno, hereby certify that on September 23, 2026, I served a copy of the above document(s) via email upon the following:

Raymond H. Tomlinson, Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com

Nora R. Adukonis, Esq.
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

/s/ Douglas A. Robertson
Douglas A. Robertson, Esq.
BBO No. 552315
Attorney for the Defendants,
Matthew W. Bonanno and Emily J. Bonanno
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
drobertson@mmmk.com

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

# EXHIBIT A

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

**UNITED STATES DISTRICT COURT FOR THE FIRST DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 1:26-cv-14345

| | |
|---|---|
| 1942 REALTY, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>MATTHEW W. BONANNO,<br>EMILY J. BONANNO,<br>JANE DOE, and<br>THE CINCINNATI INSURANCE COMPANY,<br><br>*Defendants*. | **DEFENDANTS MATTHEW W. BONANNO AND EMILY J. BONANNO'S NOTICE OF REMOVAL** |

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446, Defendants Matthew W. Bonanno and Emily J. Bonanno hereby remove this civil action from the Massachusetts Superior Court, Nantucket County, to the United States District Court for the District of Massachusetts. In support of this Notice of Removal, Defendants aver as follows:

**Procedural History and Plaintiff's Allegations**

1. Plaintiff 1942 Realty, LLC ("1942 Realty") commenced this action in the Massachusetts Superior Court, Nantucket County, captioned 1942 Realty, LLC v. Matthew W. Bonanno, Emily J. Bonanno, Jane Doe, and The Cincinnati Insurance Company, Civil Action No. 2675CV00024. The Verified Complaint bears a June 23, 2026 filing stamp.

2. The Complaint arises from an alleged August 21, 2025 water loss at 12 Galen Avenue, Nantucket, Massachusetts, during a short-term vacation rental. Counts I through X assert contract, tort, and related claims against one or more of the Bonanno Defendants and Jane Doe.

Count XI seeks declaratory relief concerning a liability policy issued by The Cincinnati Insurance Company ("Cincinnati") to Matthew and Emily Bonanno.

3. The Complaint alleges losses expected to exceed $250,000 and seeks compensatory and consequential damages, costs, interest, and other relief. The state Civil Action Cover Sheet separately identifies at least $198,947.66 in then-documented property and lost-rental damages. Accordingly, the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Before filing, the removing Defendants will attach all process, pleadings, and orders served upon them as required by 28 U.S.C. § 1446(a).

**Grounds for Removal**

5. This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the controversy is between citizens of different States.

6. 1942 Realty is a limited liability company. For diversity purposes, an LLC has the citizenship of each of its members, including through every layer of any unincorporated entity member. *See Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, F.3d 51, 54–55 (1st Cir. 2006); *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125–27 (1st Cir. 2011). As of the date of removal, Boatman's Lane, LLC is the sole member of 1942 Realty. The sole member of Boatman's Lane is Ethan B. Stroud III, an individual domiciled in and a citizen of Texas. Accordingly, the citizenship of Boatman's Lane, LLC, and therefore the citizenship of 1942 Realty, is Texas.

7. Matthew W. Bonanno is domiciled in and is a citizen of New York.

8. Emily J. Bonanno is domiciled in and is a citizen of New York.

9. Cincinnati is an Ohio insurance corporation with its principal place of business in Fairfield, Ohio, and therefore is a citizen of Ohio for purposes of 28 U.S.C. § 1332(c)(1). Because Cincinnati's insureds are themselves joined as party-defendants, the special "direct action" citizenship proviso in § 1332(c)(1) does not apply by its terms.

10. The Complaint identifies a defendant only as "Jane Doe" or "Chloe" and states that her full legal name is unknown. Under 28 U.S.C. § 1441(b)(1), the citizenship of a defendant sued under a fictitious name is disregarded in determining removability.

11. Accordingly, once the citizenship of every member of 1942 Realty is verified as set forth above, complete diversity exists between the plaintiff and the presently named, non-fictitious defendants.

12. No properly joined and served defendant is alleged or known to be a citizen of Massachusetts. The forum-defendant limitation in 28 U.S.C. § 1441(b)(2) therefore does not bar removal.

13. On August 21, 2026, Plaintiff served a cross-motion asking the state court to recognize that the Bonanno Defendants are aligned with Plaintiff only "on the coverage question presented in Count XI" and to stay or deny Cincinnati's motion to dismiss that count. The materials supplied for removal contain no order granting that motion.

14. For diversity purposes, federal courts independently align with parties according to their actual interests in the primary and controlling controversy. *See City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, 72–75 (1941); *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F2d 1, 4–5 (1st Cir. 1988). Here, Plaintiff continues to seek substantial personal liability against the Bonanno Defendants under Counts I through X. That live dispute creates an actual collision of interests notwithstanding a shared position with respect to insurance coverage under Count XI. *Cf.*

*Littlefield v. Acadia Ins. Co.*, 392 F3d 1, 4 n.2 (1st Cir. 2004) (realigning parties in a coverage-only dispute where their interests and requested relief were identical).

**Timeliness and Consent**

15. The removal is timely under 28 U.S.C. § 1446(b). Defendants Matthew W. Bonanno and Emily J. Bonanno were formally served with the summons and Plaintiff's Complaint on September 14, 2026. A defendant's removal period is not triggered by mere receipt of a courtesy copy of the complaint unaccompanied by formal service or waiver. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48, 354–56 (1999).

16. Cincinnati is a properly joined defendant. Cincinnati's written consent to this removal is being filed contemporaneously pursuant to 28 U.S.C. § 1446(b)(2)(A).

17. Upon information and belief, Defendant "Jane Doe" has not appeared through counsel and has not been identified or served as of August 21, 2026. A defendant who has not been properly served need not join or consent under § 1446(b)(2)(A).

**The Procedural Requirements for Removal Have Been Satisfied**

18. Removal lies in this Court because the state action is pending in Nantucket County, within the District of Massachusetts. 28 U.S.C. § 1441(a). Nantucket County is within the Eastern Division of this District. L. R. 40.1(c)(1), D. Mass.

19. Pursuant to 28 U.S.C. § 1446(d), promptly after filing this Notice the removing Defendants will give written notice to all adverse parties and file a copy of this Notice with the Clerk of the Massachusetts Superior Court, Nantucket County, thereby effecting removal.

20. Pursuant to L. R. 81.1(a), D. Mass., within 28 days after filing this Notice, the removing Defendants will filed certified or attested copies of all records and proceedings in the state court and a certified or attested copy of all state-court docket entries.

21. After filing this Notice of Removal, Defendants Matthew W. Bonanno and Emily J. Bonanno will promptly serve written notice of this Notice of Removal on counsel for all adverse parties and file the same with the Clerk of the Massachusetts Superior Court, Nantucket County, in accordance with 28 U.S.C. § 1446(d).

22. True and correct copies of all process, pleadings, and orders served on the Defendants in the action pending in Massachusetts Superior Court, Nantucket County, are attached hereto as Exhibit A.

23. A true and correct copy of the state court docket entries in the action pending in Massachusetts Superior Court, Nantucket County, are attached hereto as Exhibit B.

24. Defendant Cincinnati's signed Consent to Removal is attached hereto as Exhibit C.

**Non-Waiver of Defenses**

25. By removing this action from the Massachusetts Superior Court, Nantucket County, Defendants Matthew W. Bonanno and Emily J. Bonanno do not waive any defenses available to them.

26. By removing this action from Massachusetts Superior Court, Nantucket County, Defendants Matthew W. Bonanno and Emily J. Bonanno do not admit any of the allegations in plaintiff's complaint.

**WHEREFORE**, Defendants Matthew W. Bonanno and Emily J. Bonanno remove the above-captioned action from the Massachusetts Superior Court, Nantucket County, to the United States District Court for the First District of Massachusetts, Eastern Division, for the exercise of jurisdiction over this action as though this case had been originally instituted in this Court.

Dated: September 23, 2026

Respectfully submitted,
Defendants,
Matthew W. Bonnano and Emily J. Bonanno,
By and through their attorneys,

*/s/ Douglas A. Robertson*
Douglas A. Robertson, Esq.
BBO No. 552315
*/s/ John R. Garrasi*
John R. Garrasi, Esq.
BBO No. 717460
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
drobertson@mmmk.com
jgarrasi@mmmk.com

## CERTIFICATE OF SERVICE

I, Douglas A. Robertson, attorney for Defendants Matthew W. Bonanno and Emily J. Bonanno, hereby certify that on September 23, 2026, I served a copy of the above document(s) via email upon the following:

Raymond H. Tomlinson, Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com

Nora R. Adukonis, Esq.
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

*/s/ Douglas A. Robertson*
Douglas A. Robertson, Esq.
BBO No. 552315
Attorney for the Defendants,
Matthew W. Bonanno and Emily J. Bonanno
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
drobertson@mmmk.com

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

# EXHIBIT A

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

**MEMORANDUM OF LAW OF THE CINCINNATI INSURANCE COMPANY IN CONNECTION WITH ITS MOTION TO DISMISS**

Cincinnati Insurance Company, defendant in this matter, moves pursuant to Mass. R. Civ. P. 12(b)(6) and 12(h), for dismissal on the basis that the Plaintiff's Complaint fails to adequately allege any basis for a declaratory judgment, as there is no "actual controversy" and the Plaintiffs have no standing.

I. ALLEGATIONS IN COMPLAINT

Plaintiff's Complaint alleges the following: 1942 Realty LLC is the owner of property at 12 Galen Avenue in Nantucket, Massachusetts. Pl. Compl. ¶ 1. Defendant Matthew Bonanno rented the property for a two-week period in August of 2025, at a price of $54,848.77, including taxes and an "administrative fee." Pl. Compl. ¶ 11-13.

While Mr. Bonanno occupied the property, a toilet overflowed in the third-floor bathroom. Pl. Compl. ¶ 18. The water was not detected for two hours, which the plaintiff attributes to one of the named defendants having moved a water sensor in that room. Pl. Compl.

¶ 19, 25. The overflow caused water damage. Pl. Compl. ¶¶ 28-30. Plaintiff canceled vacation bookings for the rest of the season. Pl. Compl. ¶ 28. However, plaintiff's own insurance policy contained a "Water or Steam Damage Endorsement" which limited the amount of coverage to $50,000. Pl. Compl. ¶ 29.

Plaintiff demanded compensation from Mr. Bonanno, his wife, their nanny, and their liability insurance carrier, Cincinnati Insurance Company. Pl. Compl. ¶ 36. Plaintiff, through counsel, threatened declaratory judgment against the carrier prior to initiating any claim. Pl. Compl. ¶ 36. When Cincinnati was notified of the claim, Cincinnati indicated that there was no support for any negligence on the part of its insured, Mr. Bonanno. Pl. Compl. ¶ 39.

Plaintiff seeks a "Declaratory Judgment" that the policy issued to Mr. Bonanno, by Cincinnati, will indemnify Mr. Bonanno for the damage alleged in the Plaintiff's Complaint. Pl. Compl. ¶ 97-16. Plaintiff does not allege that there has been a bad faith failure to settle, does not allege that liability is reasonably clear, and has not included a cause of action pursuant to G.l. c. 93A and 176D. The only cause of action asserted against the Cincinnati Insurance Company is for "Declaratory Judgment." The declaratory judgment seeks a declaration that the water damage was an "occurrence" covered by the policy, and therefore, that Cincinnati Insurance Company has a duty to indemnify the Bonannos for the claims made by Plaintiff.

## II. STANDARD

"When evaluating a motion to dismiss a claim for declaratory relief under rule 12 (b) (6), a judge must proceed in two steps." *Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC*, 481 Mass. 13, 18 (2018). "First, the judge must determine whether the claim was 'properly brought.'" *Id.* (citing *Mscisz v. Kashner Davidson Sec. Corp.*, 446 Mass. 1008, 1010 (2006)). A claim for declaratory relief is properly brought when the plaintiff demonstrates that an "actual controversy

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

exists" and that the plaintiff has standing to sue. *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins.*, 373 Mass. 290, 292-293 (1977) (explaining standing requirement). If the claim is "properly brought," "the judge must proceed to the second step: determining whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss." *Buffalo-Water 1, LLC*, 481 Mass. at 18.

## III. ARGUMENT

"[F]or a court to entertain a petition for declaratory relief" there must be "(a) an actual controversy sufficient to withstand a motion to dismiss must appear on the pleadings; and (b) even if there is a finding of actual controversy, a plaintiff must demonstrate the requisite legal standing to secure its resolution." *Galipault v. Wash Rock Invs., LLC*, 65 Mass. App. Ct. 73, 83–84 (2005) (citing *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.*, 373 Mass. at 292.)

### A. Declaratory relief may not be entertained, as no "real dispute" exists between a tort claimant and a tortfeasor's insurance carrier until a judgment has been issued against the tortfeasor.

"An 'actual controversy' exists when there is 'a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.'" *Wells Fargo Fin. Massachusetts, Inc. v. Mulvey*, 93 Mass. App. Ct. 768, 771 (2018). Declaratory judgment actions are "concerned with the resolution of real, not hypothetical, controversies." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.*, 373 Mass. at 292–93. For an "actual controversy" to exist between the parties, it is not enough for the plaintiff to merely claim some interest that may be

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

harmed by the defendant; the defendant must have "violated some duty owed" to the plaintiff." *Source One Fin. Corp. v. Geico Indem. Co.*, 546 F. Supp. 3d 97, 99 (D. Mass. 2021) (*citing and quoting Enos v. Sec'y of Env't Affs.*, 432 Mass. 132 (2000) (internal quotations and citations omitted)).

*1. As the plaintiff has no right to receive payment from the defendant, there can be no present dispute between them.*

A tort claimant has no direct, enforceable right against a tortfeasor's liability carrier until judgment enters against a tortfeasor. *See Rogan v. Liberty Mut. Ins. Co.*, 305 Mass. 186, 187–88 (1940); *Kiley v. Stanley,* 328 Mass. 652, 652 (1952) *see also Shapiro v. State Farm Mut. Ins. Co.*, 355 Mass. 54, 57 (1968) (valid judgment prerequisite to action against insurance carrier on liability policy) *and Cubberley v. Com. Ins. Co.*, 495 Mass. 289, 294 (2025) (plaintiffs had no cause of action against insurance carrier directly, concerning its obligation to pay certain damages under liability policy, because they had not first obtained judgments against its insureds); *see also Martins v. Vermont Mut. Ins. Co.*, 662 F. Supp. 3d 55, 64–65 (D. Mass. 2023), *aff'd,* 92 F.4th 325 (1st Cir. 2024).

As there has been no judgment entered against Cincinnati Insurance Company's named insureds, plaintiff has no right to payment. As plaintiff has no right to payment from defendant, there can be no present "real" dispute between these parties, and the declaratory judgment claim must be dismissed.

*2. Declaratory judgment cannot be used as an "end run" around the absence of a direct, pre-judgment cause of action against an alleged tortfeasor's liability insurer outside of G. L. c. 93A.*

"[A] party may not seek declaratory relief to effect an 'end run' around the absence of a private right of action where the Legislature intended to foreclose certain remedies." *Serv. Emps. Int'l Union, Loc. 509 v. Dep't of Mental Health,* 469 Mass. 323, 336 (2014) (citing *Boston Med.*

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

*Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs.*, 463 Mass. 447, 471, (2012); *Green v. Mansour,* 474 U.S. 64, 73 (1985)). Massachusetts law recognizes only two instances where a tort claimant may bring suit against the alleged tortfeasor's liability insurer: (1) statutory "reach and apply" action pursuant to G. L. c. 214, § 3(9), and (2) an action pursuant to G.L. c. 93A §§ 9 or 11[1]. *See Lifchits v. Integon Nat'l Ins. Co.*, No. 18-CV-12637-ADB, 2020 WL 4756272, at *5 (D. Mass. Aug. 17, 2020) (discussing absence of direct action against insurer outside these two circumstances, and gathering cases as examples of each).

Absent a judgment against the insured, a tort claimant has no right to seek payment from the insurer via reach-and-apply. *Tessier v. State Farm Mut. Ins. Co.*, 334 F. Supp. 807, 808 (D. Mass. 1971), *aff'd,* 458 F.2d 1299 (1st Cir. 1972) ("The question presented is whether or not such a direct action against the insurer without naming the insured, or without having previously obtained a judgment against the insured, is properly maintainable."); *Lifchits v. Progressive Corp.*, 97 Mass. App. Ct. 1106, 142 N.E.3d 91 (2020) (table disposition) (as there was no judgment, there can be no direct action, and further noting that in such an action, the insurer is able to raise all defenses to coverage, including those based on conduct of its own insured). Likewise, in the absence of a duty to settle with the tort claimant – which is not here alleged -- there can be no cognizable violation of G.l. c. 93A. See *Martins v. Vermont Mut. Ins. Co.*, 662 F. Supp. 3d 55, 63 (D. Mass. 2023*) aff'd,* 92 F.4th 325 (1st Cir. 2024) (denying motion to amend as futile, where there was no plausible, non-futile claim that the insurer had failed to make a reasonable settlement offer when liability was reasonably clear).

---

[1] Plaintiff cannot bring an action pursuant G.L. c. 93A § 9, as plaintiff, a limited-liability company, is engaged in trade or commerce. Therefore, its only avenue would be under G.L. c. 93A § 11, which does not import the statutory "unfair settlement practices" provisions of G. L. c. 176D § 3(9) automatically.

Plaintiff cannot assert a claim to reach-and-apply absent a judgment against defendant's insured; it cannot assert a claim under G. L. c. 93A, unless it can plausibly allege an actual loss of money or property caused by failure to settle when liability was reasonably clear. Having done neither, the plaintiff cannot make use of the declaratory judgment statue as substitute.

**B. The plaintiff lacks standing to obtain the declaration sought, as presently only Cincinnati Insurance Company's insureds, Mr. Bonanno and Mrs. Bonanno, have an interest in Cincinnati Insurance Company's duties to defend and indemnify.**

"Although the standing requirements under G.L. c. 231A should be liberally construed, there are limits to the matters that can be heard in an action for a declaratory judgment." *Enos v. Sec'y of Env't Affs.*, 432 Mass. 132, 141, 731 N.E.2d 525, 532 (2000). The declaratory judgment statute is not, itself, an independent basis for standing. *See Enos*, 731 N.E.2d at 528; *see Source One Fin. Corp. v. Geico Indem. Co.*, 546 F. Supp. 3d 97, 100 (D. Mass. 2021). The plaintiff, to demonstrate "standing" must establish that he or she "is a person entitled to initiate judicial resolution of the controversy." *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Comm'r of Ins.*, 373 Mass. 290, 293 (1977). "Because standing is a question of subject matter jurisdiction" where standing is absent, dismissal is required. *HSBC Bank USA, N.A. v. Matt*, 464 Mass. 193, 199 (2013) (discussing lack of standing under Mass. R. Civ. P. 12(h)(3)) *see also Murchison v. Zoning Bd. of Appeals of Sherborn*, 485 Mass. 209, 218 (2020) (where plaintiffs "lack standing ... we order[ ] dismissal of the appeal without reaching the merits"); *Cubberley v. Com. Ins. Co.*, 495 Mass. 289, 294 (2025) (discussing standing in the context of declaratory judgment).

1. *Plaintiff does not have standing to seek a declaration of the Cincinnati Insurance Company's duties under the insurance policy, as, at present, those duties are owed only to Cincinnati Insurance Company's named insureds.*

"To have standing in any capacity, a [plaintiff] must show that the challenged action has caused the [plaintiff] injury." *Town of Sudbury v. Massachusetts Bay Transportation Auth.*, 485 Mass. 774, 779 (2020) (citing *Slama v. Attorney Gen., 384* Mass. 620, 624 (1981)). "Standing" cannot rest "on the rights of third parties." *City of Bos. v. Rockland Tr. Co.*, 391 Mass. 48, 57 (1984) (*citing Barrows v. Jackson*, 346 U.S. 249, 255 (1953); *Klein v. Catalano*, 386 Mass. 701, 714 (1982) (lienholder could not initiate declaratory judgment to challenge tax seizure of property against which it held lien; only the owner had the right to challenge seizure)). Under a liability insurance policy, the insurer owes two separate duties: The duty to defend, which is defined by the allegations in the complaint (*Sterilite Corp. v. Cont'l Cas.* Co., 17 Mass. App. Ct. 316, 318–19 (1983)) and the duty to indemnify, which depends -- in large part, although not wholly – on the facts found at trial. *See Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 638 (1986) (entry of order concerning duty to indemnify prior to reaching a verdict was premature, as the judgment may fall within policy exclusion, or insured may breach policy condition); *see also Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp.*, 883 F.2d 1092, 1100 (1st Cir. 1989) (duty to indemnify against damage from sludge in crawlspace, as it could be excluded, could not be determined prior to trial). Both the duty to defend and to indemnify are owed to the insured, not to the claimant.. *See Stormo v. State Nat'l Ins. Co.*, 116 F.4th 39, 46 (1st Cir. 2024), cert. denied, 145 S. Ct. 1430, 221 L. Ed. 2d 555 (2025) (discussing duty to defend and to indemnify where insured assigned its claims against insurer to claimant).

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

Plaintiff seeks a declaration that its claim constitutes a "covered occurrence[2]" and therefore Cincinnati Insurance Company has an obligation to "indemnify" against the damages sought. Plaintiff, however, has no right to assert a claim for "indemnity" – nor even for defense – under the policy, as these rights do not belong to the plaintiff. These rights belong to the named insureds.

2. *Plaintiff has no standing to seek a declaration concerning the "duty to indemnify" as no judgment has issued, and therefore, the issue of indemnity cannot be resolved.*

"[T]he nature of the claim and not the ultimate judgment against the insured ... triggers the duty to defend ... even though the plaintiff may not succeed and the claim may, in fact, be weak or frivolous." A.A. Sansoucy, Liability Insurance Law in Massachusetts 8 (2d ed. 2008). See 14 G. Couch, Insurance § 200:3, at 200–9 (3d ed. 2005) ("insurer has the duty to defend an insured against a lawsuit based merely on the potential of liability under a policy, despite the fact that the insurer could eventually be determined to have no duty to indemnify the insured"). The duty to indemnify, by contrast depends on the facts found at trial, the judgment ultimately entered against the insured, and the resolution of any defenses the insurer may have as to coverage. *See Travelers Ins. Co.*, 883 F.2d at 1100 (whether there was a duty to indemnify depends on the ultimate judgment); *Martins.*, 92 F.4th at 329 *as cited in Cubberley,* 495 Mass. at 293; *Tessier v. State Farm Mut. Ins. Co.*, 458 F.2d 1299, 1300 (1st Cir. 1972) (holding that the coverage defenses relating to the conduct of an insured are "procedurally difficult, and

---

[2] It is unclear what the plaintiff, in fact, means by this. The terms of liability coverage do not obligate an insurer to compensate an insured for any damage caused by an "occurrence," but rather provide, broadly, for payment of "those sums the 'insured' becomes legally obligated to pay as damages because of "bodily injury", "personal injury" or "property damage" to which this insurance applies. The existence of an "occurrence" is a necessary but not sufficient condition for coverage, and does not trigger the duty to indemnify.

sometimes perhaps substantively impossible, to raise…in conjunction with the original tort action.").

Plaintiff's Complaint alleges, broadly, that the plaintiff suffered property damage, and alleges that the damage is attributable to Cincinnati Insurance Company's insureds. Plaintiff's Complaint does not assert that judgment has entered establishing a legal obligation to pay on behalf of the insured. In the absence of a "legal obligation to pay" the duty to indemnify cannot be resolved.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted, as to the Cincinnati Insurance Company, because the single count asserted, for declaratory judgment, fails to adequately allege the existence of an actual controversy; an injury sufficient for standing; or any right to relief. Furthermore, the Declaratory Judgment County is an attempt to evade the statutory requirements for a Reach-and-Apply Action, and/or one under G.L. c. 93A, and therefore, must be dismissed.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 11th day of August, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

Nora R. Adukonis

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 2675CV00024

1942 REALTY, LLC,

Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, and THE CINCINNATI INSURANCE COMPANY,

Defendants.

**MOTION TO DISMISS OF THE CINCINNATI INSURANCE COMPANY**

The Cincinnati Insurance Company, defendant in this matter, moves pursuant to Mass. R. Civ. P. 12(b)(6) and Mass. R. Civ. P. 12(h), for dismissal of the Plaintiff's only claim asserted against it, for "Declaratory Judgment" for the reasons set forth below, and as described in the accompanying Memorandum of Law:

1. Plaintiff's Complaint alleges, broadly, that the plaintiff suffered property damage to a home located in Nantucket County, and alleges that the damage is attributable to the actions of Matthew Bonanno and Emily J. Bonanno, Cincinnati Insurance Company's insureds, and that the Cincinnati Insurance Company issued a policy to Mr. Bonanno and Mrs. Bonanno, affording liability insurance coverage for the period at issue.

2. Plaintiff's Complaint seeks a declaration that the incident described in its complaint is a "covered occurrence" under the Cincinnati Insurance Company policy, and Cincinnati Insurance Company therefore has an obligation to "indemnify" its insureds against the losses and damage sought by the Plaintiff.

3. The Plaintiff's Complaint does not assert that any judgment has been obtained against Matthew Bonanno nor against Emily J. Bonanno, nor does it afford any basis to conclude that Mr. Bonnano or Mrs. Bonnano have been adjudicated "legally obligated to pay" the damages sought, and therefore, any declaration concerning the duty to indemnify is premature;

4. The Plaintiff's Complaint does not properly state a claim for declaratory judgment, as the Plaintiff and the Cincinnati Insurance Company are not parties to an "actual controversy," as presently, in the absence of a judgment against Cincinnati Insurance Company's insureds, the Plaintiff lacks any enforceable right in the Policy.

5. The Plaintiff's Complaint does not properly state a claim for declaratory judgment, as the Plaintiff lacks any standing to assert claims against the Cincinnati Insurance Company, as the liability of the Cincinnati Insurance Company's insureds has yet to be determined;

6. The Plaintiff's Complaint, as to Cincinnati Insurance Company, is an attempt to evade the prohibition on direct action against insurance companies, except within the bounds of statutory reach-and-apply or bad faith actions, and therefore, fails to state a claim upon which relief may be granted.

Therefore, the Cincinnati Insurance Company respectfully requests that the claims against it be dismissed with prejudice.

Respectfully submitted,
The Defendant,
CINCINNATI INSURANCE COMPANY,
By Its Attorney,

Nora R. Adukonis, BBO #676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
Fax (781) 246-0167
adukonis@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, hereby certify that on this 11th day of August, 2026, I served the within document on all counsel or record via electronic mail as follows:

Raymond H. Tomlinson, Jr., Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com
***Counsel for Plaintiff***

Nora R. Adukonis

Date Filed 6/23/2026 2:09 PM
Superior Court - Nantucket
Docket Number 2675CV00024

# CIVIL ACTION COVER SHEET

**DOCKET NUMBER** 2675CV00024

**Massachusetts Trial Court**
**Superior Court** #2

**COUNTY** Nantucket Superior Court

Filed 06/23/2026

| | |
|---|---|
| **Plaintiff** 1942 REALTY, LLC | **Defendant:** Matthew W. and Emily J. Bonanno |
| ADDRESS: 3963 Maple Avenue, Suite 300 | ADDRESS: 155 East 72nd Street, Unit 9/10A |
| Dallas, TX 75219 | New York, NY 10021 |
| | |
| **Plaintiff Attorney:** Raymond H. Tomlinson, Jr., Esq. | **Defendant Attorney:** |
| ADDRESS: TOMLINSON \| LAW | ADDRESS: Jane Doe |
| 76 Tupper Road, Suite 11 | 155 East 72nd Street, Unit 9/10A |
| Sandwich, MA 02563 | New York, NY 10021 |
| BBO: 654855 | BBO: |
| **Plaintiff Attorney:** | **Defendant Attorney:** |
| ADDRESS: | ADDRESS: The Cincinnati Insurance Company |
| | P.O. Box 109 |
| | Hudson, MA 01749 |
| BBO: | BBO: |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A08 | Lease of Real Estate | F | ☒ YES ☐ NO |

***If "Other" please describe:**

**Is there a claim under G.L. c. 93A?** ☐ YES ☒ NO

**Is there a class action under Mass. R. Civ. P. 23?** ☐ YES ☒ NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

1. Total hospital expenses
2. Total doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses (describe below)

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date

C. Documented property damages to date $160,447.66

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages

F. Other documented items of damages (describe below) $38,500.00

Prepaid lost rental income (cancelled 2025 season reservations) of $38,500.00, which excludes lost rents for fall/winter 2025 through April 2026 and excludes professional costs

TOTAL (A-F): $198,947.66

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Date Filed 6/23/2026 2:09 PM
Superior Court - Nantucket
Docket Number 2675CV00024

| | |
|---|---|
| Signature of Attorney/Self-Represented Plaintiff: X /s/ Raymond H. Tomlinson, Jr. | Date: June 22, 2026 |

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| | |
|---|---|
| Signature of Attorney: X /s/ Raymond H. Tomlinson, Jr. | Date: June 22, 2026 |

#1

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

Filed 06/23/2026

1942 REALTY, LLC
Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,
Defendants.

## VERIFIED COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

NOW COMES 1942 Realty, LLC, plaintiff in the above-captioned matter, by and through the undersigned counsel, and hereby makes this its Verified Complaint for Damages and Declaratory Judgment, and jury demand, as follows:

## SUMMARY OF ACTION

1. This is an action by plaintiff 1942 Realty, LLC ("Owner" or "1942 Realty"), owner of the residential real property located at 12 Galen Avenue, Nantucket, Massachusetts (the "Premises"), against defendants Matthew W. Bonanno ("Bonanno"), Emily J. Bonanno ("Mrs. Bonanno"), Jane Doe ("Chloe" or the "Nanny") (collectively, the "Bonanno Defendants"), and The Cincinnati Insurance Company ("Cincinnati"), arising out of: (i) the Bonanno Defendants' negligent, reckless, and/or willful acts and omissions during their occupancy of the Premises in August 2025, which caused extensive water damage and flooding throughout all three floors of the Premises and rendered the Premises uninhabitable for a period extending through approximately April 2026; and (ii) Owner's right to a declaration that the Loss constitutes a covered occurrence under the Cincinnati policy insuring the Bonannos and that Cincinnati is obligated to indemnify the Bonannos for the damages awarded herein.

2. As further alleged herein, during their occupancy of the Premises pursuant to a written vacation rental occupancy agreement entered into on or about October 8, 2024 (the "Occupancy Agreement" or "Lease"), defendants Bonanno and/or his wife and/or the Nanny negligently failed to supervise Bonanno's minor child, permitted or caused the child to block or plug the upstairs toilet or otherwise permitted or caused the overflow or uncontrolled discharge of water from a plumbing fixture in the third-floor bathroom at the Premises, and, upon information and belief, Bonanno removed a water leak detection sensor that had been installed adjacent to the upstairs toilet, thereby impairing the early warning system and substantially contributing to the severity of the damage caused by the water overflow.

3. As a direct and proximate result of Defendants' breach of the Occupancy Agreement and/or negligence, the Premises suffered catastrophic flooding, with water infiltrating wall cavities and beneath flooring and causing damage to all three floors. The insured replacement cost value of the structural damage to the Premises was established by Owner's insurer at $96,384.16. Owner's property insurance policy, however, contained a Water or Steam Damage Endorsement limiting aggregate payout on water damage claims to $50,000.00, which amount the insurer has paid. The actual remediation and repair costs incurred by Owner through March 2026 total $160,447.66, leaving uninsured remediation and repair costs of not less than $105,947.66 after application of the $50,000.00 insurance proceeds and $4,500.00 damage deposit. In addition to the direct property damage, Owner suffered a loss of rental income including not less than $38,500.00 in confirmed, prepaid rental reservations that were cancelled as a direct result of the Loss, plus additional lost potential rental income through April 2026. Owner's total documented losses, including unquantified additional rental income losses and professional costs, are expected to exceed $250,000.00 and will be established at trial.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to G.L. c. 212, § 4.

5. Venue is proper in Nantucket County pursuant to G.L. c. 223, § 1, as the Premises is located in Nantucket County and the acts and omissions giving rise to this action occurred therein.

## PARTIES

6. Plaintiff 1942 Realty, LLC is a Texas limited liability company with a principal place of business located at 3963 Maple Avenue, Suite 300, Dallas, Texas 75219, and is the owner of the Premises located at 12 Galen Avenue, Nantucket, Nantucket County, Massachusetts.

7. Upon information and belief, defendant Matthew W. Bonanno ("Bonanno") is an individual who resides at 155 East 72nd Street, Unit 9/10A, New York, New York 10021. Bonanno was the named tenant under the Occupancy Agreement and was an occupant of the Premises at all times relevant hereto.

8. Upon information and belief, defendant Emily J. Bonanno ("Mrs. Bonanno") is an individual who resides at 155 East 72nd Street, Unit 9/10A, New York, New York 10021. Mrs. Bonanno was an occupant and guest of Bonanno at the Premises at all times relevant hereto, and, together with Bonanno, was responsible for the care, supervision, and conduct of the minor child and household employees occupying the Premises during the rental period.

9. Defendant Jane Doe (the "Nanny") is an individual whose first name is Chloe but her full legal name is presently unknown to Owner but is expected to be ascertained through the course of discovery. The Nanny was employed by or retained by Bonanno and/or Mrs. Bonanno as a childcare provider and was present at and occupying the Premises at all times relevant hereto, including at the time of and in the hours preceding the Loss. Owner reserves the right to amend

this Complaint to state the full legal name of the Nanny upon ascertaining the same through discovery or otherwise.

10. Defendant The Cincinnati Insurance Company ("Cincinnati") is, upon information and belief, an insurance company organized and existing under the laws of the State of Ohio, licensed to do business in the Commonwealth of Massachusetts, with a mailing address of P.O. Box 109, Hudson, Massachusetts 01749. Cincinnati issued a homeowner's policy of insurance (Policy No. 05C011064266) (the "Cincinnati Policy") to Matthew and Emily Bonanno as named insureds, which policy was in full force and effect on August 21, 2025, the date of the Loss. The Cincinnati Policy affords personal liability coverage of $1,000,000 per occurrence for property damage, $1,000,000 personal injury aggregate, and medical payments coverage of $50,000 per person. Cincinnati is named herein as a defendant solely for purposes of Count XI (Declaratory Judgment) seeking a declaration that the Loss is a covered occurrence under the Cincinnati Policy and that Cincinnati is obligated to indemnify the Bonannos for all damages established in this action.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### THE OCCUPANCY AGREEMENT

11. On or about October 8, 2024, Owner and Bonanno entered into a written vacation rental occupancy agreement, indenture number 252410-1239, true and accurate copies of which are annexed hereto as **Exhibit A** (the "Occupancy Agreement" or "Lease"), for the vacation rental of the Premises located at 12 Galen Avenue, Nantucket, Massachusetts.

12. Pursuant to the Occupancy Agreement, Bonanno agreed to rent the Premises from Owner for the period commencing August 16, 2025 and concluding August 30, 2025, with maximum occupancy not to exceed ten (10) persons.

Date Filed 8/23/2026 3:09 PM
Superior Court - Nantucket
Docket Number 2675CV00024

13. The rental rate for the period was $45,000.00, plus an administrative fee of $75.00, and rental taxes of $5,273.77, for a total amount due of $54,848.77. Bonanno paid a damage deposit in the amount of $4,500.00, which damage deposit Owner has retained and not returned to Bonanno.

14. The Occupancy Agreement obligated Bonanno to return the Premises in the condition in which they were received, to maintain the Premises in good order during his occupancy and made Bonanno liable for all damages or breakage and/or loss to the Premises in excess of the damage deposit.

15. In particular, the Occupancy Agreement obligated Bonanno to "***maintain the same in good order for the full term of this lease, and shall vacate the Premises peaceably and quietly, leaving it in the same orderly condition in which occupancy was taken.***" The Occupancy Agreement further provided that "***the tenant is further responsible for all damages or breakage and/or loss to the Premises except normal wear and tear.***" See **Exhibit A**, Occupancy Agreement, at § 10. The security deposit was expressly stated not to constitute a cap on Bonanno's liability for damages. **Exhibit A**, Occupancy Agreement, at § 8.

16. The Occupancy Agreement further obligated Bonanno to immediately notify Owner's property manager, Sherburne Management, of any damage to the Premises: "***The LANDLORD hereby notifies the TENANT that Sherburne Management is the caretaker, and is responsible for the care and maintenance of the Premises and should be notified immediately of any damage to the Premises.***" See **Exhibit A**, Occupancy Agreement, at § 9. Bonanno failed to notify Sherburne Management as required under the Occupancy Agreement.

17. Owner fully performed all of its obligations under the Occupancy Agreement. Prior to Bonanno's arrival, the Premises was in good condition, properly equipped, and included water

leak detection sensors installed within the third-floor bathroom adjacent to plumbing fixtures, including adjacent to the third-floor bathroom toilet, for the purpose of detecting and alarming upon any water overflow or leakage from the toilet, bathtub, or other plumbing fixture in the bathroom.

**THE AUGUST 21, 2025 WATER LOSS**

18. On or about August 21, 2025, during the term of the Occupancy Agreement, at approximately 9:00 a.m., Bonanno's minor child (approximately five (5) years of age) used the third-floor bathroom at the Premises, including the toilet. As Bonanno has admitted, the child used the toilet, and the toilet was plugged or blocked, either by the actions of the child or otherwise; upon information and belief, the toilet was not properly cleared or confirmed to be in proper working order following the child's use thereof. Upon information and belief, the Loss was caused by the overflow or uncontrolled discharge of water from one or more plumbing fixtures in the third-floor bathroom — including without limitation the toilet and/or the bathtub — resulting from occupant activity in, and occupants' failure to supervise and inspect, the third-floor bathroom (collectively, the "Incident").

19. A water leak detection device (the "Water Sensor"), which was installed on the bathroom floor adjacent to the toilet, was found by Sherburne Management to have been removed from its installed position and placed atop a windowsill in the third-floor bathroom. Upon information and belief, defendants tampered with or intentionally relocated the Water Sensor during the Rental Period. The Water Sensor was positioned to detect water accumulation on the bathroom floor from any source, including overflow from the toilet, bathtub, or other plumbing fixture, and would have alarmed upon any water reaching the bathroom floor regardless of its point of origin. The act of removing, relocating, or disabling the Water Sensor impaired the sole early

warning mechanism available at the Premises to detect water overflow from plumbing fixtures in the third-floor bathroom, which act substantially increased the severity of the resulting damage.

20. Following the Incident, Bonanno, Mrs. Bonanno, the Nanny, and the other occupants each claimed to have remained at the Premises and in the kitchen area until approximately 2:00 p.m., at which time Bonanno, Mrs. Bonanno, the child, and others departed the Premises for approximately two hours. The Nanny remained behind at the Premises.

21. At approximately 3:52 p.m., while on the ground floor of the Premises, the Nanny claimed to have heard the sound of running water. The Nanny claimed to have observed water leaking through the kitchen ceiling. The Nanny claimed to have called Bonanno at approximately 3:55 p.m. to report the leak, placed bowls and towels to catch water, and proceeded to the third floor, where she turned off the water supply valve to the toilet. The Nanny claimed she observed water leaking at the base of the third-floor toilet.

22. The water overflow went undetected for a substantial period and was not discovered and reported until mid-afternoon, during which time water infiltrated the wall cavities, beneath the flooring, and through the ceilings, causing extensive damage to all three floors of the Premises (the "Loss").

23. In a written statement provided following the Loss, Bonanno acknowledged that his minor child used the third-floor bathroom toilet at approximately 9:00 a.m. on August 21, 2025, and that the toilet only "appeared" to have flushed. Bonanno further acknowledged that the toilet may not have been properly cleared or verified following the child's use thereof.

24. Following the Loss, Owner's designated property caretaker, Sherburne Management — whose role as caretaker of the Premises was expressly identified in the Occupancy Agreement, which required Bonanno to notify Sherburne Management immediately of any

damage — responded to the emergency at the Premises on August 21, 2025 and, together with licensed plumbers and professional remediation professionals retained by Owner, conducted a thorough investigation of the third-floor bathroom and its plumbing fixtures.

25. Sherburne Management's investigation further revealed that the Water Sensor had been removed from its installed position on the bathroom floor and repositioned atop a windowsill in the third-floor bathroom, where it remained fully operational at the time of the investigation — confirming that the Water Sensor had been intentionally relocated by an occupant of the Premises during the Rental Period and that its failure to alarm was the direct result of that relocation, not any malfunction.

26. Neither Sherburne Management nor the licensed plumbers found any evidence of any burst pipes, leaks, mechanical failures, plumbing defects, or other structural or systemic causes which might have contributed to the Loss. The absence of any water leak alarm is further evidence that the Water Sensor had been removed, relocated, or disabled before the overflow began. The Nanny, who claimed to be present at the Premises throughout the afternoon of August 21, 2025, and who claimed to have first discovered the flooding at approximately 3:52 p.m., made no reference in her written statement or in her communications with Owner to having heard any water alarm or alert at any point prior to her discovery of the flooding. Had the Water Sensor remained in its installed position and operational condition, it would have alarmed upon water reaching the bathroom floor, providing advance warning of the overflow that the Nanny — who was physically present in the Premises — would have heard and acted upon, thereby preventing or substantially limiting the resulting damage.

27. All findings confirmed that the sole source of water causing the Loss was occupant-related activity in the third-floor bathroom, and specifically the overflow or uncontrolled discharge

of water from one or more plumbing fixtures therein — including without limitation the toilet and/or the bathtub — and not any burst pipe, pre-existing mechanical defect, or systemic plumbing failure.

**THE DAMAGE AND OWNER'S LOSSES**

28. As a result of the Loss, the Premises was rendered uninhabitable and all scheduled rentals for the remainder of the 2025 rental season were cancelled.

29. Owner duly filed a first-party insurance claim with its property insurer, Beazley USA Services, Inc./Lloyd's ("Insurer"). The Insurer retained Friedline & Carter Adjustment, LLC to adjust the claim. On or about August 29, 2025, the Insurer's adjuster established the Replacement Cost Value of the covered structural damage at $96,384.16. However, the Owner's insurance policy (Policy No. W5254025PNYH) contained a Water or Steam Damage Endorsement (Form BSLHO 04920222) which capped the aggregate payout on water damage claims—including loss of use—at $50,000.00.

30. The Insurer paid Owner the policy limit of $50,000.00 on the water damage claim. The actual remediation and repair costs incurred by Owner through March 2026 total $160,447.66, leaving uninsured remediation and repair costs of not less than $105,947.66 after application of the insurance proceeds and damage deposit.

31. The total remediation, repair, and restoration costs actually incurred by Owner to restore the Premises following the Loss substantially exceeded the preliminary loss adjustment and insurance proceeds paid. Remediation and restoration work encompassed: emergency response and plumbing repairs (including third-floor toilet gasket and valve replacements); professional water damage remediation (sewage remediation, moisture mitigation, and drying equipment installation); complete demolition and replacement of Eastern White Pine flooring and stair restoration on all three floors and all stair treads and landings; plaster work and insulation

installation throughout; interior painting (primer plus two finish coats); carpentry, millwork, and finish trim work; appliance replacement (including mini-refrigerator); and post-construction cleaning. To date, Owner has paid more than $160,447.66 in loss remediation and mitigation expense, exclusive of loss of rental use of the Property.

32. The remediation work, including sewage-related remediation, was necessitated solely by the overflow of water from the restroom and constitutes direct physical damage to the structure of the Premises caused by the occupant-related Incident, and does not arise from the independent growth, presence, or existence of fungi, wet or dry rot, or bacteria as a primary cause.

33. In addition to the direct property damage, Owner suffered a significant loss of rental income attributable to the Loss, including not less than $38,500.00 in confirmed, pre-paid vacation rental reservations that were cancelled directly as a result of the Loss and the uninhabitable condition of the Premises.

34. Owner is also entitled to recover additional lost rental income for the fall/winter 2025–2026 rental periods through at least April 2026, in an amount to be proven at trial, based on the Premises' established premium rental rates on Nantucket.

35. Owner has further incurred costs for expert consultants, licensed plumbers, remediation professionals, attorneys, and other professional services in connection with the investigation and adjustment of the Loss and this litigation.

36. By letter dated September 18, 2025, Owner, through counsel, formally notified Bonanno and Mrs. Bonanno of the claim, demanded disclosure of all applicable insurance coverage, directed the preservation of all evidence, and demanded reimbursement of the uninsured losses. The Notice of Claim expressly advised the Bonannos that Owner was prepared to initiate a declaratory judgment action against them and their insurer(s) to determine coverage for the Loss.

Despite the foregoing, the Bonanno Defendants have failed and refused to compensate Owner for its damages.

37. On October 10, 2025, Owner, through its Manager Eric M. Stroud, sent a further written communication directly to Bonanno at his New York address, again demanding reimbursement for the uninsured losses and advising Bonanno that the licensed plumber who investigated the Premises following the Loss found no evidence of any burst pipe or pre-existing plumbing defect that could account for the extent of the water damage, and specifically rebutting the assertion — attributed to the Nanny — that the flooding had been caused by a burst pipe. Bonanno did not respond to Owner's direct demand or otherwise offer any compensation.

38. By letter dated October 23, 2025, Cincinnati, through its Senior Claims Specialist, acknowledged receipt of Owner's counsel's letter of representation. Cincinnati disclosed coverage under the Cincinnati Policy of $1,000,000 per occurrence for bodily injury and property damage liability, $1,000,000 in personal injury aggregate coverage, and $50,000 per person in medical payments to others. The available coverage under the Cincinnati Policy is sufficient to fully satisfy the totality of Owner's documented losses.

39. Notwithstanding the available coverage and the clear factual record, Cincinnati has taken the position that the Loss "appears to be a plumbing issue" and that there is "nothing to support that our insured caused this issue by way of negligence." In a subsequent communication, Cincinnati's claims representative further asserted that the Bonannos' insured "was present when the plumber repaired the toilet" and requested a plumber's report as a precondition to advancing the claim — suggesting that Cincinnati has characterized post-incident repair work as evidence of a pre-existing mechanical defect, rather than as remediation performed as a direct result of the Loss.

40. Cincinnati's characterization of the Loss is contradicted by the factual record: (a) Bonanno has admitted his minor child used the third-floor toilet at approximately 9:00 a.m. on August 21, 2025, and that the toilet only 'appeared' to have flushed; (b) licensed plumbers retained by Owner found no evidence of any burst pipe, pre-existing leak, mechanical failure, or plumbing defect as a cause of the overflow; (c) Bonanno removed the water leak detection sensor installed by Owner adjacent to the toilet, constituting independent negligence; and (d) the plumber's repair work (gasket and wax ring replacement, valve replacements) constitutes post-incident remediation caused by the overflow, not evidence of any pre-existing defect.

41. Owner's insurer's subrogation counsel has evaluated the Loss and has advised Owner's counsel in writing that, in counsel's assessment, subrogation against the Bonanno Defendants is not legally viable and would not be economical to pursue, and that the Insurer does not intend to assert, and has not asserted, any subrogation claim arising from the Loss. Owner's insurer's subrogation counsel has further confirmed in writing that this position does not affect Owner's independent right to pursue the uninsured portion of its losses in its own name. Owner accordingly brings this action in its own name to recover its uninsured and excess losses.

**<u>COUNT I</u>**
**BREACH OF CONTRACT**
**(Against Defendant Matthew W. Bonanno)**

42. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 above as if fully set forth herein.

43. The Occupancy Agreement constitutes a valid and binding contract between Owner and Defendant Matthew W. Bonanno ("Bonanno").

44. Owner fully performed all of its obligations under the Occupancy Agreement.

45. Defendants breached the Occupancy Agreement by, among other acts and omissions: (a) failing to maintain the Premises in good order and condition during the rental period;

(b) failing to return the Premises in the condition in which it was received; (c) causing or permitting the plugging or clogging of the third-floor toilet and/or the overflow or uncontrolled discharge of water from a plumbing fixture in the third-floor bathroom, whether by a minor child in their charge or otherwise; (d) removing the Water Sensor, which was a safety device installed by Owner; (e) failing to timely discover and report the water overflow; and (f) causing or permitting damage to and waste of the Premises.

46. As a direct and proximate result of Defendant's breaches, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, expert and investigation costs, and other consequential damages.

**COUNT II**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Defendant Matthew W. Bonanno)**

47. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 above as if fully set forth herein.

48. Under Massachusetts law, every contract carries with it an implied covenant of good faith and fair dealing. The Occupancy Agreement therefore obligated Defendant Matthew W. Bonanno ("Bonanno"), as the named tenant, to perform his obligations in good faith, to act consistently with the reasonable expectations of the parties, and to refrain from conduct that would destroy or injure Owner's right to receive the full benefit of the Occupancy Agreement, including the protection afforded by the safety devices Owner had installed at the Premises.

49. Owner fully performed all of its obligations under the Occupancy Agreement, including delivering the Premises in good condition and installing and maintaining functional safety devices, including the Water Sensor, adjacent to the third-floor bathroom toilet, for the express purpose of detecting and alarming upon water overflow or leakage.

50. Bonanno breached the implied covenant of good faith and fair dealing by engaging in conduct that deliberately impaired Owner's ability to receive the full benefit of the Occupancy Agreement, including without limitation: (a) removing the Water Sensor that Owner had installed adjacent to the third-floor bathroom toilet, which was specifically designed to detect and alarm upon any water overflow or leakage and thereby prevent or limit property damage to the Premises; (b) failing to ensure that the third-floor toilet was properly cleared and in good working order, and that no plumbing fixture in the third-floor bathroom was left in an overflowing, running, or unattended condition, following the minor child's use of the third-floor bathroom; (c) departing the Premises at approximately 2:00 p.m. on August 21, 2025, with knowledge or reason to know that the toilet may not have been properly cleared, and without inspecting or confirming the condition of the third-floor bathroom prior to departure; and (d) thereby exposing the Premises to the precise harm that Owner had specifically designed and implemented the Water Sensor to detect, prevent, and mitigate.

51. Bonanno's removal of the Water Sensor constituted an affirmative act of bad faith that went beyond mere failure to perform his contractual obligations. By actively removing a safety device that Owner had installed as a specific protection against the type of water damage that resulted, Bonanno destroyed one of the material benefits for which Owner had contracted, and did so in a manner that was deliberately inconsistent with the reasonable expectations of the contracting parties and fundamentally incompatible with the purpose of the Occupancy Agreement.

52. As a direct and proximate result of Bonanno's breach of the implied covenant of good faith and fair dealing, Owner has suffered damages in an amount to be proven at trial,

including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, and other consequential damages.

**COUNT III**
**NEGLIGENCE**
**(Against All Defendants)**

53. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52 above as if fully set forth herein.

54. At all times relevant hereto, each of the Defendants owed Owner a duty of reasonable care in the use and occupancy of the Premises, including the duty to use the Premises in a reasonable manner, to prevent foreseeable damage to the Premises, and to refrain from taking actions that would foreseeably cause damage thereto.

55. Bonanno breached his duty of care by, among other acts and omissions: (a) removing the Water Sensor installed adjacent to the third-floor bathroom toilet, thereby impairing the sole early warning mechanism available at the Premises to detect water overflow; (b) failing to ensure that the third-floor toilet was in proper working order and that no plumbing fixture in the third-floor bathroom was left running, overflowing, or unattended after his minor child's use of the third-floor bathroom; (c) failing to inspect or verify the condition of the third-floor bathroom, including the toilet, bathtub, and other plumbing fixtures therein, prior to the family's departure; and (d) failing to take reasonable precautions to prevent or mitigate foreseeable water damage to the Premises.

56. Mrs. Bonanno breached her duty of care by, among other acts and omissions: (a) failing to supervise the minor child in her charge during his use of the third-floor bathroom; (b) failing to ensure that the third-floor toilet was in proper working order after the child's use thereof; (c) remaining at the Premises for approximately one hour following Bonanno's departure at approximately 2:00 p.m. without inspecting or verifying the condition of the third-floor bathroom

or its plumbing fixtures, despite having actual knowledge that the minor child had used the third-floor toilet earlier that morning and that the toilet had only "appeared" to have flushed; and (d) failing to take reasonable precautions to prevent or mitigate foreseeable water damage to the Premises prior to leaving the Premises.

57. The Nanny breached her duty of care by, among other acts and omissions: (a) failing to adequately supervise the minor child, including during and after the child's use of the third-floor bathroom; (b) failing to timely inspect the condition of the third-floor bathroom and toilet following the child's use thereof; and (c) failing to timely discover and report the water overflow or otherwise take steps to prevent or mitigate the damage to the Premises.

58. As a direct and proximate result of Defendants' negligence, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, and other consequential damages.

## COUNT IV
## NEGLIGENT SUPERVISION
## (Against All Defendants)

59. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58 above as if fully set forth herein.

60. At all times relevant hereto, Bonanno, Mrs. Bonanno, and the Nanny each had a duty to exercise reasonable care in the supervision and control of the minor child in their charge.

61. Bonanno and Mrs. Bonanno, as the parents and/or guardians of the minor child, had a nondelegable duty to supervise and control the child's conduct in a manner designed to prevent foreseeable harm or damage to third parties and their property.

62. The Nanny, as the childcare provider retained by the Bonannos and present at the Premises during the time the child occupied the Premises and used the third-floor bathroom, had an independent duty to supervise and control the minor child in her care.

63. Defendants breached their respective duties to supervise and control the minor child by failing to ensure the child properly used and left in proper working order the toilet and other plumbing fixtures in the third-floor bathroom following his use thereof; by failing to inspect or verify the condition of the third-floor bathroom and its plumbing fixtures following the child's use thereof; and by failing to take reasonable steps to prevent or mitigate the foreseeable risk of water overflow or flooding from the toilet, bathtub, or other plumbing fixtures in the third-floor bathroom resulting from the child's unsupervised or inadequately supervised use thereof.

64. As a direct and proximate result of Defendants' negligent supervision of the minor child, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, and other consequential damages.

**COUNT V**
**VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**
**(Against Defendants Matthew W. Bonanno and Emily J. Bonanno)**

65. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 64 above as if fully set forth herein.

66. At all times relevant hereto, defendant Jane Doe (the "Nanny") was, upon information and belief, employed by, retained by, and/or acting as the household employee, servant, agent, or person under the direction and control of defendants Matthew W. Bonanno ("Bonanno") and Emily J. Bonanno ("Mrs. Bonanno") in connection with the care and supervision of their minor child and the occupancy of the Premises.

67. At all times relevant hereto, the Nanny was acting within the scope of her employment, agency, and/or duties for Bonanno and Mrs. Bonanno, including without limitation supervising the minor child, remaining at the Premises while Bonanno and Mrs. Bonanno were away, observing conditions within the Premises, responding to household issues, and taking such steps as were reasonably necessary to report, prevent, mitigate, or control damage to the Premises.

68. As alleged herein, the Nanny was negligent in one or more of the following respects, including but not limited to:

(a) failing to adequately supervise the minor child in and around the third-floor bathroom;

(b) failing to inspect or verify the condition of the third-floor bathroom and its plumbing fixtures following the child's use thereof;

(c) failing to timely discover and report the overflow condition;

(d) failing to take reasonable measures to prevent, stop, or mitigate the water intrusion and resulting damage; and/or

(e) otherwise failing to exercise reasonable care in connection with the use and occupancy of the Premises.

69. The acts and omissions of the Nanny, as alleged herein, occurred while she was acting within the scope of her employment, agency, and/or service to Bonanno and Mrs. Bonanno.

70. Accordingly, Bonanno and Mrs. Bonanno are vicariously liable, under the doctrine of respondeat superior and related principles of agency, for the negligent acts and omissions of the Nanny.

71. As a direct and proximate result of the Nanny's negligence, and the vicarious liability of Bonanno and Mrs. Bonanno therefor, Plaintiff has suffered damages in an amount to

be proven at trial, including without limitation uninsured property damage to the Premises, remediation and repair costs, loss of use, lost rental income, and other consequential damages.

**COUNT VI**
**WASTE**
**(Against Defendant Matthew W. Bonanno)**

72. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 71 above as if fully set forth herein.

73. As tenants in possession of the Premises pursuant to the Occupancy Agreement, defendant Bonanno had a duty to refrain from committing waste upon the Premises.

74. By removing the Water Sensor, permitting or causing the plugging of the third-floor toilet and/or the overflow or uncontrolled discharge of water from a plumbing fixture in the third-floor bathroom without ensuring the bathroom and its fixtures were left in proper, safe, and functioning condition, Defendant committed waste upon the Premises.

75. The Defendant's conduct, including the removal of a safety device (the Water Sensor) designed to provide early warning of water overflow and to prevent or limit damage to the Premises, constitutes destructive misuse of and damage to the Premises.

76. As a direct and proximate result of Defendant's waste, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, and other consequential damages.

**COUNT VII**
**CONVERSION**
**(Against Matthew W. Bonanno)**

77. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 76 above as if fully set forth herein.

78. At all times prior to and during the Bonannos' occupancy of the Premises, the Water Sensor was the personal property of Owner, lawfully purchased, installed, and maintained by

Owner adjacent to the third-floor bathroom toilet at the Premises for the purpose of detecting water overflow or leakage from the toilet, bathtub, or other plumbing fixtures in the bathroom, and providing an early warning alarm.

79. As alleged herein, Bonanno intentionally removed the Water Sensor from its installed location at the Premises during his occupancy thereof. In so doing, Bonanno intentionally exercised dominion and control over Owner's personal property in a manner that was inconsistent with, and in derogation of, Owner's rights as the true owner of the Water Sensor. Bonanno had no right, license, or authority under the Occupancy Agreement or otherwise to remove, disable, or otherwise interfere with the Water Sensor or any other safety device installed by Owner at the Premises.

80. Bonanno's removal of the Water Sensor deprived Owner of the use, benefit, and protection afforded by its personal property, and directly and substantially contributed to the severity of the Loss by eliminating the sole early warning mechanism available at the Premises to detect and alarm upon water overflow from the toilet, bathtub, or other plumbing fixtures in the third-floor bathroom.

81. As a direct and proximate result of Bonanno's conversion of the Water Sensor, Owner has suffered damages, including without limitation the value of the Water Sensor and the consequential damages flowing from the Loss that the Water Sensor was specifically designed to prevent or limit, in an amount to be proven at trial.

## COUNT VIII
## TRESPASS TO CHATTELS
## (Against Matthew W. Bonanno)

82. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 above as if fully set forth herein.

83. This Count is pleaded in the alternative to Count VII (Conversion) and without prejudice to the allegations and claims set forth therein. At all times relevant hereto, Owner had a lawful possessory interest in the Water Sensor, which was Owner's personal property installed at the Premises, and Owner was entitled to the uninterrupted use and benefit of the Water Sensor as a functioning safety device during the term of the Occupancy Agreement.

84. Bonanno intentionally interfered with Owner's possessory interest in the Water Sensor by removing it from its installed location adjacent to the third-floor bathroom toilet during his occupancy of the Premises. Bonanno's intentional act of removing the Water Sensor constituted an unlawful interference with Owner's chattel that directly and substantially harmed Owner, including by disabling the sole early warning mechanism available at the Premises to detect and alarm upon water overflow from the toilet, bathtub, or other plumbing fixtures in the third-floor bathroom.

85. As a direct and proximate result of Bonanno's trespass to Owner's chattels, Owner has suffered damages, including without limitation the loss of use and benefit of the Water Sensor and the consequential damages arising from the Loss that the Water Sensor was specifically designed to prevent or limit, in an amount to be proven at trial.

**<u>COUNT IX</u>**
**UNJUST ENRICHMENT**
**(Against All Bonanno Defendants)**

86. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 85 above as if fully set forth herein.

87. This Count is pleaded in the alternative to Counts I and II, and without prejudice to the allegations and claims set forth therein. All Bonanno Defendants received a substantial and measurable benefit from Owner in the form of the exclusive occupancy and use of the Premises — a premium vacation rental property on Nantucket — for the period commencing August 16,

2025 and concluding August 30, 2025, at a contracted rental value of $45,000.00 plus fees and taxes totaling $54,848.77. The Bonanno Defendants were at all times aware of the benefit being conferred upon them by Owner. To the extent that Defendant Matthew W. Bonanno is determined not to be liable under the express terms of the Occupancy Agreement, or that any contract remedy is otherwise unavailable or inadequate, Bonanno is alternatively liable in unjust enrichment for the value of the benefit he received.

88. The Bonanno Defendants accepted, occupied, and enjoyed the full benefit of their occupancy of the Premises throughout the rental period while simultaneously causing or permitting the Loss, which resulted in catastrophic water damage to all three floors of the Premises, rendered the Premises uninhabitable, and caused Owner to sustain property damages totaling in excess of $198,947.66, including uninsured remediation and repair costs of not less than $105,947.66 and confirmed lost rental income of not less than $38,500.00.

89. It would be unjust and inequitable for the Bonanno Defendants to retain the full benefit of their occupancy of the Premises without compensating Owner for the harm their acts and omissions caused during that same occupancy. This is particularly so with respect to defendants Emily J. Bonanno and Jane Doe, who, to the extent they are not bound by the express terms of the Occupancy Agreement, nonetheless received and enjoyed the direct benefit of occupying the Premises at Owner's expense while their negligent acts and omissions, and those of the minor child in their care, directly caused or contributed to the Loss.

90. As a result of the Bonanno Defendants' unjust enrichment at Owner's expense, Owner is entitled to restitution and/or disgorgement in an amount to be proven at trial, including without limitation damages equal to the value of the benefit conferred upon the Bonanno

Defendants and/or the full measure of the harm caused to Owner as a consequence of their occupancy of the Premises.

**COUNT X**
**RECKLESS CONDUCT**
**(Against Defendants Matthew W. Bonanno and Emily J. Bonanno)**

91. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 90 above as if fully set forth herein.

92. At all times relevant hereto, defendants Matthew W. Bonanno and Emily J. Bonanno each owed Owner a duty of reasonable care in the use and occupancy of the Premises. Gross negligence or recklessness, as distinct from ordinary negligence, consists of conduct that evinces a reckless disregard of the rights and safety of others — that is, an intentional act of an unreasonable character performed in disregard of a known or obvious risk so great as to make it highly probable that harm would follow. The conduct of each of the Bonannos, as alleged herein, rises to this heightened standard.

93. Matthew W. Bonanno acted with gross negligence and in reckless disregard of Owner's property rights by, among other acts and omissions: (a) intentionally removing the Water Sensor from its installed position adjacent to the third-floor bathroom toilet — a device whose sole purpose was to detect and alarm upon water overflow — and repositioning it atop a windowsill where it could not perform its protective function, thereby deliberately disabling the only early warning mechanism available to detect a water overflow event at the Premises; (b) departing the Premises at approximately 2:00 p.m. on August 21, 2025, with actual knowledge that his minor child had used the third-floor toilet at approximately 9:00 a.m. and that the toilet had only "appeared" to have flushed — that is, with actual knowledge of a known and obvious risk of overflow — without inspecting or confirming the condition of the third-floor bathroom or its plumbing fixtures before leaving; and (c) leaving the Premises in the care of the Nanny without

disclosing to her the uncertainty as to the condition of the third-floor toilet or the fact that the Water Sensor had been removed from its installed position, thereby depriving her of the information necessary to discover and respond to an overflow before catastrophic damage occurred. Each of these acts was intentional, deliberate, and undertaken in conscious disregard of the known and obvious risk of substantial water damage to all three floors of the Premises.

94. Emily J. Bonanno acted with gross negligence and in reckless disregard of Owner's property rights independently and in addition to the reckless conduct of Matthew W. Bonanno alleged above. Mrs. Bonanno was present at the Premises throughout the morning of August 21, 2025, shared responsibility with Mr. Bonanno for the supervision of the minor child, and had actual knowledge of the same facts known to Mr. Bonanno: that the child had used the third-floor toilet at approximately 9:00 a.m., that the toilet had only "appeared" to have flushed, and that the Premises had been occupied for hours thereafter without any adult confirming that the third-floor bathroom and its plumbing fixtures were in proper working order. Following Mr. Bonanno's departure at approximately 2:00 p.m., Mrs. Bonanno remained the only adult member of the Bonanno family at the Premises for approximately one hour before she too departed at approximately 3:00 p.m. — leaving the Nanny as the sole remaining adult at the Premises. During that hour, Mrs. Bonanno took no steps to inspect or verify the condition of the third-floor bathroom or its plumbing fixtures, did not restore the Water Sensor to its installed position, and did not inform the Nanny of the uncertainty as to the condition of the third-floor toilet or of the absence of the Water Sensor from its installed position. Mrs. Bonanno's decision to depart the Premises under these circumstances — with actual knowledge of an unresolved and obvious risk of water overflow, without taking any corrective action and without conveying any warning to the person she was leaving in charge — constituted conscious and reckless indifference to the foreseeable

consequences for Owner's property, and was a direct and proximate contributing cause of the severity of the Loss.

95. The conduct of each of the Bonannos, as alleged in this Count, was not the product of inadvertence, mistake, or simple failure of care. It reflects a pattern of deliberate action — removing a safety device, departing with knowledge of an unresolved risk, and failing to inform those remaining at the Premises of either fact — that, viewed in combination, demonstrates a conscious and reckless indifference to the foreseeable consequences for Owner's property. The severity of the resulting Loss, which encompassed catastrophic flooding of all three floors of the Premises, damage in excess of $215,000.00, and loss of rental use through April 2026, was the direct and foreseeable result of the Bonannos' reckless disregard of Owner's rights.

96. As a direct and proximate result of the Bonannos' gross negligence and reckless disregard of Owner's rights, Owner has suffered damages in an amount to be proven at trial, including without limitation the uninsured property damage to the Premises, lost rental income, remediation and repair costs, expert and investigation costs, and other consequential damages. Owner further seeks all damages available at law for reckless conduct, including enhanced compensatory damages.

**COUNT XI**
**DECLARATORY JUDGMENT — INSURANCE COVERAGE**
**(Against Defendants Matthew W. Bonanno, Emily J. Bonanno, and The Cincinnati Insurance Company)**

97. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 96 above as if fully set forth herein.

98. The Cincinnati Insurance Company issued Policy No. 05C011064266 (the "Cincinnati Policy") to Matthew and Emily Bonanno as named insureds, which policy provides

personal liability coverage of $1,000,000 per occurrence for property damage, and was in full force and effect on August 21, 2025, the date of the Loss.

99. The Loss — consisting of water damage to the Premises arising from the overflow or uncontrolled discharge of one or more plumbing fixtures in the third-floor bathroom during the Bonannos' occupancy — constitutes a covered 'occurrence' within the meaning of the Cincinnati Policy, and the damages sustained by Owner are the direct result of the Bonannos' acts and omissions during their occupancy of the Premises.

100. By letter dated September 18, 2025, Owner's counsel formally notified Cincinnati of the Loss and of Owner's claim against the Bonannos, and provided Cincinnati with the factual basis for the claim, including: (a) Bonanno's own admission that his minor child used the third-floor toilet at approximately 9:00 a.m. on August 21, 2025, and that the toilet only "appeared" to have flushed; (b) the findings of licensed plumbers retained by Owner, who inspected the Premises following the Loss and found no evidence of any burst pipe, pre-existing leak, mechanical failure, or plumbing defect as a contributing cause of the overflow; (c) Bonanno's removal of the water leak detection sensor installed by Owner adjacent to the third-floor toilet; and (d) the Insurer's preliminary loss adjustment establishing the Replacement Cost Value of the covered structural damage at $96,384.16, exclusive of remediation costs and lost rental income. Owner's counsel demanded that Cincinnati disclose all applicable coverage and preserve all evidence, and expressly advised Cincinnati that Owner was prepared to initiate a declaratory judgment action to establish coverage for the Loss.

101. On October 23, 2025 — five weeks after Owner's counsel's notice letter — Cincinnati, through its Senior Claims Specialist, acknowledged the claim (Claim No. 4583781) but declined to accept liability and did not include any settlement offer, did not disclose the result

of any investigation it had conducted, and did not provide any written coverage analysis or reservation of rights. Instead, Cincinnati's sole substantive response, contrary to the factual record, was that the Loss "appears to be a plumbing issue" and that there is "nothing to support that our insured caused this issue by way of negligence." Cincinnati's characterization was made with full knowledge of: (a) Bonanno's own admissions regarding the cause of the Loss; (b) Owner's licensed plumbers' findings conclusively ruling out any pre-existing plumbing defect; and (c) Bonanno's affirmative act in removing the Water Sensor. Cincinnati offered no factual or investigative basis for its characterization and cited no specific evidence to support the suggestion of a pre-existing plumbing defect.

102. In a subsequent communication, Cincinnati's claims representative conditioned further advancement of the claim on Owner's production of a plumber's report, while simultaneously asserting that the Bonannos' insured "was present when the plumber repaired the toilet" — suggesting that post-incident repair work (replacement of the gasket, wax ring, and valve, performed as remediation of the overflow damage) constituted evidence of a pre-existing mechanical defect. This characterization inverts the factual record: the plumber's repair work was performed as a direct result of the overflow, not as evidence of any pre-existing condition, and Cincinnati's attempt to reframe it as such lacks any evidentiary foundation and is directly contradicted by the findings of Owner's licensed plumbers.

103. The Cincinnati Policy affords personal liability coverage of $1,000,000 per occurrence for property damage — an amount sufficient to fully satisfy the totality of Owner's documented losses, which total in excess of $250,000.00, representing a fraction of the available coverage. On the basis of the record available to Cincinnati from and after September 18, 2025 — including Bonanno's own admissions, the absence of any evidence of a pre-existing plumbing

defect, and the Bonannos' affirmative act in removing the Water Sensor — the liability of the Bonannos for the Loss, and Cincinnati's corresponding obligation to indemnify, was and remains reasonably clear. Notwithstanding the foregoing, Cincinnati has declined to make any settlement offer, has failed to effectuate a prompt, fair, and equitable resolution of Owner's claim, and has persisted in a characterization of the Loss that is contradicted by the entirety of the factual record.

104. An actual, justiciable controversy therefore exists between Owner, the Bonannos, and Cincinnati regarding whether the Loss is a covered occurrence and whether Cincinnati is obligated to indemnify the Bonannos for the damages awarded herein.

105. Pursuant to G.L. c. 231A, Owner is entitled to a declaration that: (a) the Loss constitutes a covered occurrence under the Cincinnati Policy giving rise to Cincinnati's duty to defend and indemnify the Bonannos; (b) the Bonannos' negligent acts and omissions, including without limitation the removal of the Water Sensor, the failure to supervise the minor child's use of the third-floor bathroom, and the failure to inspect or verify the condition of the third-floor bathroom and its plumbing fixtures before departing the Premises, are covered under the personal liability provisions of the Cincinnati Policy; and (c) Cincinnati is obligated to indemnify Matthew and Emily Bonanno for all compensatory damages, interest, costs, and other amounts awarded to Owner in this action, up to and including the full applicable policy limits.

106. The declaration sought herein will terminate the controversy between Owner, the Bonannos, and Cincinnati regarding coverage for the Loss and will avoid further multiplicity of litigation.

Date Filed 6/23/2026 3:09 PM
Superior Court - Nantucket
Docket Number 2675CV00024

## VERIFICATION

I, Eric M. Stroud, Manager of 1942 Realty, LLC, plaintiff herein, state that I am an individual over the age of eighteen and authorized by Plaintiff to make this Verification, that I have read the foregoing and am informed and believe that the statements contained in this Verified Complaint are true and correct to the best of my knowledge and belief, except those statements that I make on information and belief, which upon information and belief I believe to be true and accurate, that no material facts have been omitted therefrom, and so state under the pains and penalties of perjury:

Eric M. Stroud, Manager
1942 Realty, LLC

Dated: June 22, 2026

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 1942 Realty, LLC demands judgment against defendants Matthew W. Bonanno, Emily J. Bonanno, Jane Doe (the Nanny), and The Cincinnati Insurance Company, as follows:

1. A judgment declaring that the Loss constitutes a covered occurrence under Cincinnati Policy No. 05C011064266; that the Bonannos' negligent acts and omissions are covered under the personal liability provisions thereof; and that The Cincinnati Insurance Company is obligated to indemnify the Bonannos for all damages awarded to Owner in this action up to the applicable policy limits;

2. Compensatory damages in an amount to be proved at trial, including without limitation for uninsured property damage to the Premises, remediation and repair costs, loss of use, lost rental income, and other consequential damages proximately caused by the Defendants' acts and omissions, including damages caused by the negligence of Jane Doe for which Bonanno and Ms. Bonanno are vicariously liable, including expert, investigation, professional, and notice costs; and enhanced compensatory damages against Defendants Matthew W. Bonanno and Emily J. Bonanno arising from their gross negligence and reckless disregard of Owner's property rights as alleged in Count X;

3. Costs of suit, pre-judgment interest, including under G.L. c. 231, § 6B, and post-judgment interest as provided by law;

4. Attorneys' fees and costs as permitted by contract, statute, or law; AND

5. Such other and further relief as the Court deems just and proper.

## JURY CLAIM

Plaintiff 1942 Realty, LLC hereby makes claim for a trial by jury on all claims so triable.

**PLAINTIFF,**

1942 REALTY, LLC

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite #11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: June 22, 2026

# EXHIBIT A

Date Filed 6/23/2026 3:22 PM
Superior Court - Nantucket
Docket Number 2675CV00024

GREAT POINT
PROPERTIES

This Indenture, made October 8, 2024

252410-1239

1. PARTIES
Witnesses that LANDLORD: 1942 Realty LLC

2. TENANT
Does hereby lease, demise, and let unto TENANT: Matthew Bonanno
whose address is 155 East 72nd Street APT 9A, New York, NY 10021

3. TERM
To Arrive: Aug 16, 2025 , Saturday — Check-in no earlier than 3:00 PM
To Depart: Aug 30, 2025 , Saturday — Check-out no later than 10:00 AM

4. PREMISES

12 Galen Avenue



GREAT POINT PROPERTIES AGENT:

Jim Garrels
jim@greatpointproperties.com



5. OCCUPANCY — Maximum occupancy not to exceed 10

6A. RENT

| | |
|---|---|
| Rent Due: | $45,000.00 |
| Admin. Fee: | $75.00 |
| Security Deposit: | $4,500.00 |
| **Total Amount Due Before Taxes:** | **$49,575.00** |

6B. RENTAL TAXES

| | |
|---|---|
| MA Rental Tax - 5.7% | $2,569.27 |
| Nantucket Rental Tax - 6% | $2,704.50 |
| **Total Rental Taxes Due:** | **$5,273.77** |

7. PAYMENT SCHEDULE
In Accordance with this payment schedule:

| | | |
|---|---|---|
| 1st Nonrefundable Rent and Service Fee Payment: | $22,575.00 | Due 10/10/2024 |
| 2nd Nonrefundable Rent Payment: | $22,500.00 | Due 07/02/2025 |
| Security Deposit: | $4,500.00 | Due 07/02/2025 |
| Rental Tax: | $5,273.77 | Due 07/02/2025 |
| **Total Amount Due (Including Taxes):** | **$54,848.77** | |

The Tenant may not take occupancy of the Premises unless the Total Amount Due has been received and cleared by Great Point Properties by the Arrival Date.

8. SECURITY DEPOSIT
The TENANT agrees to pay $4,500.00 as a security/utility deposit to be held by Great Point Properties, Inc. the agent for this lease agreement. This deposit is not to be considered prepaid rent, nor shall damages or claims (if any) be limited to the amount of this deposit. This deposit will be also used to pay for long distance telephone calls, on-demand cable TV charges, and cleaning in excess of **12 hours**. The deposit will be returned with an itemized list of damages, repairs or other lawful deductions within 60 days of vacancy to TENANT. LANDLORD must submit written itemized copies of all bills, repairs, damage claims, etc. to Great Point Properties, Inc. within 45 days of TENANT'S vacancy in order to process and return TENANT'S security deposit within 60 days of vacancy. If LANDLORD shall fail to comply with these terms, the security deposit will be returned in full to the TENANT on the 60th day and the LANDLORD will be deemed to have waived their rights relative to reimbursement of any and all bills and expenses resulting from the tenancy. The LANDLORD will then become fully responsible for the collection of bills, and Great Point Properties, Inc. and its affiliates will be indemnified, defended and held harmless for any and all monies owed on said bills.

9. CONDITIONS OF PREMISES
The parties to this lease agree that if TENANT does not inspect Premises prior to executing this lease, TENANT will accept the property as is and will not be entitled to any refunds or return of any monies hereunder. LANDLORD shall prepare the Premises for occupancy. If TENANT is not satisfied with the cleanliness of the Premises upon arrival, TENANT will so notify Great Point Properties, Inc. in writing or via email within 24 hours to allow LANDLORD to promptly arrange to address these issues, which TENANT agrees to accept provided the LANDLORD resolves the issues in an expeditious manner. The LANDLORD hereby notifies the TENANT that Sherburne Management is the caretaker, and is responsible for the care and maintenance of the Premises and should be notified immediately of any damage to the Premises. The LANDLORD is responsible for arranging for turnover cleaning. LANDLORD shall provide clear recycling/trash bags, paper towels, toilet paper, dishwashing products, basic cleaning products and bath/hand soap.

10. TENANT'S RESPONSIBILITY
TENANT shall maintain the same in good order for the full term of this lease, and shall vacate the Premises peaceably and quietly, leaving it in the same orderly condition in which occupancy was taken. This lease includes **12 hours** of cleaning by professional cleaners. Any extra cleaning time shall be the sole responsibility of the TENANT and will be deducted from the security deposit. TENANT agrees to make the best effort to follow the instructions on the Tenant Check-in Letter to avoid excess cleaning cost. The tenant is further responsible for all damages or breakage and /or loss to the Premises except normal wear and tear. TENANT shall recycle trash by Nantucket rules and regulations, and cooperate with trash pickup service to be provided by Landlord. If the TENANT does not follow those rules and regulations and there are extra charges from the LANDLORD'S trash hauler, those charges will be paid by the TENANT. There is absolutely NO SMOKING on the Premises. Tenant shall not open or enter any locked "owner closet" or other excluded areas. TENANT will further have no claim or recourse against the rental agent or Great Point Properties, Inc.

11. PETS
Unless otherwise stated in this lease agreement, NO PETS of any kind shall be kept on the Premises. If any pets are found on the Premises, TENANT shall immediately FORFEIT the entire SECURITY DEPOSIT and this will constitute a violation of the terms of this lease and result in an immediate eviction. The SECURITY DEPOSIT shall be the minimum amount paid to the LANDLORD, but such forfeiture shall not limit the TENANT'S liability for amounts otherwise due for damage or costs otherwise due hereunder. Service animals are not pets, but proper documentation must be provided in advance of execution of the lease. Forfeiture under this clause releases the deposit from escrow. The TENANT shall waive any claims against Great Point Properties Inc. for delivering such funds.

12. ACCESS
TENANT agrees to allow the LANDLORD or his agent, with prior notice, to enter and view the Premises; to inspect the Premises; to make repairs and improvements to the Premises, and to protect the Premises if it appears that said Premises have been abandoned by the TENANT.
TENANT also agrees to allow the LANDLORD or his agents to show the Premises to a prospective tenant or purchaser given twenty-four hours notice. As of this date, the Premise is not currently listed for sale. The LANDLORD reserves the right to list the property for sale after the execution of this lease.

13. SUBLET
The TENANT shall not sublet the leased Premises, nor any part thereof.

14. PERSONAL PROPERTY
All personal property of the TENANT brought onto the leased Premises shall be at the sole risk of the TENANT. If the TENANT leaves personal property on the Premises, the TENANT shall be responsible for paying for the return of that personal property. LANDLORD is not responsible for any personal property left at the Premises.

15. CASUALTY
The LANDLORD and TENANT agree that should the Premises be destroyed by fire or any other casualty and become unfit for human habitation, for reasons not due to the TENANT, this lease shall become null and void with a refund to TENANT for unused term.

16. COMMISSION
LANDLORD agrees to pay a fee of $6,750.00 to Great Point Properties upon receipt from the TENANT of the first NONREFUNDABLE rental payment for this lease and to pay the stated commission percentage on any subsequent rentals of the Premises with the TENANT. In the event of a sale of the Premises to the TENANT by the LANDLORD within three years of the departure date of this lease, the LANDLORD shall pay a BROKER's fee of five percent to Great Point Properties, Inc. unless the LANDLORD has executed a listing agreement with a real estate company. Such executed listing agreement shall determine the commission to be paid to Great Point Properties if the TENANT purchases the premises. This clause shall survive the periods of this lease.

17. CANCELLATION
TENANT is responsible for full payment of the rental period upon signing of the lease. If any payment due hereunder is not received by Great Point Properties within one week of the due date, this lease, with written notice to the TENANT, may be terminated at the LANDLORD'S sole discretion. In the event that the TENANT has made all rent payments and wishes to cancel the lease, and the LANDLORD is able to fully re-rent the lease, the TENANT shall receive a refund of 85% of the rent amount paid. Great Point Properties shall retain the commissions paid on all leases. There is no obligation of the LANDLORD or Great Point Properties Inc. to re-rent the property. Returned check fee: $50.00.

18. STATE AND LOCAL SHORT TERM RENTAL TAX

With the execution of this lease, Tenant and Landlord acknowledge that the Commonwealth of Massachusetts has promulgated a short term rental tax law, effective January 1, 2019, for any lease of less than 32 days. Tenant and Landlord also acknowledge that the Town of Nantucket can approve additional taxes that may impact this lease. Tenant and Landlord agree to abide by all provisions of such law and to cooperate with one another as necessary and/or convenient to comply with same. As required by law, Great Point Properties shall collect the rental taxes and remit the taxes to the Commonwealth of Massachusetts and the Town of Nantucket on behalf of the Landlord as required by law.

19. NANTUCKET ZONING REGULATIONS

The terms of this lease agreement are subject to legal adherence to Nantucket zoning regulations. In the event that the Town of Nantucket enacts zoning and regulatory changes that prohibit the Lessor from offering a short-term rental of 32 days or less, then the lease shall be canceled, and full repayment will be made to the Lessee.

20. GREAT POINT PROPERTIES

The LANDLORD and the TENANT agree to indemnify and hold Great Point Properties Inc. harmless for any and all claims regarding the TENANT'S lease of the Premises from the LANDLORD.

**This lease is not legally binding until fully executed by both parties and funds have been received by Great Point Properties.**

| | | | |
|---|---|---|---|
| [signature] | 10/08/2024 | 1942 Realty, LLC<br>By: [signature]<br>Eric M. Stroud, Manager | 10/11/24 |
| TENANT | DATE | LANDLORD | DATE |

Date Filed 6/23/2026 3:09 PM
Superior Court - Nantucket
Docket Number 2675CV00024

Docusign Envelope ID: 6198E955-76B4-4553-B64D-B8405492A3E8

GREAT POINT
PROPERTIES

12 GALEN AVENUE NANTUCKET, MA 02554
WIDOW'S WALK/ROOF WALK WAIVER

I, Matthew Bonanno, hereafter "TENANT", under the lease dated 10/8/2024 agree to rent the property located at 12 Galen Avenue, Nantucket, MA 02554 from 1942 Realty LLC, "LANDLORD", for the period from 08/16/2025 to 8/30/2025 in consideration of the mutual obligations contained in said Lease and a rider to the Lease to which this TENANT's Acknowledgment and Hold Harmless Agreement is attached, hereby.

(1) Acknowledge that the PREMISES is improved with a roof walk or widow's walk and the presence and use of the roof walk or widow's walk have inherent risks to me, my family, my guests and invitees. I acknowledge that personal injury and death from accessing and falling from the widow walk or roof walk can occur and agree to take all necessary preventive measures to avoid such personal injury.
(2) Assume the risks of the presence and use of the roof walk or widow walk for myself, my family, my guests and invitees.
(3) Agree to use reasonable care to ensure my safety and the safety of others while on or accessing the roof walk or widow's walk.
(4) Report any unsafe condition to the LANDLORD or their agents.
(5) Release LANDLORD (and their agents, employees and assigns) from any and all liability, damages, claims, and/ or actions arising out of any injuries suffered on the PREMISES and in particular from any and all liability associated with the use or access of the widow's walk or roof walk.
(6) Secure the roof walk when not in use and agree to keep closed the hatch to the widow's walk or roof walk when not in use.
(7) Indemnify and hold harmless LANDLORD (and their agents, employees, and assigns) from any and all liability, damages, claims and/ or actions associated with the occupancy of the PREMISES and in particular with the use of the roof walk or widow's walk.

IN WITNESS WHEREOF, the parties have hereunto interchangeably set their hands and seals on the day and year first above written.

1942 Realty, LLC

By: [signature]
Eric M. Stroud, Manager

DocuSigned by:
MATTHEW BONANNO 10/8/2024
Tenant Date

Landlord Date 10/11/24

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

1942 REALTY, LLC,
Plaintiff,

v.

MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,
Defendants.

**PLAINTIFF'S CROSS-MOTION FOR AN ORDER REALIGNING DEFENDANTS MATTHEW W. BONANNO AND EMILY J. BONANNO WITH PLAINTIFF IN OPPOSITION TO CINCINNATI INSURANCE COMPANY'S MOTION TO DISMISS COUNT XI**

**(MEMORANDUM INCORPORATED)**

NOW COMES Plaintiff 1942 Realty, LLC ("Owner"), pursuant to Mass. R. Civ. P. 13(g), 19, and 21, and G.L. c. 231A, §§ 8 and 9, and respectfully moves this Court for an order recognizing that Defendants Matthew W. Bonanno and Emily J. Bonanno (the "Bonanno Defendants") are, on the coverage question presented in Count XI of the Complaint, aligned with Owner in opposition to the motion to dismiss filed by their insurer, The Cincinnati Insurance Company ("Cincinnati"). In support thereof, Owner states as follows:

## I. THE BONANNO DEFENDANTS ARE DIRECTLY AND ADVERSELY AFFECTED BY CINCINNATI'S MOTION AND ARE NOT REPRESENTED BY INDEPENDENT COVERAGE COUNSEL.

Cincinnati's motion seeks dismissal of Count XI — the "sole" count Cincinnati claims is directed to it — but which count expressly names the Bonanno Defendants *alongside* Cincinnati as its named insureds and asks this Court to declare that the water overflow Loss of August 21, 2025 (the "Loss") constitutes a covered "occurrence" under Cincinnati Policy No. 05C011064266

(the "Cincinnati Policy") and that Cincinnati is obligated to indemnify the Bonannos for the damages established in this action. The Cincinnati Policy affords $1,000,000 in personal liability coverage per occurrence — an amount sufficient to satisfy in full the totality of Owner's documented losses of more than $215,000.

The Bonanno Defendants are the named insureds under the Cincinnati Policy. Their live-in nanny, defendant Jane Doe aka "Chloe", is a household member and likely covered under the Policy. Each of these defendants has a direct, concrete, and substantial financial interest in the resolution of the coverage question that Cincinnati's motion seeks to remove from this proceeding. If Cincinnati's motion is allowed, the coverage question will be taken out of this case and will resurface either in a separately-filed declaratory judgment action initiated by Cincinnati or after entry of judgment against the Bonannos — at which point Cincinnati will litigate indemnity in a separate proceeding, with additional time to develop coverage defenses, at substantial additional cost to the parties and the court, and in which the Bonannos will bear the full burden of establishing coverage – including for a judgment that may already have been entered against them personally.

Not unlike Cincinnati's coverage counsel, the attorney Cincinnati retained to defend the underlying liability claims — who informed Owner's counsel that he had been engaged by Cincinnati, had not yet conferred with his clients, and had not determined whether he would represent the nanny defendant, Jane Doe — is not positioned to advise the Bonannos and Jane Doe on their independent coverage interests or to represent them in connection with Count XI. On the coverage question, the interests of the Bonannos and Jane Doe are directly adverse to Cincinnati's: they need the Loss declared a covered occurrence so that any judgment entered against them will be satisfied by Cincinnati rather than from their personal assets.

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

Panel defense counsel selected and compensated by Cincinnati is not positioned to advise the Bonannos and Jane Doe on their independent coverage interests or to determine whether those interests require a different posture from the one Cincinnati's selected counsel would adopt on the liability defense.[1]

That concern is no longer theoretical. On August 14, 2026 — three days after Cincinnati served the within motion, and copying Cincinnati's separate coverage counsel — the attorney Cincinnati selected to defend the Bonannos wrote to Owner's counsel to demand disclosure of Owner's liability insurance and to preserve claims by the Bonannos against Owner arising from the rental and the Loss. A copy of that letter and its transmittal email is appended as **Exhibit A** to Owner's Opposition, served contemporaneously herewith.

The letter is significant less for what it says than for what it omits. Cincinnati's selected defense counsel writes "on behalf of Matthew W. Bonanno and Emily J. Bonanno" — not on behalf of Jane Doe, for whom no counsel has appeared. Defense counsel is actively pursuing indemnity for the Bonannos from a third party's insurer. Defense counsel advances no position whatsoever concerning the Bonanno Defendants' coverage under the Cincinnati Policy, and Cincinnati did not

---

[1] Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 684 (1964) ("Where the insured's interest in controlling tort litigation against him conflicts with the similar interest of the insurer, the insured may have good cause to ask that he be represented by counsel independent of the insurer" and "[a] potential conflict may arise between an insured and insurer when an insurer defends under a reservation of rights. Even if no actual conflict ever materializes, the threat of conflict is so great that a reservation of rights defense is often treated as an actual conflict."); see also Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 275-277 (1970) and Northern Sec. Ins. Co., Inc. v. R.H. Realty Trust, 78 Mass.App.Ct. 691 (2011) ("When an insurer seeks to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do so, the insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs."), quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 406-407 (2003).

serve defense counsel with the motion that seeks to remove that question from this case. On the coverage question that matters most to them, Cincinnati's insureds are represented by no one.

## II. THE BONANNO DEFENDANTS SHOULD BE RECOGNIZED AS ALIGNED WITH OWNER IN OPPOSITION TO CINCINNATI'S MOTION TO DISMISS COUNT XI.

Under G.L. c. 231A, § 9, the declaratory judgment statute is to be "liberally construed." G.L. c. 231A, § 9 ("Its purpose is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered."). The Court thus has broad equitable discretion to structure declaratory judgment proceedings in a manner that ensures all interested parties are heard and that the resolution of the coverage question serves judicial efficiency. Billings v. Commerce Ins. Co., 458 Mass. 194, 199-201 (2010) (duty to defend assessed on allegations of complaint and facts known or readily knowable by insurer); MASS.R.CIV.P. 57 ("the court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar," and that "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.") The Bonannos are already parties to this action; they need no separate joinder. They have standing — independent of Owner — to oppose Cincinnati's motion, because the motion directly and adversely affects their rights under the Cincinnati Policy and their personal financial exposure.

Massachusetts courts structure declaratory judgment proceedings to reflect the actual interests of the parties, not their nominal caption positions. Mass. R. Civ. P. 19(a) recognizes that a person who should join as a plaintiff but refuses to do so may be made a defendant; Rule 21 expressly provides that misjoinder is not grounds for dismissal and that parties may be added or dropped at any stage; and Rule 13(g) permits a defendant to assert a crossclaim against a co-defendant arising from the same transaction, including a claim that the co-party "is or may be

liable" for all or part of the plaintiff's claim. See also City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941) (courts must "look beyond the pleadings and arrange the parties according to their sides in the dispute"). On the coverage question presented in Count XI, the Bonannos' interests are aligned with Owner's: both need the Loss declared a covered occurrence. Cincinnati stands alone in seeking the opposite result and its stated rationale mischaracterizes the law.

This Court should enter an order recognizing the Bonanno Defendants' adverse interest in Cincinnati's motion and inviting them — through independent coverage counsel — to join Owner's opposition or to file a separate opposition of their own, or to advance a cross-claim as against Cincinnati, or both, and with a brief continuance to afford them the opportunity to do so. In the alternative, the Court should DENY Cincinnati's motion for the reasons set forth in Owner's accompanying opposition memorandum, which establishes that no party — Owner or the Bonannos — is served by removal of Count XI from this proceeding at this stage.

## III. DISMISSAL SIMPLY SPAWNS A DUPLICATIVE PROCEEDING.

Cincinnati's motion to dismiss Count XI is entirely counterproductive. Dismissal does not resolve the coverage question — it relocates it. Massachusetts law already contemplates that when an insurer disputes coverage, it should file a declaratory judgment action in Superior Court naming both the insured and the claimant as parties. Espinal v. Liberty Mutual Ins. Co., 47 Mass.App.Ct. 593, 598-599 (1999). If Count XI is dismissed, Cincinnati will file exactly that action — in a forum of its own choosing, on its own timing, where it controls the framing. That is the definitional purpose of wielding Rule 12 as a forum-selection device: dismiss here, refile more favorably. G.L. c. 231A, § 9's command that the statute be liberally construed to "remove . . . uncertainty and insecurity with respect to rights, duties, status and other legal relations" is designed precisely to prevent that result. Denying the motion is not merely equitable — it prevents Cincinnati from using Rule 12 as a vehicle to escape a properly chosen forum and multiply litigation.

## IV. G.L. c. 231A, § 8 AND THE MASSACHUSETTS RULES FAVOR INSURED PARTICIPATION AND AN IN-CASE PROCEDURAL CURE RATHER THAN DISMISSAL.

Cincinnati's motion to dismiss is not only inequitable — it is jurisdictionally self-defeating. Cincinnati ignores Chapter 231A's command that both Owner and the Bonannos be joined in the same proceeding: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." G.L. c. 231A, § 8. This mandate is jurisdictional, not discretionary. The failure to name necessary parties "may be jurisdictional in a declaratory judgment action, thereby precluding the court's consideration of the issue." Service Employees Int'l Union, Local 509 v. Dep't of Mental Health, 469 Mass. 323, 338 (2014); accord, Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 18 (2019). Where necessary parties are absent, "any declaration of rights would be merely academic as to persons not parties to the proceedings." Service Employees, 469 Mass. at 338-339; see also Source One Fin. Corp. v. GEICO Indem. Co., 546 F.Supp.3d 97, 100-101 (D. Mass. 2021) (dismissing coverage declaratory count because named insureds whose interests would be directly affected were not parties; any judgment would have no binding effect on them and they could institute their own subsequent actions).

Crucially, when the SJC in Service Employees concluded that necessary parties were missing from a Chapter 231A proceeding, it did not affirm *dismissal*. Rather, it vacated the judgment of dismissal and remanded for *joinder*. 469 Mass. at 339. Here, the Bonannos are already parties; there is no joinder defect to cure. Any alignment or pleading concern is therefore even more readily resolved through the less disruptive remedies that Rule 21 and Rule 13(g) expressly authorize: adding or dropping parties, or allowing the Bonannos to assert a cross-claim, rather than terminating the controversy entirely.

Cincinnati's own memorandum resolves the § 8 inquiry. Cincinnati states that "only Cincinnati Insurance Company's named insureds, Mr. Bonanno and Mrs. Bonanno, have an interest in Cincinnati Insurance Company's duties to defend and indemnify." MEM. at 7-8. Cincinnati thus concedes that the Bonannos are necessary parties under G.L. c. 231A, § 8 — persons "who have or claim any interest which would be affected by the declaration." The Bonannos are already defendants in this action; they need no separate joinder. The question is solely on which side of the coverage dispute they belong.

Under City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941), courts must look beyond the pleadings and arrange parties according to their actual interests in the dispute. On the coverage question, the Bonannos' interests are aligned with Owner's: both need the Loss declared a covered occurrence. Cincinnati stands alone in seeking the opposite result and mischaracterizes the law to achieve that inequitable result. Here, G.L. c. 231A, § 8 supports full participation and a binding all-parties adjudication; Mass. R. Civ. P. 13(g), 19, and 21 supply the procedural mechanics. The combined effect is that the coverage question should be resolved with all interested parties actively represented in this proceeding — not removed from it before the persons Cincinnati itself identifies as having the only cognizable interest in the outcome have had any opportunity to protect that interest.

The appropriate remedy is not dismissal but a brief continuance. The insureds are already necessary parties under G.L. c. 231A, § 8 — Cincinnati's own memorandum concedes they are the only persons with a cognizable interest in the outcome. Before the Court acts on a motion that may eliminate a coverage determination directly affecting those persons' insurance rights and personal financial exposure, they should have a reasonable opportunity to appear through independent coverage counsel, assess the motion, and determine whether to assert their own

position — including, if they elect to do so, a Rule 13(g) crossclaim against Cincinnati for a declaration of defense and coverage. The remedy is realignment and a brief continuance — not dismissal.

The continuance Owner requests is a practical measure, not an academic gesture. Counsel for the Bonanno Defendants is engaged, is in active communication with both Owner's counsel and Cincinnati's coverage counsel, and can readily receive from Cincinnati its motion and be afforded a reasonable interval within which the Bonanno Defendants may obtain independent coverage advice and determine their own position.

## CONCLUSION

WHEREFORE, Plaintiff 1942 Realty, LLC respectfully requests that this Honorable Court:

1. Enter an order recognizing that Defendants Matthew W. Bonanno and Emily J. Bonanno have a direct and adverse financial interest in the outcome of The Cincinnati Insurance Company's Motion to Dismiss Count XI that is aligned with Owner's opposition thereto;

2. Stay adjudication of Cincinnati's motion to dismiss for forty-five (45) days to afford the Bonanno Defendants and Defendant Jane Doe a reasonable opportunity to retain independent coverage counsel and to either join in Owner's Opposition or file their own opposition to Cincinnati's motion, if they choose to do so; and

3. In the further alternative, deny Cincinnati's motion to dismiss for the reasons set forth in Owner's accompanying memorandum in opposition, and grant such other relief as this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Superior Court Rule 9A(c)(2), Owner respectfully requests a hearing on the within Cross-Motion. Motions to dismiss under Mass. R. Civ. P. 12 are among the categories for

which a hearing will ordinarily be allowed under Rule 9A(c)(3), and the coverage question presented in Count XI is appropriate for oral argument.

Respectfully submitted,

**PLAINTIFF,**

**1942 REALTY, LLC,**

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite 11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: August 21, 2026

## CERTIFICATE OF SERVICE

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I forwarded notice of the foregoing document(s) via electronic service through the Odyssey/Tyler e-service platform, electronic mail, and/or Federal Express or U.S. Mail Delivery thereof, postage prepaid, to the following:

Nora R. Adukonis, Esq.
LITCHFIELD CAVO, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

John R. Garrasi, Esq.
MARTIN, MAGNUSON, MCCARTHY & KENNEY, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

____________________________
Raymond H. Tomlinson, Jr.

Dated: August 21, 2026

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, SS.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 2675CV00024

| | |
|---|---|
| 1942 REALTY, LLC,<br>Plaintiff,<br>v.<br>MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS OF THE CINCINNATI INSURANCE COMPANY**

**INTRODUCTION**

The Cincinnati Insurance Company's motion to dismiss rests on a single, deceptively simple premise: a third-party claimant has no right to seek a declaratory judgment concerning insurance coverage until it first obtains a judgment against the insured. Cincinnati's premise is overstated as a matter of Massachusetts law and, in any event, does not accurately reflect the relief Plaintiff 1942 Realty, LLC ("Owner") herein seeks as against Cincinnati.

Owner has not sued Cincinnati in isolation; it has brought Cincinnati into the same action in which it is simultaneously pursuing liability against Cincinnati's named insureds, the Bonanno Defendants, for the catastrophic water damage they caused to Owner's property at 12 Galen Avenue, Nantucket, on August 21, 2025. The coverage question and the liability question are before the same court, in the same case, at the same time. Contrary to Cincinnati's claims, the declaratory judgment count is not an end-run around anything — it is the most efficient vehicle for resolving a real, present, and adversarial dispute that Cincinnati itself created when it denied that its insureds' conduct constituted a covered occurrence.

Cincinnati served its motion without first initiating the Rule 9C meet-and-confer required for a dispositive motion — a conference in which Owner's counsel could have explained in a brief telephone call the precise pleading choices that Cincinnati's memorandum characterizes as improper "end runs" — while Cincinnati itself appears to be circumventing important procedural[1] and statutory requirements.

Cincinnati's motion was also served before the complaint was served upon the Bonanno Defendants and their household nanny, defendant Jane Doe a/k/a "Chloe". Cincinnati is in effect seeking to remove a coverage count from this proceeding before the underlying liability proceedings have formally begun and before those persons materially and adversely affected thereby have an opportunity to respond.

Massachusetts courts have long recognized the propriety of consolidating coverage and liability questions in a single proceeding precisely to avoid the kind of fragmented, sequential litigation Cincinnati's motion would compel. The motion should be DENIED.

## RELEVANT BACKGROUND

Owner filed a verified complaint on June 22, 2026, asserting ten counts against the Bonanno Defendants and an eleventh count, Count XI, against Cincinnati and the Bonanno Defendants jointly. Counts I through X assert liability against the Bonanno Defendants for breach of contract, negligence, gross negligence/recklessness, waste, conversion, trespass to chattels, unjust enrichment, and related theories. Count XI, the "sole" count Cinicinnati claims is directed to it but which count is explicitly directed to Cincinnati *alongside* its named insureds, seeks a declaration under G.L. c. 231A, § 1 that the water overflow event of August 21, 2025 (the "Loss")

[1] Owner does not press this procedural defect as a ground for denial. However, if Cincinnati files the motion without first satisfying Rule 9C and providing the required certificate, Rule 9C(a) expressly requires denial without prejudice.

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

constitutes a covered "occurrence" under Cincinnati Policy No. 05C011064266 (the "Cincinnati Policy"), and that Cincinnati is obligated to indemnify the Bonannos for the damages established in this action. Owner does not seek a declaration of indemnity in a vacuum — it seeks a declaration as part of an integrated proceeding in which the Bonannos are defendants in the same case and in which Cincinnati has appeared through its own separate counsel.

The factual predicate for Count XI is not hypothetical. Following the Loss, Cincinnati received formal written notice from Owner's counsel, acknowledged the Claim (No. 4583781), disclosed the Cincinnati Policy's personal liability limits of $1,000,000 per occurrence, and promptly asserted — without conducting any independent investigation — that there was "nothing to support that our insured caused this issue by way of negligence" and that the Loss "appears to be a plumbing issue." COMPL. ¶¶ 97-103. Cincinnati's claims adjuster subsequently confirmed in writing that Cincinnati had transmitted a "coverage position letter" to Owner's counsel, which letter Owner has not received, and that its position "has not changed." That adverse claim position — disputing its insureds' responsibility for the Loss on causation grounds, transmitting a coverage position letter, retaining separate litigation counsel, and serving a dispositive motion within days of being served with the complaint and before its own insureds were served or had the opportunity to protect their coverage interests — establishes a concrete, present, and adversarial dispute. That dispute is precisely what G.L. c. 231A is designed to resolve.

On August 14, 2026 — three days after Cincinnati served the within motion — the attorney Cincinnati retained to defend the Bonanno Defendants in the underlying liability action wrote to Owner's counsel, copying Cincinnati's separate litigation counsel. That letter confirms three matters bearing directly on Cincinnati's motion. First, defense counsel writes "on behalf of Matthew W. Bonanno and Emily J. Bonanno" alone; no counsel has appeared, or announced any

intention to appear, for defendant nanny Jane Doe. Second, defense counsel confirms that the Bonannos had not then been served. Third, defense counsel demanded disclosure of Owner's liability insurance and to preserve claims by the Bonannos against Owner arising from the rental and the Loss — that is, he is pursuing coverage for his clients from a third party's carrier — while advancing no position whatsoever as to the Bonannos' own rights under the Cincinnati Policy, which are the very rights Cincinnati's motion would remove from this case. A copy of the August 14, 2026 letter and its transmittal email is appended hereto as **Exhibit A**.

## ARGUMENT

### I. OWNER HAS ESTABLISHED AN ACTUAL CONTROVERSY UNDER G.L. C. 231A.

Massachusetts's declaratory judgment statute, G.L. c. 231A, § 1, grants the Superior Court broad jurisdiction to "make binding declarations of right, duty, status and other legal relations." The statute is to be "liberally construed." G.L. c. 231A, § 9. An "actual controversy" exists when there is a "real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter." Wells Fargo Fin. Massachusetts, Inc. v. Mulvey, 93 Mass.App.Ct. 768, 771 (2018). That standard is met here.

Owner asserts a legal interest in the resolution of the coverage question: it has an outstanding claim for more than $215,000 in uninsured losses against the Bonannos, who hold a policy with Cincinnati providing $1,000,000 in personal liability coverage. Cincinnati has formally denied that the Loss is a covered occurrence, a denial that will determine whether any judgment Owner obtains is collectible. Cincinnati denies Owner's interest. The dispute is present, real, and adversarial.

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

Cincinnati argues that no "real" dispute exists because Owner has no enforceable right against the policy until judgment enters against the Bonannos. But this argument conflates the *duty to indemnify* — which does depend on a judgment — with the coverage question Count XI actually presents: *whether the Loss is a covered occurrence at all.*

Owner does not ask the Court to order Cincinnati to write a check. Owner asks the Court to declare whether the Loss falls within the Cincinnati Policy's coverage grant — an antecedent legal question that Cincinnati has already answered in the negative and that will directly govern whether any judgment Owner obtains against the Bonannos is collectible. That is a present dispute, not a hypothetical one. Moreover, Cincinnati's own conduct establishes the controversy: it engaged separate litigation counsel and served a dispositive motion within days of service. An insurer that does both cannot credibly maintain that no real dispute exists.

### A. THE JOINDER OF THE BONANNOS AS DEFENDANTS DISTINGUISHES EVERY CASE CINCINNATI CITES.

Cincinnati's argument that a tort claimant has no direct enforceable right against a liability insurer before judgment is correct as a general proposition but does not dispose of this case. None of the cases Cincinnati cites holds that Chapter 231A prohibits the particular procedural posture presented here: retaining a non-monetary coverage declaration in a pending liability action where the insurer's named insureds are already defendants in the same case and may themselves assert the coverage claim. Each of Cincinnati's cases involved a claimant who sought to invoke the insurer's payment obligation directly — either through breach of contract, reach-and-apply, or a declaratory judgment treated as a substitute for those remedies — without the insured having been adjudged liable. None of them addressed a non-monetary coverage declaration sought in an integrated proceeding where the insured's liability and the insurer's coverage obligation are simultaneously before the Court.

The distinction is not merely noteworthy; it is dispositive. The foundation for the cases Cincinnati cites is the absence of any legal nexus between the claimant and the insurer before judgment: the insurer's duties run to its insured, and until judgment creates a legal obligation to pay, there is no relationship to adjudicate. That foundation is absent here. The Bonannos are defendants in this very proceeding. They have their own direct and material interest in the coverage question being resolved — an adversarial interest Cincinnati's motion conspicuously ignores.

With the Bonannos as parties, the Court can enter a declaration that binds all interested parties simultaneously, without requiring two parallel or sequential proceedings. Indeed, the SJC's approach in Billings v. Commerce Ins. Co., 458 Mass. 194 (2010), confirms that Cincinnati is properly joined herein: the duty to defend is assessed against the four corners of the complaint, meaning Cincinnati's coverage obligation can be evaluated now, on the current pleadings, regardless of how the underlying liability is ultimately resolved. Cincinnati implicitly acknowledges this by engaging trial counsel and pursuing a motion on the merits: it is litigating the coverage question in this court in this case. Having done so, it cannot simultaneously claim the court lacks jurisdiction to resolve it.

### B. THE DECLARATORY JUDGMENT COUNT IS NOT A PROHIBITED "END RUN."

Cincinnati reads beyond the four corners of the complaint to argue that Owner is somehow deploying G.L. c. 231A as a substitute for a reach-and-apply action under G.L. c. 214, § 3(9), or a bad-faith action under G.L. c. 93A/176D. The argument fails because Owner is not seeking to substitute the declaratory judgment statute for either statutory vehicle.

A reach-and-apply action is a post-judgment remedy that allows a judgment creditor to reach assets of a judgment debtor held by a third party. Owner is not seeking to reach a specific asset — the policy proceeds — before judgment. It is seeking a declaration of coverage status.

Those are categorically different requests. The declaration Owner seeks will not require Cincinnati to pay anything; it will resolve the antecedent coverage question so that all parties know, as the liability case proceeds, whether a judgment against the Bonannos will be within policy coverage.

Owner has not brought a c. 93A count. That was a deliberate pleading choice, not an inadvertent omission, and it does not transform the declaratory judgment count into a disguised bad-faith claim. Finally, Cincinnati's "end run" theory depends on the premise that the Legislature intended to foreclose exactly the relief Owner seeks. But G.L. c. 231A, § 9 expressly commands liberal construction. Nothing in the reach-and-apply or c. 93A framework expresses any legislative intent to bar pre-judgment declaratory relief in an integrated proceeding where the insured and insurer are both defendants. No such scheme applies here.

G.L. c. 231A, § 6 supplies additional statutory support. It provides that "[i]n any action … brought to obtain a judgment or other consequential relief … the court may make a binding determination as provided in this chapter upon application of any party made in his pleadings." Counts I through X seek compensatory damages arising from the Loss; Count XI asks this Court to make a binding coverage determination in the same action. That is precisely the structure § 6 authorizes. Owner does not contend that § 6 independently confers standing; § 6 defeats Cincinnati's separate contention that the procedural combination of liability and declaratory relief constitutes an impermissible end run.

## II. OWNER HAS STANDING TO SEEK THE DECLARATION.

Cincinnati argues that Owner lacks standing because the duties of defense and indemnity are owed to the insured, not the claimant. True as an abstraction, but Owner's standing rests on its own direct injury: it holds a claim for more than $215,000 in uninsured losses against defendants who carry a $1,000,000 liability policy. Cincinnati has taken an adverse claim position on the Loss — confirmed by its own adjuster to include a transmitted coverage position letter — that will

determine whether any judgment Owner obtains is collectible. That is a concrete, personal, financial injury to Owner traceable to Cincinnati's coverage position and fully redressable by the declaration Owner seeks. *Enos v. Sec'y of Env't Affs.*, 432 Mass. 132, 134 (2000). *Cubberley* and *Source One* are inapposite: both involved claimants seeking relief against an insurer without the named insured as a co-defendant in the same proceeding. Here, the Bonannos are defendants and their liability is simultaneously at issue.

### A. *CUBBERLEY* EXPRESSLY DECLINED TO DECIDE THE DECLARATORY-JUDGMENT STANDING QUESTION CINCINNATI SAYS IT DECIDED.

Cincinnati's reliance on *Cubberley v. Commerce Ins. Co.*, 495 Mass. 289 (2025), is its most consequential misreading of Massachusetts law. Cincinnati cites *Cubberley* for the proposition that a third-party claimant lacks standing to seek a pre-judgment declaratory judgment concerning liability coverage. *Cubberley* does not resolve that question.

The SJC held that the *Cubberley* plaintiffs lacked standing to pursue their breach-of-contract claim, because that claim effectively sought to reach and apply automobile policy proceeds without first satisfying the statutory final-judgment prerequisite under G.L. c. 175, § 113 and G.L. c. 214, § 3(9). Cubberly, 495 Mass. at 293-294. **The Court expressly declined to decide the declaratory judgment standing question,** stating in footnote 8: "We need not, and therefore do not, decide whether the plaintiffs have standing to pursue their declaratory judgment claim, as they have waived any further challenge to the dismissal." Id. at 294 n.8. The declaratory judgment question had been waived on appeal and was not before the SJC.

Cincinnati's newest and highest Massachusetts authority expressly declined to resolve the precise declaratory-judgment standing question that Cincinnati asks this Court to decide. That is not a minor qualification. No Massachusetts appellate court has held that a third-party claimant

lacks standing to seek a coverage declaration in the circumstances presented here. The law remains open at the SJC level.

In Dorchester Mut. Ins. Co. v. Legeyt, 2008 Mass.Super.LEXIS 462 (Norfolk Super. Ct. Dec. 29, 2008) (Garsh, J.), a homeowners insurer filed a coverage declaratory judgment action against its insured and the injured third-party claimant. The claimant counterclaimed for a declaration that the insurer owed its insured a duty to defend and indemnify. Not unlike Cincinnati here, the insurer argued the claimant had no standing absent a judgment. Judge Garsh rejected that argument, relying on the SJC's recognition in Fallon v. Mains, 302 Mass. 166, 168 (1939), that "plaintiff's right to have recourse to the policy came into existence upon the occurrence of the accident," and in Goldstein v. Bernstein, 315 Mass. 329, 332 (1943), that "[u]pon the happening of the accident … the plaintiffs acquired a beneficial interest in the proceeds of the policy." 2008 Mass.Super.LEXIS 462 at *15-16. The court thus held that the claimant had standing to maintain the declaratory counterclaim.

Owner acknowledges *Legeyt*'s limiting feature: the insurer had commenced that proceeding and named the claimant as a defendant. And a contrary 2001 Superior Court decision, Ioannou v. Merrimack Mut. Fire Ins. Co., 2001 Mass.Super.LEXIS 623 (Middlesex Super. Ct. Dec. 20, 2001) (Giles, J.), held that a tort claimant "has no interest or right in the insurance contract" sufficient to support a declaratory claim. Massachusetts appellate law is open; the Massachusetts Superior Court decisions are divided. But *Legeyt* demonstrates that there is no settled Massachusetts rule categorically foreclosing claimant declaratory standing — which is all Owner must show to defeat a motion that asks this Court to dismiss as a matter of clearly established law, particularly where the insurer's own insureds are already defendants in this proceeding and the coverage question is directly at issue.

### B. CINCINNATI MISCHARACTERIZES COUNT XI AS AN INDEMNITY-ONLY CLAIM; AT MOST, THE INDEMNITY COMPONENT SHOULD BE DEFERRED RATHER THAN DISMISS THE ENTIRE COUNT.

Cincinnati's motion repeatedly frames Count XI as though it seeks only a declaration that Cincinnati must "indemnify" its insureds. It does not. Paragraph 105(a) of the Complaint expressly requests a declaration that the Loss "constitute[s] a covered occurrence giving rise to Cincinnati's duty to defend and indemnify the Bonannos." The duty to defend and the duty to indemnify are distinct. Cincinnati's own memorandum acknowledges the difference: the duty to defend is determined by the allegations of the complaint and arises before liability is established; the duty to indemnify may depend on facts determined at trial. Having made that concession, Cincinnati cannot then move to dismiss the entirety of Count XI as though both duties are equally premature.

The Appeals Court resolved this precise conflict in John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co., 102 Mass.App.Ct. 474 (2023). There, the court vacated dismissal of the duty-to-defend declaratory claim, holding that an actual controversy existed as to the insurer's present defense obligation, while affirming dismissal of the duty-to-indemnify component as premature pending resolution of the underlying liability. Id. at 485-486, 490. Cincinnati's own authority, Newell-Blais Post No. 443, Veterans of Foreign Wars v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986), holds the same: the indemnity question must await trial, but that is a reason to defer the indemnity component — not to dismiss Count XI in its entirety. Owner offers *Moriarty* not as authority for 1942's independent standing to enforce the Bonannos' defense right, but for the remedial proposition that prematurity of the indemnity component does not compel destruction of an otherwise justiciable insurance proceeding.

Owner candidly acknowledges that it may not have independent standing to enforce the Bonannos' defense right directly. The appropriate procedural response is the one Owner's Cross-Motion requests: afford the Bonannos a reasonable opportunity to retain independent coverage

counsel and to join in the within Opposition and/or assert their own position — including, if they choose, a Rule 13(g) cross-claim against Cincinnati for a declaration of defense and coverage. Notably, Mass. R. Civ. P. 13(g) expressly permits a defendant to assert a cross-claim against a co-defendant arising from the same transaction, including a claim that the co-party "is or may be liable" for all or part of the plaintiff's claim. Once the Bonannos assert such a cross-claim, their standing as named policyholders is indisputable, the coverage question remains in this proceeding, and the Court can manage liability and coverage on a single docket with the sequencing G.L. c. 231A, § 3 and Mass. R. Civ. P. 42(b) expressly authorize.

### C. Cincinnati's Standing Argument Cannot Be Resolved on the Pleadings: Owner's Status as Counterparty to a Written Contract the Cincinnati Policy May Expressly Cover Presents a Merits Question Requiring Discovery.

Cincinnati's standing argument — that the duties of defense and indemnity are owed only to the insured, not to the claimant — is overstated as a matter of both law and fact. As a matter of law, the argument assumes that Owner's only connection to the Cincinnati Policy is its status as a tort claimant. That assumption, however, ignores a category of potential coverage that is common to homeowners personal liability policies issued on standard industry forms: the "insured contract" exception to the contractual liability exclusion. As a matter of fact, the Cincinnati Policy itself has not been produced in this litigation — discovery has not yet commenced — and Cincinnati has not provided Owner with a copy of the policy jacket, declarations page, or any endorsement. The Court cannot resolve a standing argument that turns on the policy's own coverage grant on a motion to dismiss where that policy is not in the record.

Notably, Homeowners personal liability policies issued on standard forms routinely contain a contractual liability exclusion that bars coverage for liability "under any contract or agreement entered into by an insured." That exclusion is typically subject to an exception — commonly called

the "insured contract" exception — for written contracts that directly relate to the ownership, maintenance, or use of an insured location, or under which the insured assumes the liability of another party prior to the occurrence. Standard forms also typically define "insured location" to include any premises not owned by the insured where the insured is temporarily residing. The Bonanno Defendants temporarily resided at and are alleged to have caused damage to Owner's residential real property.

If the Cincinnati Policy contains these standard provisions — as is common for policies of this type — the Bonannos' Occupancy Agreement with Owner would qualify as an insured contract: it directly relates to the Bonannos' use of 12 Galen Avenue, a premises not owned by them where they were temporarily residing; and under it, the Bonannos assumed liability to Owner for property damage caused during their occupancy before the Loss occurred.

If the Cincinnati Policy contains an insured contract exception of that character, Owner is not a stranger to the Policy. Owner is the counterparty to the specific written contract that the Policy preserves from the contractual liability exclusion and incorporates into the coverage grant. Owner's interest in the coverage determination would then be concrete, personal, and traceable to the Policy's own terms — not merely to its status as a tort claimant. Cincinnati ignores that an insured contract is a legally cognizable interest that satisfies the standing requirements of G.L. c. 231A independently of the tort-claimant standing analysis Cincinnati's motion addresses. Enos v. Sec'y of Env't Affs., 432 Mass. 132, 134 (2000).

Owner does not contend that the insured-contract analysis independently confers standing; it establishes that Cincinnati's standing argument cannot be resolved on the pleadings without the Cincinnati Policy in the record. If Cincinnati wishes to pursue its standing argument after producing the Cincinnati Policy in discovery, it may renew the argument at the summary judgment

stage, where the actual policy language will be available for the Court's review. For now, the motion to dismiss on standing grounds should be DENIED.

## III. THE BONANNO DEFENDANTS ARE ALIGNED WITH OWNER IN OPPOSITION TO CINCINNATI'S MOTION AND SHOULD BE INVITED TO JOIN THROUGH INDEPENDENT COVERAGE COUNSEL.

Owner files herewith a separate Cross-Motion for an Order Realigning the Bonanno Defendants with Owner in Opposition to Cincinnati's Motion to Dismiss Count XI. The Bonanno Defendants are the named insureds under the Cincinnati Policy. If the Court allows Cincinnati's motion to dismiss, the coverage question will be removed from this proceeding and will resurface either in a duplicative parallel or sequential action— at which point Cincinnati will litigate indemnity in a separate proceeding as both Owner and the Bonannos, with additional time to develop coverage defenses, where Owner and the Bonannos will bear the full burden of establishing coverage for a judgment that may already have been entered against the Bonannos personally.

No independent coverage counsel has appeared for the Bonanno Defendants in connection with Count XI. The attorney Cincinnati retained to defend the underlying liability claims — who informed Owner's counsel that he had been engaged by Cincinnati, had not yet conferred with his clients, and had not determined whether he would represent the nanny defendant — is not positioned to advise the Bonannos on their independent coverage interests or to determine whether those interests require a different litigation posture from the one Cincinnati's selected counsel would adopt on the liability defense. Nothing has changed in the interim. By letter of August 14, 2026, Cincinnati's selected defense counsel confirmed that he writes for the Bonannos alone, and he said nothing of Jane Doe. <u>See</u> <u>**Exhibit A**</u>. The position defense counsel takes is itself instructive: defense counsel is pursuing coverage for the Bonannos from Owner's carrier while advancing no

position on the Bonanno Defendants' coverage under the Cincinnati Policy — the coverage Cincinnati is presently moving to litigate out of this case, by a motion Cincinnati did not serve upon its own defense counsel. The persons Cincinnati itself identifies as the only holders of a cognizable interest in the coverage question are therefore represented, on that question, by no one.

Before a motion is adjudicated that may materially affect the Bonannos' personal exposure and insurance rights, they should have a reasonable opportunity to obtain independent advice and to determine whether to assert their own coverage position. Owner respectfully requests that this Court DENY Cincinnati's motion to dismiss or, in the alternative, continue the matter to afford the Bonanno Defendants a reasonable opportunity to retain independent coverage counsel and to file their own opposition.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE, CONSOLIDATE THE COVERAGE QUESTION WITH THE LIABILITY TRIAL, AND DECLINE TO FACILITATE CINCINNATI'S TRANSPARENT FORUM-SHOPPING.

Even if the Court were to conclude that Count XI is premature, dismissal with prejudice — the remedy Cincinnati requests — would be inappropriate. The coverage question will not disappear; it will resurface in a duplicative parallel or sequential proceeding, or recur the moment Owner obtains a judgment against the Bonannos. The most efficient course is to allow Count XI to remain, develop the coverage and liability issues through a common discovery record, and address the coverage question through a bifurcated bench trial or in conjunction with the liability trial. Massachusetts courts have recognized the wisdom of resolving coverage and liability questions in a single integrated proceeding. G.L. c. 231A, § 9 (statute "is to be liberally construed and administered" to "remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations"); G.L. c. 231A, § 3 (court may refuse declaratory

relief only where judgment "would not terminate the uncertainty or controversy giving rise to the proceedings").

Even if the Court were to conclude that some aspect of Count XI requires further development, Mass. R. Civ. P. 42(b) expressly authorizes a separate trial on any claim or issue where that promotes convenience, expedition, economy, or avoids prejudice. The Court can sequence coverage and liability proceedings on a single docket precisely as G.L. c. 231A, § 3 and Rule 42(b) contemplate. That is efficient case management — not a reason to dismiss.

Dismissal of Count XI would not terminate the coverage controversy. It would relocate it. If the Court allows the motion, Cincinnati may refile its own declaratory judgment action under G.L. c. 231A in a forum of its choosing, naming Owner and the Bonanno Defendants as parties. Massachusetts practice contemplates exactly this sequence: when coverage is disputed, the insurer is expected to file a declaratory judgment action in Superior Court naming both the insured and the claimant as parties. *Espinal v. Liberty Mutual Ins. Co.*, 47 Mass.App.Ct. 593, 598-599 (1999). There is accordingly no scenario in which dismissal of Count XI eliminates the coverage question; it only eliminates it from Owner's chosen forum.

The purpose of Cincinnati's motion is transparent. Cincinnati served its motion to dismiss before the Bonanno Defendants were served with the complaint, before any party had appeared through independent coverage counsel, and without the Rule 9C conference required for a dispositive motion. The motion seeks to dismiss Count XI from a case Cincinnati had no hand in filing — Owner's case, in Owner's chosen forum, in the county where the property is located and where the Loss occurred — so that Cincinnati may then re-file in a forum of its own choosing, where the docket and pace may favor the insurer. The Supreme Court established in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942), that courts may decline declaratory judgment

jurisdiction where the primary purpose of the filing is forum selection, because "[o]rdinarily it would be uneconomical as well as vexatious" to allow such tactical maneuvering. While *Brillhart* addressed federal court discretion, its anti-forum-shopping rationale applies equally here: G.L. c. 231A, § 9's liberal-construction mandate and § 3's requirement that a dismissal actually terminate the uncertainty are designed precisely to prevent a party from using Rule 12 as a forum-selection device.

Even if the Court were to conclude that some aspect of Count XI is premature, Cincinnati's request for dismissal *with prejudice* is untenable. Cincinnati's own theory concedes that any standing defect is temporal: the asserted problem disappears upon a judgment against the Bonannos or, sooner, upon the Bonannos' assertion of a Rule 13(g) coverage crossclaim. A defect that cures itself cannot be "fatal to the merits" of the claim. Braxton v. Boston, 96 Mass.App.Ct. 714, 720 (2019) (dismissal with prejudice appropriate only "where a lack of standing [was] fatal to the merits of the plaintiff's claim"); accord, Hladik v. LPL Fin. LLC, 106 Mass.App.Ct. 592, 595 n.4 (2026) ("[d]ismissals for lack of subject matter jurisdiction are ordinarily without prejudice because dismissal for lack of jurisdiction is typically not an adjudication on the merits"). If the Court concludes that any relief is appropriate, it should be denial *without prejudice* or a continuance — not a merits disposition that forecloses Owner's claim before the Bonannos have had any opportunity to participate.

Granting the motion to dismiss would burden the courts with two parallel proceedings arising from the same incident, the same policy, and the same parties — one in this Court on liability, another wherever Cincinnati chooses to file on coverage — deny all parties the benefit of a common discovery record, and reward the insurer for serving a dispositive motion before its own insureds had been served or had the opportunity to protect their independent interests. Denying

Cincinnati's motion is not merely equitable to Owner and the Bonanno Defendants — it prevents Cincinnati from using Rule 12 as a vehicle to escape a properly chosen forum and multiply litigation. The motion should be DENIED.

## CONCLUSION

WHEREFORE, Plaintiff 1942 Realty, LLC respectfully requests that this Honorable Court:

1. **DENY** The Cincinnati Insurance Company's Motion to Dismiss in its entirety;

2. In the alternative, continue the matter to afford the Bonanno Defendants a reasonable opportunity to retain independent coverage counsel and file their own opposition to Cincinnati's motion;

3. In the further alternative, if the Court concludes that any aspect of Count XI requires refinement, allow Owner leave to amend the complaint to address the Court's concerns;

4. In the further alternative, continue Cincinnati's motion to dismiss to afford the Bonanno Defendants a reasonable opportunity to appear through independent coverage counsel and, if they choose, to assert a crossclaim against Cincinnati pursuant to Mass. R. Civ. P. 13(g) for a declaration of Cincinnati's duty to defend and indemnify; and

5. Grant such other relief as this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Superior Court Rule 9A(c)(2), Owner respectfully requests a hearing on this motion. Motions to dismiss under Mass. R. Civ. P. 12 are among the categories for which a hearing will ordinarily be allowed under Rule 9A(c)(3).

Respectfully submitted,

**PLAINTIFF,**

**1942 REALTY, LLC,**

By its attorney,

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON LAW
76 Tupper Road, Suite 11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: August 21, 2026

## CERTIFICATE OF SERVICE

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I forwarded notice of the foregoing document(s) via electronic service through the Odyssey/Tyler e-service platform, electronic mail, and/or Federal Express or U.S. Mail Delivery thereof, postage prepaid, to the following:

Nora R. Adukonis, Esq.
LITCHFIELD CAVO, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

John R. Garrasi, Esq.
MARTIN, MAGNUSON, MCCARTHY & KENNEY, P.C.
101 Merrimac Street, 7th Floor
Boston, MA 02114
jgarrasi@mmmk.com

Raymond H. Tomlinson, Jr.

Dated: August 21, 2026

# EXHIBIT A

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

**Raymond Tomlinson**

---

**From:** John Garrasi <JGARRASI@MMMK.COM>
**Sent:** Friday, August 14, 2026 4:36 PM
**To:** Raymond Tomlinson
**Cc:** Douglas A. Robertson; adukonis@litchfieldcavo.com; Audrey Bonk
**Subject:** 1942 Realty LLC v. Matthew Bonanno et al; Insurance Policies [IMAN-DOCS.FID2005657]
**Attachments:** AS SENT - MGL c 175 Letter to Tomlinson - BONANNO.pdf

Ray:

Thank you for connecting with me earlier this week on the case. I appreciate you making yourself available despite still being on vacation. Your responsiveness is greatly appreciated.

At this point, I have not yet received confirmation that our clients have been served. In the interest of working toward resolution and as part of our normal practice in these matters, I am attaching a request for any and all insurance policies and related information required to be disclosed pursuant to M. G. L. 175, § 112C. Specifically, we are looking for the insurance policies required for short-term rentals under M. G. L. c. 175, § 4F.

I look forward to working with you as the case progresses. Please feel free to contact me if you have any questions or would like to discuss the matter further. I have copied attorneys Robertson and Adukonis on this email so as to avoid any duplicity.

Enjoy the remainder of your vacation, and I look forward to speaking with you soon.

Best,

**John Garrasi, Associate**
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
Direct: (857) 957-0701
Mobile: (518) 514-8120
Fax: (617) 227-3346
*This email may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it. No waiver of privilege is intended by such an error.*

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. Information contained in this e-mail transmission is privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521. If you received this message erroneously, please delete this message and any attachments. Please do not save, copy, forward or use misdirected e-mail. Anyone misusing this e-mail will be prosecuted. This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. Information contained in this e-mail transmission is privileged,

confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521. If you received this message erroneously, please delete this message and any attachments. Please do not save, copy, forward or use misdirected e-mail. Anyone misusing this e-mail will be prosecuted.

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

MARTIN, MAGNUSON, McCARTHY & KENNEY
ATTORNEYS AT LAW
101 MERRIMAC STREET, 7TH FLOOR
BOSTON, MASSACHUSETTS 02114-4716
TELEPHONE: (617) 227-3240
TELECOPIER: (617) 227-3346
WWW.MMMK.COM

A PROFESSIONAL CORPORATION

PAUL R. KEANE
PAUL M. McTAGUE
EDWARD F. MAHONEY
DOUGLAS A. ROBERTSON*
KEVIN C. REIDY
STEPHEN M. O'SHEA *
JENNIFER E. KOGAN •
SARAH ANN GREENHALGH
JOAN F. RENEHAN
JENNIFER A. CREEDON +!
DARLENE DAWSON
KATHLEEN O'DONNELL WYATT !
LINDSAY E. WEBER !
MICHAEL J. KEEFE !
LAUREN E. MANKOWSKI !
LINDSEY J. TAYLOR
TAYLOR R. ALCORN
ANTHONY BRIGHTON ^
BRYANNA L. GREENWOOD
PATRICK MADAYA
KATHERINE KOSSOY
AMANDA V. REIS
JOHN GARRASI

SENIOR COUNSEL

CHARLES P. REIDY, III

EDWARD F. HENNESSEY (1949-2007)
EPHRAIM MARTIN (1927-1988)
HAROLD E. MAGNUSON (1938-1999)
CLEMENT MCCARTHY (1951-1985)
RAYMOND J. KENNEY, JR. (1958-2023)

• ALSO ADMITTED IN CA
! ALSO ADMITTED IN CT
* ALSO ADMITTED IN NH
+ ALSO ADMITTED IN RI
^ ALSO ADMITTED IN NY

August 14, 2026

***VIA EMAIL ONLY***
Raymond H. Tomlinson, Jr. Esq.
TOMLINSON LAW
76 Tupper Road, Suite #11
Sandwich, MA 02563
rht@tomlinsonlaw.com

**RE: 1942 Realty, LLC v. Matthew W. Bonanno, et al.**
**Nantucket Superior Court Civil Action No. 2675CV00024**
**M. G. L. c. 175, § 112C Request for Disclosure of Liability Coverage**

Dear Attorney Tomlinson:

I write on behalf of Matthew W. Bonanno and Emily J. Bonanno concerning the above-captioned action and the August 21, 2025 alleged loss at 12 Galen Avenue, Nantucket, Massachusetts.

Please treat this correspondence as a written request pursuant to G. L. c. 175, § 112C directed to each insurer, providing, or potentially providing, liability insurance to 1942 Realty, LLC, or otherwise providing applicable liability coverage in connection with the subject-premises or short-term-rental as mandated by M. G. L. c. 175, § 4F.

Under M. G. L. c. 175, § 4F, "An operator [of a short term rental in MA] shall maintain liability insurance of not less than $1,000,000 to cover each short term rental, unless such short-term rental is offered through a hosting platform that maintains equal or greater coverage. Such coverage shall defend and indemnify the operator and any tenants or owners in the building for bodily injury and property damage arising from the short-term rental." A copy of the statute, along with a copy of the statute defining the term "operator," is enclosed for your records.

Because the identity of all such insurers is presently unknown to the Bonannos, please forward this letter immediately to each applicable insurer, carrier, underwriting entity, risk program, and/or hosting-platform insurer, including, without limitation:

(1) **Any insurer providing primary liability coverage to 1942 Realty, LLC or the premises located at 12 Galen Avenue;**

(2) **Any umbrella or excess liability insurer;**

(3) **Any insurer providing short-term rental liability coverage maintained by or on behalf of 1942 Realty, LLC pursuant to G. L. c. 175, § 4F;**

(4) **Any insurer providing the liability coverage required by § 4F through a hosting platform, rental platform, property manager, agent, or other entity; and**

(5) **Any other insurer whose policy may provide liability coverage for claims arising from the August 16–30, 2025 short-term rental or the alleged August 21, 2025 loss.**

For purposes of G. L. c. 175, § 112C, the Bonannos hereby make and preserve claims against 1942 Realty, LLC arising from the subject rental and loss, including any claims or rights concerning defense, indemnification, contribution, insurance procurement, statutory insurance obligations, contractual obligations, and damages or expense resulting from any failure to maintain, procure, disclose, or make available insurance required by law or otherwise applicable to the subject occurrence.

Accordingly, each insurer receiving this request is requested and required to disclose the amount of limits of its insured's liability coverage applicable to these claims, including the limits of all applicable primary, umbrella, and excess coverage.

Section 112C requires an insurer to respond within thirty (30) days after receipt of the written request. The statute further provides that an insurer failing to comply is liable to the claimant for $500.00, together with reasonable attorneys' fees and expenses incurred in obtaining the required coverage information.

To avoid any uncertainty concerning receipt and the commencement of the statutory response period, please provide us with a copy of the correspondence or email by which this request is forwarded to each insurer, together with the same of the insurer, claim representative, claim number, and date of transmission.

This request is particularly intended to identify any liability coverage maintained in compliance with G. L. c. 175, § 4F, which requires specified liability insurance in connection with short-term rentals. Nothing in this correspondence should be construed as limiting the Bonannos' position regarding the nature, scope, enforceability, or applicability of any insurance required by § 4F, including their rights to seek defense and indemnification under any such coverage.

Nor should this request be construed as limiting the Bonannos' rights to obtain complete copies of applicable insurance policies, declarations, endorsements, binders, certificates, applications, insurance-procurement records, or related materials through discovery or otherwise. This letter specifically invokes the separate disclosure obligation imposed upon insurers by G. L. c. 175, § 112C.

Please confirm promptly that this correspondence has been forwarded to all potentially responsive insurers so that each carrier may respond directly within the statutory period.

Thank you for your attention to this request.

Very truly yours,

*/s/ John R. Garrasi*
John R. Garrasi, Esq.
BBO No. 717460
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
jgarrasi@mmmk.com

CC: *Counsel for The Cincinnati Insurance Company*
Nora Rose Adukonis, Esq.
Litchfield Cavo LLP
6 Kimball Lane
Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

# EXHIBIT B

# 2675CV00024 1942 Realty, LLC vs. Bonanno, Matthew W. et al

- Case Type:
- Contract / Business Cases
- Case Status:
- Open
- File Date
- 06/23/2026
- DCM Track:
- F - Fast Track
- Initiating Action:
- Sale or Lease of Real Estate
- Status Date:
- 06/23/2026
- Case Judge:
-
- Next Event:
- 10/01/2026

All Information | Party | Event | Tickler | Docket | Disposition

## Party Information

**1942 Realty, LLC**
- Plaintiff

**Alias**

**Party Attorney**
- Attorney
- Tomlinson, Jr., Esq., Raymond Harlan
- Bar Code
- 654855
- Address
- TOMLINSON LAW
76 TUPPER ROAD
SUITE 11
SANDWICH, MA 02563
- Phone Number
- (508)348-9030

More Party Information

**Bonanno, Matthew W.**
- Defendant

**Alias**

**Party Attorney**

More Party Information

**Bonanno, Emily J.**
- Defendant

**Alias**

**Party Attorney**

More Party Information

**Doe (Alias), Jane**
- Defendant

**Alias**

**Party Attorney**

More Party Information

**The Cincinnati Insurance Company**
- Defendant

**Alias**

**Party Attorney**
- Attorney
- Adukonis, Esq., Nora Rose
- Bar Code
- 676932
- Address
- Litchfield Cavo LLP
6 Kimball Lane
Suite 200
Lynnfield, MA 01940
- Phone Number

• (781)309-1521

More Party Information

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 10/01/2026 02:00 PM | Civil A NANTUCKET | | Rule 12 Hearing | | |

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Service | 06/23/2026 | 09/21/2026 | 90 | |
| Answer | 06/23/2026 | 10/21/2026 | 120 | |
| Rule 12/19/20 Served By | 06/23/2026 | 10/21/2026 | 120 | |
| Rule 12/19/20 Filed By | 06/23/2026 | 11/20/2026 | 150 | |
| Rule 12/19/20 Heard By | 06/23/2026 | 12/21/2026 | 181 | |
| Rule 15 Served By | 06/23/2026 | 10/21/2026 | 120 | |
| Rule 15 Filed By | 06/23/2026 | 11/20/2026 | 150 | |
| Rule 15 Heard By | 06/23/2026 | 12/21/2026 | 181 | |
| Discovery | 06/23/2026 | 04/20/2027 | 301 | |
| Rule 56 Served By | 06/23/2026 | 05/19/2027 | 330 | |
| Rule 56 Filed By | 06/23/2026 | 06/18/2027 | 360 | |
| Final Pre-Trial Conference | 06/23/2026 | 10/18/2027 | 482 | |
| Judgment | 06/23/2026 | 04/13/2028 | 660 | |

## Docket Information

| Docket Date | *Docket Text* | File Ref Nbr. | *Image Avail.* |
|---|---|---|---|
| 06/23/2026 | VERIFIED Complaint electronically filed. | 1 | Image |
| 06/23/2026 | Civil action cover sheet filed. | 2 | Image |
| 06/24/2026 | Case assigned to:<br>DCM Track F - Fast Track was added on 06/24/2026 | | |
| 08/11/2026 | Attorney appearance electronically filed. | | Image |
| 09/09/2026 | Defendant The Cincinnati Insurance Company's Motion to Dismiss of the Cincinnati Insurance Company | 3 | Image |
| 09/09/2026 | The Cincinnati Insurance Company's Memorandum of Law in Connection With it's Motion to Dismiss | 3.1 | Image |
| 09/09/2026 | Opposition to the Motion to Dismiss of the Cincinnati Insurance Company filed by 1942 Realty, LLC | 3.2 | Image |
| 09/09/2026 | Reply/Sur-reply<br>to Opposition to Motion to Dismiss<br>Applies To: The Cincinnati Insurance Company (Defendant) | 3.3 | Image |
| 09/09/2026 | Plaintiff 1942 Realty, LLC's Cross Motion for an Order Realigning Defendants Matthew W. Bonanno and Emily J. Bonanno With Plaintiff in Opposition to Cincinnati Insurance Company's Motion to Dismiss Count XI | 4 | Image |
| 09/09/2026 | Opposition to Plaintiff's Purported "Cross-Motion" to "Realign Parties" filed by The Cincinnati Insurance Company | 4.1 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 09/09/2026 | Affidavit of Compliance With Superior Court Rule 9A | 5 | Image |
| 09/09/2026 | Defendant The Cincinnati Insurance Company's Request for Hearing | 6 | Image |
| 09/09/2026 | Defendant The Cincinnati Insurance Company's Notice of Filing | | Image |
| 09/09/2026 | Defendant The Cincinnati Insurance Company's Certificate of Service | | Image |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Pending | | |

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

# EXHIBIT C

Date Filed 9/23/2026 2:29 PM
Superior Court - Nantucket
Docket Number 2675CV00024

UNITED STATES DISTRICT COURT FOR THE
FIRST DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:26-cv-14345

| | |
|---|---|
| 1942 REALTY, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>MATTHEW W. BONANNO,<br>EMILY J. BONANNO,<br>JANE DOE, and<br>THE CINCINNATI INSURANCE COMPANY,<br><br>*Defendants.* | **DEFENDANT THE CINCINNATI INSURANCE COMPANY'S CONSENT TO REMOVAL** |

The Cincinnati Insurance Company ("Cincinnati"), through undersigned counsel, hereby joins in and expressly consents to the removal of this action to the United States District Court for the District of Massachusetts, Eastern Division, pursuant to 28 U.S.C. § 1446(b)(2)(A). To the extent Cincinnati received or was served with the initial pleading before one or both of the Bonanno Defendants, Cincinnati's counsel is also authorized by 28 U.S.C. § 1446(b)(2)(C), which permits an earlier-served defendant to consent to a later-served defendant's timely removal.

This consent is limited to removal and does not waive Cincinnati's pending Motion to Dismiss Count XI, its coverage positions, or any other defense, objection, or right.

*[SIGNATURE PAGE TO FOLLOW]*

Dated: September 23, 2026

Respectfully submitted,
Defendant,
The Cincinnati Insurance Company,
By and through its attorney,
*/s/ Nora R. Adukonis*

Nora R. Adukonis, Esq.
BBO No. 676932
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
Tel. (781) 309-1500
adukonis@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I, Nora R. Adukonis, attorney for Defendant The Cincinnati Insurance Company, hereby certify that on September 23, 2026, I served the foregoing through email on all counsel and parties entitled to notice at:

Raymond H. Tomlinson, Esq.
Tomlinson Law
76 Tupper Road, Suite 11
Sandwich, MA 02563
rht@tomlinsonlaw.com

Douglas A. Robertson, Esq.
BBO No. 552315
John R. Garrasi, Esq.
BBO No. 717460
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
drobertson@mmmk.com
jgarrasi@mmmk.com

*/s/ Nora R. Adukonis*
Nora R. Adukonis, Esq.
BBO No. 676932
Attorney for Defendant,
The Cincinnati Insurance Company,
Litchfield Cavo LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940
adukonis@litchfieldcavo.com

## CERTIFICATE OF SERVICE

I, Douglas A. Robertson, attorney for Defendant Home Depot USA, Inc., hereby certify that on September 23, 2026, I served a copy of the above document via email and the Massachusetts eFile system upon the following:

Michael F. Mahoney, Esq.
Ryan P. Gilday, Esq.
52 Lynnway, Unit 1G
Lynn, MA 01902
Michael@michaelmahoneylaw.com
Ryan@michaelmahoneylaw.com

Andrew V. Ramirez, Esq.
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375
Aramirez@LynchLynch.Com

Janet M. Smith, Esq.
Burns & Farrey, P.C.
2 South Bolton Street
Marlborough, MA 01752
Smith@burnsandfarrey.com

Peter L. Bosse, Esq.
Jeffrey E. Dolan, Esq.
Boyle | Shaughnessy Law PC
446 Main Street, 19th Floor
Worcester, MA 01608
pbosse@boyleshaughnessy.com
jdolan@boyleshaughnessy.com

*/s/ Douglas A. Robertson*
Douglas A. Robertson, Esq.
Attorney for the Defendant/Third-Party Plaintiff,
Home Depot USA, Inc.
Martin, Magnuson, McCarthy & Kenney
101 Merrimac Street
Boston, MA 02114
(617) 227-3240
drobertson@mmmk.com