UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 1942 REALTY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW W. BONANNO, EMILY J. BONANNO, JANE DOE, AND THE CINCINNATI INSURANCE COMPANY,<br><br>Defendants. | C.A. No.: 1:26-cv-14345-PBS |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS MATTHEW W. BONANNO AND EMILY J. BONANNO'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

## INTRODUCTION

The Bonanno Defendants ask the Court to enter dispositive relief before discovery on two affirmative defenses that their own Answer pleads conditionally and that their own memorandum depends upon facts not admitted in the pleadings. Their motion proceeds first under Fed. R. Civ. P. 56 and, alternatively, under Rule 12(c). Neither path supports judgment against Plaintiff. Their own Twenty-third Affirmative Defense further states that they "have not yet had the benefit of discovery," including the Great Point file, insurance-procurement records, and damages documentation—matters they now ask the Court to treat as established or immaterial.

The Rule 56 request fails at the threshold. Local Rule 56.1 requires every summary-judgment motion to include a concise statement of the material facts of record as to which the movant contends there is no genuine issue to be tried, supported by page-specific record citations. The Rule expressly provides that failure to include the required statement constitutes grounds for denial. The Bonanno Defendants filed no Rule 56.1 statement at all. Their memorandum's narrative "Relevant Factual Background" is not a substitute. The Rule 56 branch of the motion should therefore be DENIED without requiring 1942 Realty, LLC ("Owner" or "1942") to

reconstruct a summary-judgment record the movants elected not to present. The Bonannos also invoke *Celotex's* "absence of evidence" formulation, but that rule concerns an element on which the nonmovant bears the burden. Here, Section 8 waiver and § 4F recoupment are the Bonannos' own affirmative defenses, on which they bear the burden of proof and have presented none.

The Rule 12(c) alternative fares no better. Judgment on the pleadings is proper only where the uncontested and properly considered facts conclusively establish the movant's entitlement to judgment. The Court must view the facts in the light most favorable to Owner, draw every reasonable inference in Owner's favor, and may not resolve contested facts. Here, the Complaint affirmatively alleges that Owner "fully performed all of its obligations under the Occupancy Agreement." COMPL. ¶¶ 17, 44, 49. The Bonanno Defendants deny those allegations and plead their Section 8 and § 4F theories only conditionally. Those disputed and conditional propositions cannot support judgment on the pleadings.

The Bonannos' contractual theory also depends on a reading of Section 8 that is not compelled by the text. Section 8 states both that damages and claims are not limited to the $4,500 deposit and, after describing the deposit-processing procedure, that the landlord "will then become fully responsible for the collection of bills." COMPL. EX. A § 8. At minimum, those provisions must be reconciled before Section 8 can be transformed from a security-deposit administration clause into a wholesale release of independent claims against the Bonanno Defendants.

The Bonannos' statutory theory is still further removed from Rule 12(c). G.L. c. 175, Section 4F permits the required coverage to be maintained either by the operator or by a qualifying hosting platform. The pleadings do not establish the absence of either. And even if a statutory violation were ultimately proved, § 4F contains no automatic recoupment remedy. The cases on which the Bonannos rely concern negligence or contract claims requiring proof of duty, breach,

causation, and damages; they do not create a self-executing setoff equal to every dollar of claimed property damage. The Bonannos themselves acknowledge as much: their memorandum asks the Court to "reserve remedial consequences until the coverage and damages record is complete," and recognizes that their proposed relief depends on "the scope of the coverage required by § 4F." Doc. 21 at 2, 7.

The motion attempts to obtain merits findings from a record that the movants did not present under Rule 56 and that the pleadings do not establish under Rule 12(c). It should be denied.

## RELEVANT BACKGROUND

The Complaint arises from the August 21, 2025 water loss at 12 Galen Avenue in Nantucket during the Bonanno Defendants' two-week vacation rental. Owner alleges that the Bonannos, their nanny Jane Doe a/k/a "Chloe," and/or the Bonannos' minor child caused or permitted the third-floor bathroom water overflow and that removal or disabling of a water sensor materially worsened the resulting damage. COMPL. ¶¶ 2, 18–29. Owner alleges actual remediation and repair costs of $160,447.66, uninsured remediation and repair costs of at least $105,947.66 after application of first-party insurance proceeds and the $4,500 deposit, lost rental income, and professional and investigative costs. *Id.* ¶¶ 3, 30–35.

The parties' Occupancy Agreement, COMPL. Ex. A, identifies Great Point Properties, Inc. ("Great Point") as rental agent. Section 8 of that agreement provides that the $4,500 security/utility deposit is "not to be considered prepaid rent, nor shall damages or claims (if any) be limited to the amount of this deposit." It states that the landlord must submit written itemized copies of bills, repairs, and damage claims to Great Point within 45 days of vacancy "in order to process and return TENANT'S security deposit within 60 days of vacancy." If the landlord fails to comply, Section 8 states that the deposit will be returned and the landlord will be deemed to have waived rights "relative to reimbursement of any and all bills and expenses resulting from the tenancy." It

immediately continues: "The LANDLORD will then become fully responsible for the collection of bills, and Great Point Properties, Inc. and its affiliates will be indemnified, defended and held harmless for any and all monies owed on said bills." COMPL. EX. A § 8.

Section 10 of the agreement separately provides that the tenant is responsible for "all damages or breakage and/or loss to the Premises except normal wear and tear." COMPL. EX. A § 10. The Complaint alleges breach of the Occupancy Agreement and multiple tort theories arising from the same Loss. It also alleges that Owner formally notified the Bonannos of its claim on September 18, 2025 and sent a further written demand on October 10, 2025. COMPL. ¶¶ 36–37.

The Bonanno Defendants' Answer does not admit the motion's asserted noncompliance. It admits the Occupancy Agreement and that Owner retained the $4,500 deposit but otherwise states that the document speaks for itself. Doc. 15 ¶¶ 11–15. The Complaint, meanwhile, alleges that Owner fully performed all obligations under the Occupancy Agreement. COMPL. ¶¶ 17, 44, 49. The Bonannos deny those allegations. Their Second Affirmative Defense (Doc. 15 at 12) invokes Section 8 only "to the extent Plaintiff failed to submit to Great Point Properties, within the contractually specified period," the required material; their Third Affirmative Defense (Doc. 15 at 13) is likewise conditional; and their Nineteenth Affirmative Defense (Doc. 15 at 16) invokes § 4F only "to the extent Plaintiff failed to maintain or provide" required liability insurance and expressly recognizes the statutory alternative where "qualifying coverage was maintained by a hosting platform." Their Twenty-third Affirmative Defense (Doc. 15 at 17) further states that they "have not yet had the benefit of discovery," including Plaintiff's Great Point file, insurance-procurement records, and damages documentation.

The coverage record is also unresolved. Cincinnati acknowledged that its insureds carry $1,000,000 in personal liability limits, and Cincinnati is presently furnishing the Bonannos'

defense. COMPL. ¶ 38; Doc. 23 at 2. The Bonannos' own memorandum therefore does not seek a present adjudication of Cincinnati's indemnity obligations and asks that remedial consequences be reserved "until the coverage and damages record is complete." Doc. 21 at 2.

## ARGUMENT

### I. THE RULE 56 REQUEST SHOULD BE DENIED FOR FAILURE TO COMPLY WITH LOCAL RULE 56.1.

Local Rule 56.1 is explicit. A motion for summary judgment "shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation." D. MASS. L.R. 56.1. The Rule then states the consequence: "Failure to include such a statement constitutes grounds for denial of the motion." *Id*.

The Bonanno Defendants filed no Rule 56.1 statement. Doc. 20 is a three-page motion. Doc. 21 is a memorandum. Neither filing supplies the required statement of undisputed material facts with record citations in the form Local Rule 56.1 requires. A factual narrative embedded in a memorandum does not cure that omission. *See Martin v. Tricam Indus., Inc.*, 379 F.Supp.3d 105, 108 n.1 (D. Mass. 2019) (although the court elected to overlook the violation and reach the merits, a memorandum's facts section "is not enough to comply with the rule"); *United States ex rel. Booker v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 128 (D. Mass. 2016) (movant's statement of facts "incorporated into [its] briefing" disregarded Local Rule 56.1 and "could provide grounds sufficient for denial" of its summary-judgment motion), *aff'd*, 847 F.3d 52 (1st Cir. 2017); *Shabazz v. Cole*, 69 F. Supp. 2d 177, 185–186 (D. Mass. 1999) (denying an alternative summary-judgment request for failure to comply with L.R. 56.1 and then analyzing the motion under Rule 12(b)(6)). The First Circuit has emphasized the importance of Local Rule 56.1's anti-ferret function "in preventing litigants from shifting the burden of organizing evidence to the district court," and treats

a district court's decision to enforce it "with deference." *Zimmerman v. Puccio*, 613 F.3d 60, 63 (1st Cir. 2010).

The defect here is substantive and not merely cosmetic. The Bonannos' motion declares factual propositions "undisputed" that the pleadings do not establish: what was or was not submitted to Great Point during the contractual period; whether the rental was offered through a hosting platform maintaining qualifying coverage; what insurance existed; and what defense or indemnity loss, if any, Matthew Bonanno suffered because of any alleged nonprocurement. The Bonannos' own Twenty-third Affirmative Defense says discovery is needed into the Great Point file, insurance-procurement records, and damages documentation. Without a Rule 56.1 statement, Owner has no properly framed set of asserted facts to admit, deny, or qualify and the Court has no Rule 56.1 record from which to determine whether any material fact is genuinely undisputed. This is not technical noncompliance that a practical approach might excuse. The Bonannos submitted no affidavit, no deposition testimony, no document beyond the pleadings, and no record citation at all. There is no imperfect or misplaced statement for the Court to read practically, let alone generously; there is no Rule 56 record.

Nor can the Bonanno Defendants avoid their burden by invoking *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Their memorandum correctly states that a movant may identify an absence of evidence on an element for which the nonmovant bears the burden. Doc. 21 at 3. Here, however, the Bonannos seek judgment on their own affirmative defenses without providing any actual evidence of non-disputed facts. "The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive." *Vargas v. Cummings*, 149 F.3d 29, 35 (1st Cir. 1998). The Bonannos therefore must establish the predicates of Section 8 waiver and § 4F recoupment; they cannot obtain judgment merely from an

asserted absence of contrary evidence from Owner.

The Court should therefore deny the Rule 56 request at the threshold. Because the Bonanno Defendants filed no Local Rule 56.1 statement, there is no movant's statement for Owner to controvert paragraph by paragraph; the disputed factual predicates are identified below. If the Bonanno Defendants later seek summary judgment after discovery, they can do so on a developed record and in compliance with Local Rule 56.1. To the extent the Bonannos respond that no statement was required because their motion rests on the pleadings alone, that position abandons the Rule 56 branch and leaves only the Rule 12(c) request, which fails for the reasons below.

## II. THE ALTERNATIVE RULE 12(c) REQUEST LIKEWISE FAILS BECAUSE THE PLEADINGS DO NOT CONCLUSIVELY ESTABLISH THE BONANNOS' ENTITLEMENT TO JUDGMENT.

Rule 12(c) does not permit the Court to decide disputed facts. The First Circuit views the pleaded facts in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor; judgment may enter only if "the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006); *accord Zipperer v. Raytheon Co.*, 493 F.3d 50, 53 (1st Cir.2007); *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006).

Although the Court may consider the Occupancy Agreement because it is attached to and incorporated in the Complaint, the Bonanno Defendants cannot convert their own denials and affirmative defenses into admitted facts. For dismissal to be allowed on the basis of an affirmative defense, "the facts establishing the defense must be clear 'on the face of the plaintiff's pleadings,'" and the properly considered pleadings must "leave no doubt" that the action is barred. *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001); *accord Santana-Castro v. Toledo-Dávila*, 579 F.3d 109, 114 (1st Cir. 2009). Here, the pleadings reveal material disputes concerning both

affirmative defenses on which the motion depends. That ends the Rule 12(c) inquiry because neither the contract nor the statute itself defeats Owner's claims as a matter of law.

## III. SECTION 8 DOES NOT SUPPORT JUDGMENT ON THE PLEADINGS.

### A. The Pleadings Do Not Establish the Factual Predicate of Noncompliance.

The motion's Section 8 theory begins with a factual conclusion: "1942 Realty did not submit the required written itemization to Great Point within the forty-five-day period." Doc. 21 at 2. But the Complaint affirmatively alleges the opposite in pleading terms: "Owner fully performed all of its obligations under the Occupancy Agreement." COMPL. ¶¶ 17, 44, 49. The Bonanno Defendants deny those allegations. On their Rule 12(c) motion, that factual dispute must be resolved in Owner's favor, not converted into an admission of nonperformance. *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992), does not assist the Bonannos: *Schott* concerned a party's clear and unambiguous factual admission in its own complaint. Owner made no such admission of Section 8 noncompliance; rather, Owner's express allegation is full performance.

To the extent the Bonanno Defendants characterize Section 8 as a condition precedent, Rule 9(c) independently permits performance of conditions precedent to be alleged generally and requires a denial of performance to be made "with particularity." FED.R.CIV.P. 9(c). The Answer's bare denials of Owner's pleaded full performance, coupled with a Second Affirmative Defense that conditionally applies only "to the extent" Owner failed to submit materials to Great Point, do not establish nonperformance on the pleadings. The Complaint also alleges written notice of the claim on September 18, 2025 and a further written demand on October 10, 2025. COMPL. ¶¶ 36–37. Whether those communications, accompanying materials, communications with Great Point, or other submissions satisfied Section 8 factually or legally cannot be resolved against Owner on

Rule 12(c). If Section 8 is instead treated not as a condition precedent but as a forfeiture or waiver provision, it is the Bonannos' affirmative defense, and it may support judgment only if the facts establishing it are clear on the face of Owner's pleadings. *Blackstone*, 244 F.3d at 197. Either way, Owner's allegation of full performance is not a bare legal conclusion to be disregarded; it is the form of pleading Rule 9(c) expressly authorizes, and it is accompanied by specific allegations of written notice of the claim and by the admitted retention of the deposit.

The pleadings also establish that the contractual consequence the Bonannos invoke did not occur: they admit that Owner retained the $4,500 deposit and has not returned it. COMPL. ¶ 13; Doc. 15 ¶ 13, at 3. Section 8 states that upon the alleged noncompliance the deposit "will be returned in full to the TENANT on the 60th day." COMPL. Ex. A § 8. That inconsistency further defeats any contention that the pleadings conclusively establish the Bonannos' Section 8 defense. *Massachusetts Port Authority v. Johnson Controls, Inc.*, 54 Mass.App.Ct. 541 (2002), does not change the result. There, Massport gave notice "two years and eight months after Massport first received notice of the claim and over two years after suit was commenced," and the court held, on a record developed through trial of the underlying claim, that the delay denied the indemnitor "a meaningful and fair opportunity to protect its interests." *Id*. at 543–546. The court measured compliance by whether the notice "comported with the fairness and expectation of the parties in light of the object" of the notice provision. *Id*. at 546. Here, the pleadings do not establish untimely notice or nonperformance; Owner pleads full performance, and Section 8 states its own object, to permit Great Point "to process and return TENANT'S security deposit." Whether Owner's submissions served that object cannot be resolved against Owner on the pleadings.

### B. The Bonannos’ Reading of Section 8 Is Not the Only Reasonable Reading of the Contract.

The motion also assumes that Section 8 unambiguously extinguishes Owner’s independent claims against the tenant for repair and remediation losses. Read as a whole, the provision does not compel that result.

Section 8 begins by stating that the deposit is not prepaid rent and that “damages or claims (if any)” are not limited to its amount. It then requires the landlord to submit written itemized materials to Great Point “in order to process and return TENANT’S security deposit within 60 days of vacancy.” COMPL. Ex. A § 8. Read in that context, the later reference to waiver of “rights relative to reimbursement” can reasonably be understood to refer to reimbursement through the deposit-administration process. Most importantly, the very next sentence states that after noncompliance “[t]he LANDLORD will then become fully responsible for the collection of bills,” while Great Point and its affiliates are held harmless for monies owed on those bills. *Id.*

The Bonannos’ construction leaves the “collection of bills” sentence with little coherent work to do: if Section 8 extinguishes all rights to collect the tenant’s bills, there is nothing for the landlord to become “fully responsible” to collect. Owner’s reading gives effect to the entire paragraph: timely itemization governs Great Point’s administration of the security deposit and its role in the collection process; if the landlord misses that process, Great Point returns the deposit and exits the collection process, leaving the landlord responsible for pursuing collection itself. That reading also harmonizes Section 8 with its opening statement that damages and claims are not capped by the deposit and with Section 10’s separate statement that the tenant is responsible for “all damages or breakage and/or loss to the Premises except normal wear and tear.”

Massachusetts law requires a contract to be construed as a whole so that, where practicable, every word is given effect. *DeWolfe v. Hingham Centre, Ltd.*, 464 Mass. 795, 803–804 (2013).

*Costa v. Brait Builders Corp.*, 463 Mass. 65, 77–79 (2012), is consistent with that rule, not contrary to it: *Costa* enforced a consequential-damages limitation only after concluding that the incorporated contractual language unambiguously barred those damages. Section 8, by contrast, contains the competing provisions addressed above and is at least reasonably susceptible to Owner's reading. At minimum, those competing readings demonstrate that the Bonannos' sweeping construction is not conclusively established on the pleadings. *See President & Fellows of Harvard Coll. v. PECO Energy Co.*, 57 Mass.App.Ct. 888, 895–896 (2003) (vacating judgment on pleadings where contractual language was ambiguous and extrinsic evidence was required).

The Bonannos' construction also cannot be squared with the pleaded timing of the Loss. The Complaint alleges that Owner continued to incur remediation and repair costs through March 2026. COMPL. ¶¶ 30–31. Yet the Bonannos read Section 8 to require final itemization by October 14, 2025, on pain of forfeiting reimbursement for all later repair expense. At minimum, the pleadings do not establish that all claimed bills and expenses existed, or were capable of final itemization, by the 45-day deadline. A provision whose stated object is to permit Great Point "to process and return TENANT'S security deposit within 60 days" is not unambiguously a forfeiture of subsequently incurred casualty-loss expenses.

### C. Even the Bonannos' Reading Does Not Establish the Scope of Any So-Called Waiver as to the Claims and Damages Pleaded.

The requested relief also outruns the agreement's text. Section 8 speaks of waiver of rights "relative to reimbursement of any and all bills and expenses resulting from the tenancy." It does not expressly release the tenant from tort liability, waive claims for physical injury to property, or extinguish every measure of damages arising from a breach of Section 10. The motion nevertheless seeks to carry the asserted waiver across contract, negligence, waste, conversion, trespass to

chattels, unjust enrichment, and recklessness theories merely because some damages may be measured by repair invoices. Doc. 21 at 7.

At the pleading stage, the Court need not decide the ultimate reach of Section 8. It is enough that the contract does not conclusively establish the broad release the motion requests. The Bonannos themselves concede that separately provable lost-rental damages fall outside their proposed Section 8 ruling. Doc. 21 at 5. Nor does *Costa*'s rule against duplicative recovery support dismissal of alternative theories at the pleading stage. *Costa* addresses duplicative damage awards for the same wrong and recognizes separate recoveries where the underlying acts or harms are factually separable and distinguishable. 463 Mass. at 73–75. Determining which claimed losses are "reimbursement" of "bills and expenses," which arise independently from physical injury to the Premises and which are separately recoverable, requires a developed record and a claim-by-claim analysis, not judgment on the pleadings.

## IV. G.L. c. 175, § 4F DOES NOT SUPPORT JUDGMENT ON THE PLEADINGS OR A PRESENT RECOUPMENT/SETOFF RULING.

### A. Even Assuming Operator Noncompliance, the Pleadings Do Not Establish the Absence of Qualifying Hosting-Platform Coverage.

Section 4F(b) requires an operator to maintain at least $1,000,000 in liability insurance for each short-term rental "unless such short-term rental is offered through a hosting platform that maintains equal or greater coverage." G.L. c. 175, § 4F(b). The statute thus supplies two alternative means of compliance.

Even assuming for purposes of this motion that Owner did not itself maintain $1,000,000 in qualifying liability coverage, the pleadings do not establish whether the short-term rental was offered through a hosting platform that maintained equal or greater coverage. Section 4F expressly provides that alternative means of compliance. G.L. c. 175, § 4F(b). More fundamentally, even proven noncompliance would not itself establish the recoupment or setoff the Bonanno Defendants

seek. That assumption is made solely for purposes of argument. It is not a concession, and it supplies no basis for an order under Rule 56(g) treating noncompliance as established; as shown below, a finding of noncompliance untethered to any available remedy is not material.

The Bonannos' Answer confirms rather than eliminates that unresolved predicate. Their Nineteenth Affirmative Defense applies only "to the extent" Owner failed to maintain or provide required coverage and expressly preserves the statutory exception "unless qualifying coverage was maintained by a hosting platform." Doc. 15 at 16. Those qualifications are incompatible with a Rule 12(c) finding that statutory noncompliance is already established. Although the Occupancy Agreement identifies Great Point as the rental agent that received the rental payments, the pleadings do not establish whether Great Point, or any other platform through which the rental was offered, is a "hosting platform" within the meaning of G.L. c. 64G, § 1, or what coverage, if any, it maintained.

### B. Section 4F Does Not Create the Automatic Dollar-for-Dollar Setoff the Bonannos Seek.

Even assuming a violation could eventually be proved, nothing in § 4F states that a tenant receives an automatic recoupment or setoff against liability for property damage caused during the rental. **The statute prescribes insurance requirements; it does not establish a private cause of action, a measure of damages, or a self-executing offset.**

*Costa* does not supply the missing remedy. *Costa* involved G.L. c. 149, § 29, an express statutory payment-bond scheme enacted to furnish subcontractors and materialmen security equivalent to a mechanic's lien; the SJC held that a private contractual waiver could not defeat that statutory bond remedy. 463 Mass. at 69–73. Section 4F mandates liability insurance but contains no comparable payment-bond claim, private damages provision, or statutory recoupment mechanism. *Costa* therefore does not transform an alleged § 4F violation into an automatic setoff

against the Bonannos' contractual liability to Owner.

The cases cited by the Bonannos likewise do not supply that missing rule. *LaClair v. Silberline Manufacturing Co.*, 379 Mass. 21 (1979), involved statutorily compulsory workers' compensation insurance. The SJC expressly declined to hold that "the simple failure to obtain" required coverage was itself negligence; negligence "may be found, if the facts permit." *Id*. at 29–30. *Rae v. Air-Speed, Inc.*, 386 Mass. 187 (1982), involved an insurance broker that allegedly undertook to procure workers' compensation coverage and failed to do so; the SJC allowed negligence and third-party-beneficiary theories to proceed, but expressly limited total recovery to the amount the plaintiff proved she "would have recovered" had the missing policy been in force. *Id*. at 192–196. *Couillard v. Pick*, 397 Mass. 756 (1986), affirmed dismissal where no statute or regulation required the particular general-liability coverage at issue; in distinguishing *Rae* and *LaClair*, the Court in *Couillard* explained that the plaintiffs' expectations there were rightful and foreseeable because the insurance was statutorily mandated. *Id*. 758–760. None of those cases creates an automatic dollar-for-dollar setoff upon proof of statutory noncompliance.

The Bonannos' cited authorities therefore point away from the relief they seek. Those cases require proof of duty, breach, causation, and actual loss attributable to the missing insurance. *Rae* is especially instructive: recovery is limited to what the beneficiary proves the missing policy would have paid. 386 Mass. at 196. Notably, the Bonanno Defendants have asserted no counterclaim for negligent failure to procure insurance or breach of a procurement obligation, and their Answer pleads § 4F solely as a conditional affirmative defense. Nor do the pleadings establish that a hypothetical § 4F policy would have paid the particular rented-premises property damage for which the Bonannos now seek recoupment. They cannot obtain the equivalent of an affirmative merits judgment establishing statutory breach and damages without establishing the facts and legal

predicates on which such relief would depend. Nor does *Couillard* assist the Bonannos merely because § 4F, unlike the coverage at issue there, is statutorily required. A statutory mandate establishes, at most, that a beneficiary's reliance on the coverage may be foreseeable; it does not dispense with proof that the missing coverage would have paid the claim at issue. *Rae*, 386 Mass. at 196.

### C. The Bonannos' Own Memorandum Concedes That the Coverage, Causation, and Damages Questions Necessary to Their Proposed Setoff Are Unresolved.

The requested setoff also depends on actual loss caused by the alleged nonprocurement. Yet here, Cincinnati is presently furnishing the Bonannos' defense, and whether Cincinnati will indemnify any covered judgment remains unresolved in Count XI. If Matthew Bonanno ultimately receives the defense and indemnity protection for which he says § 4F made him a beneficiary, the motion does not explain what uncompensated insurance loss remains to recoup from Owner.

The Bonannos acknowledge this problem. Their memorandum states that because Cincinnati is presently providing a defense, the Bonannos do not seek duplicative defense costs or a present adjudication of Cincinnati's indemnity obligation; instead, they ask the Court to reserve "remedial consequences until the coverage and damages record is complete." Doc. 21 at 2. The Bonannos later say their proposed ruling may eliminate Matthew Bonanno's net exposure only "depending on the scope of the coverage required by § 4F." *Id*. at 7. The Bonannos thus admit that the facts necessary to determine injury, causation, and any measure of setoff are not presently established. Rule 12(c) cannot simultaneously treat the record as incomplete for purposes of remedy and complete enough to enter an adjudication of statutory noncompliance and recoupment. The appropriate course is to deny the motion and permit the coverage and merits record to develop through ordinary discovery.

Nor does Rule 56(g) provide a shortcut to an abstract finding of § 4F noncompliance. The Bonanno Defendants ask the Court to establish duty and noncompliance now while reserving "remedial consequences" for later. But Rule 56 still operates only on material facts—facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the legal consequence of any noncompliance depends on unresolved questions of hosting-platform coverage, causation, the scope of any hypothetical policy benefit, and actual loss. Rule 56(g) does not cure the absence of a Local Rule 56.1 record or permit the Bonannos to circumvent those predicates.

## V. IF THE COURT CONSIDERS MATTERS OUTSIDE THE PLEADINGS, THE MOTION MUST BE TREATED UNDER RULE 56 AND SHOULD BE DENIED OR DEFERRED.

Rule 12(d) provides that when matters outside the pleadings are presented and not excluded on a Rule 12(c) motion, the motion must be treated as one for summary judgment and all parties afforded a reasonable opportunity to present pertinent material. FED.R.CIV.P. 12(d). Here, any attempt to determine what communications or itemizations were provided to Great Point, what insurance was procured, whether a hosting platform maintained coverage, what Cincinnati's policy covers, or what loss the Bonannos suffered from alleged nonprocurement necessarily moves beyond the pleadings.

If the Court elects to consider those issues under Rule 56, the motion should still be denied for the Local Rule 56.1 defect described above. At minimum, Rule 12(d) requires a reasonable opportunity to present all material pertinent to the converted motion. The Rule 26(f) conference has not yet occurred, and Rule 26(d)(1) ordinarily bars Owner from seeking discovery from any source before that conference. TOMLINSON DECL. ¶¶ 2, 9. The Bonannos' own Twenty-third Affirmative Defense (Doc. 15 at 17) acknowledges that they "have not yet had the benefit of discovery," including the Great Point file and damages documentation. Relevant discovery

includes Great Point's rental file and communications, Great Point's hosting-platform status and any associated coverage, Cincinnati's policy and coverage-position materials, and the factual basis for the Bonannos' conditional affirmative defenses. TOMLINSON DECL. ¶¶ 4–8. Owner has identified a concrete basis to believe that Great Point's records bear directly on Section 8: Owner's counsel transmitted written notice of the claim to Great Point's James Garrels on September 18, 2025, and Great Point later advised on November 25, 2025 that it was remitting the $4,500 deposit to Owner's counsel. *Id.* ¶¶ 5–6.[1] There is no basis to enter dispositive findings before that record can be obtained.

## CONCLUSION

WHEREFORE, Plaintiff 1942 Realty, LLC respectfully requests that this Honorable Court:

1. DENY the Bonanno Defendants' request for partial summary judgment for failure to comply with Local Rule 56.1;

2. DENY the Bonanno Defendants' alternative request for judgment on the pleadings under Fed. R. Civ. P. 12(c);

3. In the alternative, to the extent the Court considers matters outside the pleadings, deny the converted Rule 56 motion for failure to comply with Local Rule 56.1 or, pursuant to Rules 12(d) and 56(d), afford Owner a reasonable opportunity to obtain and present material discovery before adjudication; and

4. Grant such other and further relief as the Court deems just and proper.

---

[1] The Tomlinson Declaration is offered solely under Rule 56(d) to identify discovery Owner cannot presently obtain. It does not purport to catalog every communication or submission concerning the Loss, and it is not a pleading the Court may consider under Rule 12(c). Should the Bonannos respond by relying on the declaration, the September 18, 2025 notice, or any other material outside the pleadings, the, unless the Court excludes that material, Rule 12(d) requires that the motion be treated as one for summary judgment, and Owner's Rule 56(d) showing, set out above and in the Tomlinson Declaration, applies.

Respectfully submitted,

PLAINTIFF,
1942 REALTY, LLC,

By its Attorney,

*/s/ Raymond H. Tomlinson, Jr.*

Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON | LAW
76 Tupper Road, Suite 11
Sandwich, MA 02563
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: November 2, 2026

**CERTIFICATE OF SERVICE**

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I caused a true and accurate copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF system, and upon the following person(s) via US Mail Delivery:

Jane Doe a/k/a "Chloe"
155 East 72nd Street, Apt. 9A
New York, NY 10021

/s/ Raymond H. Tomlinson, Jr.
Raymond H. Tomlinson, Jr.

Dated: November 2, 2026